1  SQUIRE, SANDERS & DEMPSEY L.L.P.
   Mark C. Dosker (State Bar No. 114789)
2  Daniel S. Kubasak (State Bar No. 222336)
   One Maritime Plaza, Suite 300
3  San Francisco, CA 94111-3492
   Telephone: +1.415.954.0200
4  Facsimile: +1.415.393.9887

5  SQUIRE, SANDERS & DEMPSEY L.L.P.
   Amy L. Brown
6  Jeremy W. Dutra
   1201 Pennsylvania Ave., NW, Suite 500
7  Washington, DC 20004
   Telephone: +1.202.626.6200
8  Facsimile: +1.202.626.6780

9  Attorneys for Defendants
   CHECK 'N GO OF CALIFORNIA, INC.;
10 SOUTHWESTERN & PACIFIC SPECIALTY
   FINANCE, INC.; and AVANTE TELADVANCE,
11 INC.

ORIGINAL FILED
MAY 29 PM 3:21
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-Filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

C 07 2789 JSW

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through City Attorney Dennis J. Herrera,<br><br>Plaintiffs,<br><br>vs.<br><br>CHECK 'N GO OF CALIFORNIA, INC. d/b/a CHECK 'N GO; SOUTHWESTERN & PACIFIC SPECIALTY FINANCE, INC. d/b/a CHECK 'N GO; AVANTE TELADVANCE, INC. d/b/a CHECK 'N GO ONLINE; MONETARY MANAGEMENT OF CALIFORNIA, INC. d/b/a MONEY MART; MONEY MART EXPRESS, INC. d/b/a CUSTOMCASH ONLINE; FIRST BANK OF DELAWARE; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. _____<br><br>**DECLARATION OF JERRY R. WILLIAMS IN SUPPORT OF NOTICE OF REMOVAL** |

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

**DECLARATION OF JERRY R. WILLIAMS**

I, Jerry R. Williams, declare that:

1. I am the President of Avante Teladavance, Inc. d/b/a Check 'n Go Online ("CHECK 'N GO ONLINE") and have personal knowledge of the facts stated herein.

2. CHECK 'N GO ONLINE is an Ohio corporation with its principal place of business in Ohio.

3. Southwestern & Pacific Specialty Finance, Inc. d/b/a Check 'n Go ("CHECK 'N GO") is an Ohio corporation with its principal place of business in Ohio. It is a sister corporation of CHECK 'N GO ONLINE.

4. Check 'n Go of California, Inc. ("CGCA") is an Ohio corporation, and its principal place of business was in Ohio. It is a sister corporation of CHECK 'N GO ONLINE.

5. I have reviewed the Complaint ("Compl.") in the above-captioned matter, which was originally filed in the Superior Court of the State of California in and for the City and County of San Francisco, Case No. CGC-07-462779. The Complaint defines the term "CHECK 'N GO" as used in it to include each of CHECK 'N GO and CGCA. Compl. ¶ 6.

6. The Complaint alleges that CHECK 'N GO, CGCA, and CHECK 'N GO ONLINE market and arrange installment loans on behalf of First Bank of Delaware ("FIRST BANK") (the "Installment Loans"). Compl. ¶ 19. In the alternative, the Complaint alleges that CHECK 'N GO, CGCA, and CHECK 'N GO ONLINE are the true lenders of the Installment Loans. Id. ¶ 20.

7. FIRST BANK is a Delaware state bank insured by the Federal Deposit Insurance Corporation ("FDIC").

8. The Complaint alleges that "all of the acts and omissions described in this Complaint by any defendant were duly performed by, and attributable to all DEFENDANTS, including the Doe Defendants, each acting as agent and/or under the direction and control of the others, and such acts and omissions were within the scope of such agency, direction and/or control. Any reference in this complaint to any acts of 'DEFENDANTS' shall be deemed to be the acts of each and every defendant acting individually, jointly or severally." Compl. ¶ 12.

9. A true and accurate template of the Consumer Installment Loan Agreement utilized by FIRST BANK for the Installment Loans is attached hereto as Exhibit A.

10. According to the allegations in the Complaint, CHECK 'N GO ONLINE, CHECK 'N GO, AND CGCA make Installment Loans to customers in San Francisco, California, and the terms of these Installment Loans "violate the provisions of the California Finance Lenders Law because these loans bear unconscionable, usurious interest rates . . ." Compl. ¶¶ 6, 7, and 18.

11. In addition, the Complaint alleges that CHECK 'N GO ONLINE, CHECK 'N GO, and CGCA "purport to market and arrange installment loans on behalf of the FIRST BANK OF DELAWARE, which purports to act as the lender on the installment loans offered through the CHECK 'N GO ONLINE website and advertised in CHECK 'N GO's retail stores." Compl. ¶ 19. The Complaint further alleges that CHECK 'N GO ONLINE, CHECK 'N GO, and CGCA "violate the California Finance Lenders Law by acting as brokers for loans that are not in compliance with the terms of the law." Id.

12. Alternatively, the Complaint alleges that CHECK 'N GO ONLINE, CHECK 'N GO, and CGCA are the "true lenders" of the Installment Loans and that CHECK 'N GO ONLINE, CHECK 'N GO, and CGCA "are in violation of the California Finance Lenders Law by making installment loans without a license and by offering installment loans that violate the interest rate provision of that law." Compl. ¶ 20.

13. The Complaint alleges that the acts and business practices of CHECK 'N GO ONLINE, CHECK 'N GO, and CGCA with respect to the Installment Loans violate Business and Professions Code section 17200. Compl. ¶ 36.

14. The Complaint seeks, among other relief, $2,500 in civil penalties for each violation of section 17200 by each defendant. Compl. Prayer for Relief ¶ 5.

15. During the four-year period preceding the filing of this lawsuit, customers who reside in the City and County of San Francisco entered into more than 125 separate Installment Loans that are alleged in the Complaint to have violated section 17200. The Complaint seeks $2,500 in civil penalties for each of the more than 125 Installment Loans as against each of CHECK 'N GO ONLINE, CHECK 'N GO, and CGCA. Accordingly, and because $2,500

multiplied by 125 equals $312,500, the matter in controversy in this action as to each of CHECK 'N GO ONLINE, CHECK 'N GO, and CGCA exceeds the sum or value of $312,500 exclusive of interest and costs.

I declare under penalty of perjury under the law of the United States of America that the foregoing is true and correct.

Executed on May 24, 2007 at Mason, Ohio

*/s/ Jerry R. Williams*
Jerry R. Williams

SQUIRE, SANDERS & DEMPSEY L.L.P.
One Maritime Plaza, Suite 300
San Francisco, CA 94111-3492

- 4 -

**DECLARATION OF JERRY R. WILLIAMS**

## CONSUMER INSTALLMENT LOAN AGREEMENT

Loan #: 7022810

BORROWER:

Loan Date: 5/24/2007

LENDER:     First Bank of Delaware
            1000 Rocky Run Parkway
            Wilmington, Delaware 19803

In this Consumer Installment Loan Agreement (the "*Loan Agreement*"), the words "*you*" and "*your*" mean the borrower identified above. The word "*Loan*" means the loan you obtain by electronically signing this Loan Agreement. The words "*we*," "*our*," "*us*," and the "*Bank*" mean First Bank of Delaware, a FDIC-insured bank maintaining its main office in Wilmington, Delaware. "*Banking Day*" means all calendar days except Saturdays, Sundays, and legal public holidays.

**Supporting Documents.** You agree to take the Loan, and consummate this Loan Agreement, on the date that you electronically sign this Loan Agreement. In order to complete your transaction with us, you must electronically sign this Loan Agreement by clicking the "I Agree" button located on the website. After you electronically sign this Agreement, we will deliver to you a fax coversheet identifying several documents that you must fax back to us as a condition to our funding your Loan. These required supporting documents typically include your bank statement, your paycheck stub or benefits award letter, and a voided personal check (collectively the "*Supporting Documents*"). You represent and warrant that you will deliver the Supporting Documents to us not later than 6:00 p.m. Eastern Time on the second Banking Day following the date you sign this Loan Agreement (the "*Fax Deadline*"). If we do not receive the Supporting Documents by the Fax Deadline, then we will not fund your Loan and you must reapply for a new loan. If we timely receive the Supporting Documents, then we will use our best efforts to disburse the Loan proceeds on the date we receive the Supporting Documents. We will disburse the Loan proceeds by electronically depositing the proceeds into your Bank Account and/or by applying the proceeds to any outstanding loan balance that you may owe to us. If we electronically deposit the Loan proceeds into your Bank Account, your bank will typically give you access to those funds on the next Banking Day following the date we send the electronic deposit.

*Transmit the Supporting Documents to us at fax number 1-866-972-9329.*

**Promise to Pay.** You promise to pay us the Total of Payments of $1,612.56 by making the payments on the dates set forth in the payment schedule below (the "*Payment Schedule*"). You agree to make your payments on the dates set forth in the Payment Schedule (the "*Payment Dates*"). You also agree to pay any other fees or charges required under this Loan Agreement. Finally, you authorize us and our agents to contact you at the phone number or e-mail address listed in your loan application before each Payment Date to remind you of the upcoming Payment Date.

**Calculation of Interest and Application of Payments.** The principal amount of this Loan, $1,612.56, includes add-on interest in the amount of $112.56. We begin to earn this add-on interest on the third Banking Day following the date you electronically sign this Loan Agreement (the "*Beginning Accrual Date*"). Pursuant to 5 Del. C. § 963, the periodic interest is precomputed, calculated on the assumption that all scheduled payments will be made when due, and then added on to the amount financed. We apply all payments to the satisfaction of the installment payments in the order in which they become due. After we credit your payments to all installments that are due and payable, we will credit any excess payments in the following order: returned payment charges; then any other default penalties you may owe under this Loan Agreement. If a payment is due on a non-Banking Day or any other date on which we are not open for business, then we will credit any payment received on the next Banking Day, as if it were received on the scheduled Payment Date. Time is of the essence.

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 49.86% | $112.56 | $1,500.00 | $1,612.56 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| Payment No. 1 | $201.57 | 6/4/2007 |
| Payment No. 2 | $201.57 | 6/18/2007 |
| Payment No. 3 | $201.57 | 7/2/2007 |
| Payment No. 4 | $201.57 | 7/16/2007 |
| Payment No. 5 | $201.57 | 7/30/2007 |
| Payment No. 6 | $201.57 | 8/13/2007 |
| Payment No. 7 | $201.57 | 8/27/2007 |
| Payment No. 8 | $201.57 | 9/10/2007 |

Security.     You are giving us a security interest in: [✓] ACH Debit Authorization and Remotely Created Check Authorization, or [ ] Remotely Created Check Authorization.

Prepayment. If you payoff early, you may be entitled to a refund of part of the finance charge.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

| Itemization of Amount Financed of | $1,500.00 |
|---|---|
| $1,500.00 | Amount given to you directly by depositing the funds into your Bank Account |
| $00.00 | Amount paid on your account with us |

<u>ACH Authorization to Credit Bank Account.</u> Unless the proceeds of this Loan Agreement are applied to any outstanding loan balance that you may owe to us, you authorize us and our agents to initiate an automated clearinghouse ("*ACH*") credit entry to your bank account numbered 45848645         (your "*Bank Account*") and held at your bank (the "*Paying Bank*"), which Paying Bank has routing number 123123123         (the Paying Bank's "*Routing Number*") in order to disburse the proceeds of this Loan. You acknowledge that the origination of the ACH credit entry to your Bank Account must comply with applicable provisions of U.S. law.

<u>Method of Repayment.</u> You agree to the method of repayment checked below:

    [✓] **ACH Debit Authorization and Remotely Created Check.** By checking the preceding box, you authorize us, and our agents, successors, and assigns, to initiate ACH debit entries to your Bank Account for each payment owing under this Loan Agreement, including any returned payment charges or other amounts owing upon acceleration of this Loan as a result of your default. You acknowledge that this ACH debit authorization is an authorization to initiate an ACH debit entry to your Bank Account on each scheduled Payment Date set forth in the Payment Schedule. If you make any partial prepayments, then you authorize us to vary the amount of any preauthorized payment by ACH debit or Remotely Created Check as needed to reflect those partial prepayments. Please note that you have the right to receive notice of all transfers varying in amount, and that by signing this ACH Debit Authorization you acknowledge that we have elected to offer you a specified range of amounts for debiting (in lieu of providing the notice of transfers in varying in amount). The range of transfers will be either an amount equal to your installment payment or an amount equal to the outstanding balance under the Loan (which may be greater than or less than an installment payment based upon your payment history), plus any returned payment charges or other default penalties you may owe under this Loan Agreement. For any debit outside of this specified range, we will send you a notice. Therefore, by signing below you are choosing to only receive notice when a transfer amount exceeds the range specified above. This ACH debit authorization will remain in full force and effect until the earlier of the following occurs: (i) you satisfy all of your payment obligations under this Loan Agreement or (ii) you provide the Paying Bank or us notice of your termination of this ACH debit authorization in such time and manner as to afford the Paying Bank or us a reasonable opportunity to act on your instructions. If you provide the Paying Bank or us notice of your termination of this ACH debit authorization, then you agree to the terms of the remotely created check authorization in the next paragraph. You acknowledge that the origination of the ACH debit entry to your Bank Account must comply with applicable provisions of U.S. law. If you revoke your ACH debit authorization, then you authorize us, and our agents, successors, and assigns, to submit a Remotely Created Check to your Bank Account for each payment that you owe under this Loan Agreement. See paragraph immediately below.

    [ ] **Cashier's Check and Remotely Created Check Authorization.** By checking the preceding box or by terminating any previous ACH debit authorization you provided, you agree to make all payments required under the Loan Agreement by cashier's check. If we do not receive your cashier's check by the date a payment is due, then you authorize us, and our agents, successors, and assigns, to create paper checks drawn on your Bank Account and bearing your typed name rather than your handwritten signature ("*Remotely Created Checks*") and to submit each check for payment to the Paying Bank in the amount of each payment owing under this Loan Agreement, including any returned payment charges or other amounts owing upon acceleration of this Loan as a result of your default. Upon acceleration, you also authorize us to initiate a Remotely Created Check for an amount equal to the outstanding balance under the Loan (which may be greater than or less than an installment payment based upon your payment history). Your typed name shall constitute your authorized signature fully reflecting your intent to authenticate these Remotely Created Checks, which are also known as demand drafts, telechecks, preauthorized drafts, or paper drafts. If you believe we charged your Bank Account in a manner not contemplated by this authorization, then please contact us. You authorize us to vary the amount of any preauthorized payment by Remotely Created Check as needed to repay installments due on the loan as modified by any partial prepayments.

<u>Security Interest Disclosure.</u> The Federal Truth-In-Lending Disclosures set forth on page 1 of this Loan Agreement provide that the authorization you have given us immediately above -- either (a) authorization to initiate ACH debits and to create and submit Remotely Created Checks, or (b) authorization to create and submit Remotely Created Checks -- is a security interest. Because federal and Delaware law do not clearly address whether your authorization constitutes a "security interest," we disclose that your authorization is a "security interest" for Truth-In-Lending purposes only and pursuant to Comment 2(a)(25) of the Federal Reserve Board Official Staff Commentary to Regulation Z.

<u>Prepayment.</u> You will not incur any additional charge, fee, or penalty if you prepay your obligations hereunder in part or in full. At any time prior to 6:00 p.m. Eastern Time on the third Banking Day following the date you electronically sign this Loan Agreement (the "*Rescission Period*"), you may pay to us the amount of $1,500.00  , and we will rebate and refund the entire Finance Charge (including any precomputed add-on interest we have earned), and your obligations under this Loan Agreement will be satisfied in full. To prepay your obligations in full prior to expiration of the Rescission Period, you must fax to us -- at fax number 1-866-972-9329 -- written authorization to effect an ACH debit entry to your Bank Account, or create a Remotely Created Check, for the amount financed. Following expiration of the Rescission Period, if you prepay your obligations in full, you will receive a rebate of the unearned precomputed add-on interest. The prepayment rebate, if any, shall be in an amount not less than the amount which would be refunded if the unearned precomputed interest charge were calculated in accordance with the actuarial method (the method of allocating payments made on a loan between the outstanding balance of the loan and interest pursuant to which a payment is applied first to the accumulated interest and any remainder is subtracted from the outstanding balance of the loan). The unearned portion of the precomputed interest charge is the total precomputed interest charge less the earned precomputed interest charge. The earned precomputed interest charge shall be determined by applying an annual percentage rate based on the total precomputed interest charge, under the actuarial method, to the unpaid balances for the actual time those balances were unpaid up to the date of prepayment. If you prepay your obligations in part but not in full, you will not be entitled to a refund of any portion of the Finance Charge, and your prepayment will be applied to the next maturing installment(s) of your loan. To make a prepayment after expiration of the Rescission Period, you must fax to us -- at fax number 1-866-972-9329 -- written authorization to effect an ACH debit entry to your Bank Account, or create a Remotely Created Check, for the principal amount of the Loan.

<u>Returned Payment Charge.</u> If the Paying Bank returns your payment (whether an ACH debit or Remotely Created Check) for any reason, then you must pay us a returned payment charge of $35. You should be aware that the Paying Bank may also charge you a returned item charge and may revoke your Bank Account privileges.

<u>Post-Maturity/Default Interest.</u> No interest accrues following the maturity or default of this Loan.

<u>Default, Acceleration, and Collection Costs.</u> You will be in default under this Loan Agreement for any of the following reasons: (i) if you do not pay in full a scheduled payment on its scheduled Payment Date; (ii) if you file for protection under the United States Bankruptcy Code, or become subject to a proceeding which seeks relief from debt; or (iii) if you have made a false or misleading statement about an important matter in connection with this Loan Agreement, including your application for credit. Upon default, we may declare the entire outstanding balance (plus any finance charge earned at the time of acceleration) at once due and payable without further notice to you. We may then, based on your selected method of repayment, either initiate an ACH debit authorization for the amount owing or draft and negotiate a Remotely Created Check for the amount owing. If we elect to accelerate the maturity of this Loan upon your default, you are entitled to the same rebate (in the form of an offset against the loan balance owing) as if the payment had been made on the date of acceleration. By choosing any one or more of these remedies, we do not give up our right to use another remedy later. By deciding not to use any remedy if you are in default for a particular event, we do not give up our right to consider the same event a default if it happens again. We may delay or refrain from enforcing any of our rights under this Loan Agreement without waiving those rights. You understand that any waiver of our rights will not be effective unless it is in writing signed by us. You waive presentment, demand, protest, and notice of dishonor. If you default under this Loan Agreement and we pursue collection efforts against you, then you agree to pay all reasonable collection agency fees, attorney's fees, court costs, and other collection costs actually incurred by us.

<u>Refinancing.</u> If this Loan is a refinancing of a prior loan, this Loan will not be approved if the finance charge for the prior loan is not paid.

<u>Governing Law and Assignment.</u> The Bank is a Delaware bank that is insured by the FDIC. This Loan Agreement is made not only under the federal laws applicable to state banks making loans to out-of-state borrowers but also under Delaware state law. To the extent such federal laws do not preempt state law, this Loan Agreement shall be governed by and construed in accordance with the laws of Delaware. To the broadest extent possible, any state law claims you may assert against us relating to this Loan Agreement, and any state law claims we may assert against you relating to this Loan Agreement, will be governed by the laws of Delaware. The Waiver of Jury Trial and Arbitration Provision shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "*FAA*"). We may assign or transfer this Loan Agreement, or any of our rights hereunder, without notice to or consent from you.

Warning. This loan is not intended to address long-term credit needs. Repeated or frequent use can create serious financial hardships. You should evaluate the costs and benefits of all alternatives before borrowing. Other forms of credit that may be less expensive include a loan from another institution or from family or friends, a credit card cash advance, an account with overdraft protection, or a salary advance.

This Loan Agreement includes a binding Waiver of Jury Trial and Arbitration Provision. You may opt out of the Waiver of Jury Trial and Arbitration Provision pursuant to the terms listed in paragraph 9 of that provision. By electronically signing this Loan Agreement, you acknowledge that it was filled-in before you did so and that you have received a completed copy of it. You represent that you are not a debtor under any proceeding in bankruptcy and have no intention to file a petition for relief under any chapter of the United States Bankruptcy Code. You represent that you will timely send us the Supporting Documents, and you acknowledge that we have relied upon such representation. You further acknowledge that you have read – and that you understand and agree to – all of the terms of this Loan Agreement, including the provision below entitled "Waiver of Jury Trial and Arbitration Provision."

Borrower's Signature:

*You agree to this Loan Agreement by clicking the "I Agree" button on the website. When and if you click the "I Agree" button, we will maintain your electronic signature on file.*

Date: 5/24/2007

First Bank of Delaware

By: *[signature]*

Its President

## WAIVER OF JURY TRIAL AND ARBITRATION PROVISION.

In consideration of First Bank of Delaware (the "Bank") providing you a loan, you agree to the terms of this Waiver of Jury Trial and Arbitration Provision as set forth below.

Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "*arbitrator*") for a decision. Each party to the dispute has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision. THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:

1. For purposes of this Arbitration Provision, the words "*we*," "*our*," and "*us*" mean the Bank. Furthermore, the words "*dispute*" and "*disputes*" are given the broadest possible meaning and include, without limitation: (a) all claims, disputes, or controversies arising from or relating directly or indirectly to the electronic signing of this Arbitration Provision, the validity and scope of this Arbitration Provision, and any claim or attempt to set aside this Arbitration Provision; (b) all federal or state law claims, disputes, or controversies arising from or relating directly or indirectly to this Consumer Installment Loan Agreement (the "*Loan Agreement*"), including this Arbitration Provision, the information you gave us before entering into the Loan Agreement, including the Application, and or any past agreement or agreements between you and us; (c) all counterclaims, cross-claims, and third-party claims; (d) all common law claims, based upon contract, tort, fraud, or other intentional torts; (e) all claims based upon a violation of any state or federal constitution, statute, or regulation; (f) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (g) all claims asserted by you individually against us and/or any of our employees, agents, directors, officers, shareholders, governors, managers, members, or affiliated entities (hereinafter collectively referred to as "*related third-parties*"), including claims for money damages and/or equitable or injunctive relief; (h) all claims asserted on your behalf by another person; (i) all claims asserted by you as a private attorney general, as a representative and/or member of a class of persons, and/or in any other representative capacity, against us and/or related parties (hereinafter referred to as "*Representative Claims*"); and/or (j) all claims arising from or relating directly or indirectly to the disclosure by us or related third parties of any non-public personal information about you.

2. You acknowledge and agree that by entering into this Arbitration Provision:
   (a) YOU ARE WAIVING YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES.
   (b) YOU ARE WAIVING YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and
   (c) YOU ARE WAIVING YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

3. Except as provided in Paragraph 6 below, all disputes including any Representative Claims against us and/or related third parties shall be resolved by binding arbitration only on an individual basis with you. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.

4. Any party to a dispute, including related third parties, may send the other party written notice by certified mail, return receipt requested, of their intent to arbitrate and setting forth the subject of the dispute along with the relief requested, even if a lawsuit has been filed. Regardless of who demands arbitration, you shall have the right to select either of the following arbitration organizations to administer the arbitration: the American Arbitration Association (1-800-778-7879) http://www.adr.org or National Arbitration Forum (1-800-474-2371) http://www.arb-forum.com. However, the parties may agree to select a local arbitrator who is an attorney, retired judge, or arbitrator registered and in good standing with an arbitration association and arbitrate pursuant to such arbitrator's rules. The party receiving notice of arbitration will respond in writing by certified mail, return receipt requested, within 20 days. If your demand arbitration, you must inform us in your demand of the arbitration organization you have selected or whether you desire to select a local arbitrator. If related third parties or we demand arbitration, you must notify us within 20 days in writing by certified mail, return receipt requested, or your decision to select an arbitration organization or your desire to select a local arbitrator. If you fail to notify us, then we have the right to select an arbitration organization. The parties to such dispute will be governed by the rules and procedures of such arbitration organization applicable to consumer disputes, to the extent those rules and procedures do not contradict the express terms of the Loan Agreement or this Arbitration Provision, including the limitations on the arbitrator below. You may obtain a copy of the rules and procedures by contacting the arbitration organization listed above.

5. Regardless of who demands arbitration, we will advance your portion of the expenses associated with the arbitration, including the filing, administrative, hearing, and arbitrator's fees (collectively the "*Arbitration Fees*"). Throughout the arbitration, each party shall bear his or her own attorneys' fees and expenses, such as witness and expert witness fees. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "*FAA*"), and applicable statutes of limitation, and shall honor claims of privilege recognized at law. The arbitration hearing will be conducted in the county of your residence, or within 30 miles from such county, or in the county in which the transaction under the Loan Agreement occurred, or in such other place as shall be ordered by the arbitrator. The arbitrator may decide, with or without a hearing, any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. In conducting the arbitration proceeding, the arbitrator shall not apply any federal or state rules of civil procedure or evidence. If allowed by statute or applicable law, the arbitrator may award statutory damages and/or reasonable attorneys' fees and expenses. If the arbitrator renders a decision or an award in your favor resolving the dispute, then you will not be responsible for reimbursing us for your portion of the Arbitration Fees, and we will reimburse you for any

*Consumer Installment Loan Agreement (ILP) (Online), March 26, 2007*                                                                            Page 3 of 4

Arbitration Fees you have previously paid. Regardless of whether the arbitrator renders a decision or an award in your favor resolving the dispute, you will not be responsible for reimbursing us for your portion of the Arbitration Fees. At the timely request of any party, the arbitrator shall provide a written explanation for the award. The arbitrator's award may be filed with any court having jurisdiction.

6. All parties, including related third parties, shall retain the right to seek adjudication of individual claims only in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction. Any dispute that cannot be adjudicated within the jurisdiction of a small claims tribunal shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration.

7. This Arbitration Provision is made pursuant to a transaction involving interstate commerce and shall be governed by the FAA. If a final, non-appealable judgment of a court having jurisdiction over this transaction finds, for any reason, that the FAA does not apply to this transaction, then our agreement to arbitrate shall be governed by the arbitration law of the State of Delaware.

8. This Arbitration Provision is binding upon and benefits you, your respective heirs, successors, and assigns. The Arbitration Provision is binding upon and benefits us, our successors, assigns, and related third parties. The Arbitration Provision continues in full force and effect, even if your obligations have been cancelled by prepayment, paid, or discharged through bankruptcy. The Arbitration Provision survives any termination, amendment, expiration, or performance of any transaction between you and us and continues in full force and effect unless you and we otherwise agree in writing.

9. You (but not we) have the sole right to reject this Arbitration Provision as a means of resolving disputes at any time within 30 days following your electronic signature on this Loan Agreement. That is, if, after electronically signing this Loan Agreement, you choose to not be bound by the Arbitration Provision as a means of resolving disputes, then you can reject the Arbitration Provision by giving us written notice of your rejection of the Arbitration Provision by certified mail, return receipt requested, addressed to us at: First Bank of Delaware, 5155 Financial Way, Mason, Ohio 45040, postmarked within 30 days following your electronic signature hereon. No other particular form of notice is required. You can only reject the Arbitration Provision until the 30th day, thereafter you will continue to be bound by the terms of the Arbitration Provision.

Borrower's Signature:

*You agree to this Waiver of Jury Trial and Arbitration Provision by clicking the "I Agree" button on the website. When and if you click the "I Agree" button, we will maintain your electronic signature on file.*

Date: 5/24/2007

First Bank of Delaware

By: *[signature]*

Its President

# CERTIFICATE OF SERVICE

I, Mary Ann Dimapasoc, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is One Maritime Plaza, Suite 300, San Francisco, California 94111-3492.

On May 29, 2007, a copy of the following document(s):

- **DECLARATION OF JERRY R. WILLIAMS IN SUPPORT OF NOTICE OF REMOVAL**

was served on:

| | |
|---|---|
| Dennis J. Herrera<br>Owen J. Clements<br>Peter J. Keith<br>Christine Van Aken<br>Ann M. O'Leary<br>Office of the City Attorney<br>1 Dr. Carlton B. Goodlett Place, Suite 234<br>San Francisco, CA 94102<br><br>Counsel for Plaintiff | William H. Orrick<br>Ann E. Johnston<br>Coblentz, Patch, Duffy & Bass, LLP<br>One Ferry Building, Suite 200<br>San Francisco, California 94111<br><br>Counsel for First Bank of Delaware |
| Stephen G. Harvey<br>Larry R. Wood, Jr.<br>Kathleen A. Mullen<br>Pepper Hamilton LLP<br>3000 Two Logan Square<br>Eighteenth and Arch Streets<br>Philadelphia, PA 19103-2799<br><br>Counsel for Monetary Management of California, Inc. and Money Mart Express, Inc. | Robert H. Bunzel<br>Griffith C. Towle<br>Bartko Zankel Tarrant Miller<br>900 Front Street, Suite 300<br>San Francisco, CA 94111<br><br>Counsel for Monetary Management of California, Inc. and Money Mart Express, Inc. |

[x] By US Mail: On the above date, I placed the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 29, 2007, at San Francisco, California.

_____
Mary Ann Dimapasoc