IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JAMES E. STRONG, et al.,

                    Plaintiffs,

    v.                                          1:04-cv-2610-WSD

FIRST AMERICAN CASH
ADVANCE OF GEORGIA, LLC,
et al.;

                    Defendants.

## <u>ORDER</u>

This matter is before the Court on Plaintiffs' Motion to Remand [5],

Defendants' Motion for Extension of Time to Reply to Plaintiffs' Motion to

Remand [6] and Defendants' Motion Requesting Substitution of Exhibit C to

Defendants' Notice of Removal [16].

## I.      BACKGROUND

This case arises out of loan transactions between Plaintiffs and Defendant

First American Cash Advance of Georgia, LLC ("First American") in early 2004.

The loans in question are typical "payday" loans:  small, short-term, high-interest

loans in amounts of up to $500.[1]  Although Community State Bank[2] is the named

lender in these transactions, Plaintiffs allege First American's role in procuring,

processing and profiting from the loans is such that they constitute the *de facto*

lender under Georgia law.  Plaintiffs allege Defendants FAS Financial, LLC and

John Does 1-10 have, at certain relevant times, owned, operated, managed and

controlled, directly or indirectly, First American.

Plaintiffs filed this action in the State Court of Fulton County, Georgia, on

August 6, 2004.  On behalf of themselves and all recipients of alleged payday loans

from First American for the last five (5) years, Plaintiffs assert claims against

Defendants under the Georgia Industrial Loan Act, O.C.G.A. §§ 7-3-1 et seq., the

Georgia Usury Statute, O.C.G.A. § 7-4-2, the Georgia Criminal Usury Statute,

O.C.G.A. § 7-4-18, the Georgia Payday Lending Statute, O.C.G.A. §§ 16-17-1 et

seq., the Georgia Check Cashing Statute, O.C.G.A. §§ 7-1-700 et seq., the Georgia

Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. §§ 16-4-1 et seq.,

---

[1]  For a thorough discussion of payday lending and the legislative history in Georgia surrounding it, see the Eleventh Circuit's opinion in BankWest, Inc. v. Baker, 411 F.3d 1289, 1292-97 (11th Cir. 2005).

[2]  Community State Bank is a state-chartered bank located in South Dakota. Its deposits are insured by the Federal Deposit Insurance Corporation ("FDIC").

as well as common-law claims for conversion and conspiracy. Plaintiffs do not

assert any federal-law claims, and did not name Community State Bank or any

other state-chartered or national bank as a defendant in this action. Plaintiffs also

expressly disavow any claim for damages in the aggregate for the individual

Plaintiffs or any member of the putative class in excess of $75,000, exclusive of

interest and costs.

Defendants removed the case to this Court on September 7, 2004 [1],

asserting both federal-question and diversity jurisdiction.[3] On September 17, 2004,

Plaintiffs moved the Court to remand this case to the Fulton County State Court,

arguing that the grounds for jurisdiction set out in Defendants' Notice of Removal

do not support the exercise of federal jurisdiction [5]. Defendants filed their

response to Plaintiffs' Motion to Remand on October 8, 2004 [9],[4] and Plaintiffs

---

[3] This Court's Standing Order 04-02 requires that personal identifiers such
as financial account numbers and home address information be redacted from
documents filed with the Court and made available to the public through the
Court's electronic filing system. Exhibit C to Defendants' Notice of Removal
contains personal identifiers and violates Standing Order 04-02. Defendants have
moved the Court to substitute a redacted version of Exhibit C for the original.
Defendants' Motion Requesting Substitution of Exhibit C to Defendants' Notice of
Removal is GRANTED.

[4] On October 4, 2004, Defendants moved for an extension of time to
respond to Plaintiffs' Motion to Remand [6]. Defendants' Motion to Extend Time

filed their reply on October 25, 2004 [17].  On December 20, 2004, Defendants

filed supplemental authority in support of their response to Plaintiffs' Motion to

Remand [28].

While Plaintiffs' Motion to Remand was pending, the Eleventh Circuit

considered the appeal in BankWest, Inc. v. Baker, Case No. 1:04-cv-988-MHS.  In

BankWest, various Georgia payday lenders and state-chartered, FDIC-insured

banks sought to enjoin the enforcement of the Georgia PayDay Lending Statute.

The district court, in a decision issued by the Honorable Marvin H. Shoob, denied

the plaintiffs' application, and the plaintiffs appealed to the Eleventh Circuit.  See

BankWest, Inc. v. Baker, 324 F. Supp. 2d 1333 (N.D. Ga. 2004).  Having

concluded that the Eleventh Circuit's decision in BankWest likely would shed light

on certain of the jurisdictional issues raised in Plaintiffs' Motion to Remand, the

Court stayed this case pending a decision by the Eleventh Circuit [35].

On June 10, 2005, a panel of the Eleventh Circuit affirmed the district court's

denial of the preliminary injunction application.  Shortly thereafter, the Court

directed the parties to submit supplemental memoranda addressing the impact of

---

was unopposed, and is GRANTED *NUNC PRO TUNC*.

the Eleventh Circuit's decision in <u>BankWest</u> on the arguments made in support of and in opposition to Plaintiffs' Motion to Remand. The parties submitted their respective memoranda [36, 37], and this matter is now before the Court for decision.

## II. DISCUSSION

"[A]ny action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Where the propriety of removal is in question, the burden of showing removal is proper is on the removing party. <u>Williams v. Best Buy Co., Inc.</u>, 269 F.3d 1316, 1319 (11th Cir. 2001). "[U]ncertainties are resolved in favor of remand." <u>Burns v. Windsor Ins. Co.</u>, 31 F.3d 1092, 1095 (11th Cir. 1994).

In <u>Lontz v. Tharp</u>, 413 F.3d 435 (4th Cir. 2005), the Fourth Circuit succinctly summarized the circumstances in which removal is appropriate:

> [Section 1441] generally makes removal appropriate in three circumstances, demonstration of which is the burden of the party seeking removal. First, a defendant may remove a case to federal court if the parties are diverse and meet the statutory requirements for diversity jurisdiction. Since diversity always vests original jurisdiction in the district courts, diversity also generates removal jurisdiction.
>
> Second, removal is appropriate if the face of the complaint raises a federal question. Under the firmly settled well-pleaded complaint rule, however, merely having a federal defense to a state law claim is insufficient to support removal, since it would also be insufficient for federal question jurisdiction in the first place. Thus, the Supreme Court unwaveringly has maintained that "[t]o bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action."
>
> The third justification for removal is actually a narrow exception to the well-pleaded complaint rule. "[K]nown as the 'complete preemption' doctrine," it provides that if the subject matter of a putative state law claim has been totally subsumed by federal law -- such that state law cannot even treat on the subject matter -- then removal is appropriate. Although completely preempted claims are rare, they are held to satisfy the well-pleaded complaint [rule].

Lontz, 413 F.3d at 439-40 (internal citations omitted).

Defendants here assert two bases for federal subject-matter jurisdiction. First, they argue that because Plaintiffs' state-law usury claims involve loans originated by Community State Bank, a state-chartered bank,[5] their claims are subject to complete preemption under Section 27 of the Federal Deposit Insurance Act ("FDIA"), 12 U.S.C. § 1831d ("Section 27").  (Notice of Removal ¶¶ 3-17.) Second, Defendants argue removal is proper based on diversity jurisdiction.  (Id. at ¶¶ 18-25.)  Specifically, they assert that Plaintiffs are diverse from Defendants, and that the attorneys' fees sought by Plaintiffs under the Georgia PayDay Lending Statute exceed $75,000 and therefore satisfy the amount in controversy requirement.  (Id.)  The Court shall address these alleged bases for federal jurisdiction in turn.

A.    Complete Preemption

To demonstrate jurisdiction on the basis of complete preemption, Defendants must show that (a) Section 27 of the FDIA completely preempts state-law usury claims against state-chartered banks; and (b) that Plaintiffs' state-law

---

[5]  For the sake of simplicity, the Court in this opinion uses the term "state-chartered" to refer to out-of-state, FDIC-insured banks such as Community State Bank.

usury claims against Defendants fall within the class of claims completely

preempted by Section 27.  Before evaluating whether Defendants have satisfied

their burden with respect to these two subjects, it is worth pausing to distinguish

"complete preemption" from "defensive preemption."

        1.    *Complete Preemption versus Defensive Preemption*

      Although the concepts of complete preemption and defensive preemption

"are linguistically related, they are not as close kin jurisprudentially as their names

suggest."  Lontz, 413 F.3d at 440.  "Under the complete-preemption doctrine,

certain federal statutes are construed to have such 'extraordinary' preemptive force

that state-law claims coming within the scope of the federal statute are transformed,

for jurisdictional purposes, into federal claims -- i.e., completely preempted."

Sullivan v. Am. Airlines, Inc., 424 F.3d 267, 272 (2d Cir. 2005); see also Cotton v.

Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1281 (11th Cir. 2005) ("Under [the

complete preemption] doctrine, Congress may preempt an area of law so

completely that any complaint raising claims in that area is necessarily federal in

character and therefore necessarily presents a basis for federal court jurisdiction.").

"[W]hen complete preemption exists, there is 'no such thing' as the state action,

since the federal claim is treated as if it appears on the face of the complaint

because it effectively displaces the state cause of action."  Lontz, 413 F.3d at 441 (internal citation omitted).  "Since the complaint is then understood to state a federal question, the well-pleaded complaint rule is satisfied, thereby justifying removal under § 1441(b)."  Id.

Defensive preemption, by contrast, does not provide a district court with federal subject-matter jurisdiction:  "[I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987); see also Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1212 (11th Cir. 1999) (holding that defensive preemption "does not furnish federal subject-matter jurisdiction under 28 U.S.C. § 1331 . . . ."); Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 13 (2003) ("To be sure, [defensive] pre-emption requires a state court to *dismiss* a particular claim that is filed under state law, but it does not, as a general matter, provide grounds for removal.") (Scalia, J., dissenting).  Defensive preemption, which is alternately referred to as "ordinary preemption" in case law, "simply declares the primacy of federal law, regardless of the forum or the claim."  Lontz, 413 F.3d at

440.  "Many federal statutes -- far more than support complete preemption -- will

support a defendant's argument that because federal law preempts state law, the

defendant cannot be held liable under state law."  Sullivan, 424 F.3d at 272-73.[6]

2.     *Section 27 and Complete Preemption*

Defendants argue that Section 27 completely preempts state-law usury claims

against state-chartered banks.  Complete preemption is rare, and a defendant

seeking to establish complete preemption has a heavy burden.  See Lontz, 413 F.3d

at 441 ("Federalism concerns strongly counsel against imputing to Congress an

intent to displace a whole panoply of state law . . . absent some clearly expressed

direction.  The presumption, in other words, is against finding complete

preemption.");  Smith v. GTE Corp., 236 F.3d 1292, 1311 (11th Cir. 2001)

("[A]lthough the Supreme Court recognizes the existence of the complete

---

[6] Defensive preemption, comes in three forms:  express preemption, conflict preemption and field preemption.  Sullivan, 424 F.3d at 273.  As the court in Sullivan observed, some commentators (and judges) "seem to equate the defense of field preemption, which defeats a plaintiff's state-law claim because federal law 'occupies the field' within which the state-law claim falls, with the doctrine of complete preemption, which creates federal subject-matter jurisdiction over preempted state-law claims." 424 F.3d at 273 n.7 (citations omitted).  This Court agrees with the Second Circuit's admonition that although these two "both rest on the breadth, in some crude sense, of a federal statute's preemptive force," they are "better considered distinct."  Id.

-10-

preemption doctrine, the Court does so hesitatingly and displays no enthusiasm to

extend the doctrine into [new] areas of law . . . .").  The United States Supreme

Court has found this heavy burden satisfied only with respect to three statutes:

Section 301 of the Labor-Management Relations Act ("LMRA"), Section 502(a) of

the Employee Retirement Insurance Security Act ("ERISA"), and Sections 85 and

86 of the National Banking Act ("NBA").  See Avco Corp. v. Aero Lodge No. 735,

390 U.S. 557, 558-62 (1968) (LMRA); Metro. Life Ins. Co. v. Taylor, 481 U.S. 58,

65-66 (1987) (ERISA); Beneficial, 539 U.S. at 7-11 (NBA).

"The 'touchstone' of federal jurisdiction under the complete preemption

doctrine is 'Congress's intent'."  Smith, 236 F.3d at 1312 (citations omitted).  The

Court must "determine whether Congress not only intended a given federal statute

to provide a federal defense to a state cause of action that could be asserted either

in a state or federal court, but also intended to grant a defendant the ability to

remove the adjudication of the cause of action to a federal court by transforming

the state cause of action into a federal one."  Id. at 1312 (quoting BLAB T.V. of

Mobile, Inc. v. Comcast Cable Commc'ns, Inc., 182 F.3d 851 (11th Cir. 1999))

(internal punctuation omitted).  In making this determination, the Eleventh Circuit

has held that the following factors should be considered:  "whether the state claim

-11-

is displaced by federal law under an ordinary preemption analysis, whether the federal statute provides a cause of action, what kind of jurisdictional language exists in the federal statute, and what kind of language is present in the legislative history to evince Congress's intentions." BLAB, 182 F.3d at 857.

Defendants do not point to any provision in Section 27, express or implied, or in its legislative history to support the required showing that Congress intended for complete preemption to apply here.  Their argument concerning complete preemption is based exclusively on Section 27's similarity to Sections 85 and 86 of the NBA.  (See Defs.' Resp. in Opp'n to Mot. to Remand at 6-11.)  The Supreme Court held in Beneficial that state-law usury claims against a national bank can be removed to federal court because Sections 85 and 86 of the NBA completely preempt such claims.  539 U.S. at 11.  In reaching this conclusion, the Court was careful to distinguish between complete preemption and defensive preemption:

> If, as petitioners asserted in their notice of removal, the interest that the bank charged to respondents did not violate § 85 limits, the statute unquestionably pre-empts any common-law or Alabama statutory rule that would treat those rates as usurious.  The section would therefore provide the petitioners with a complete federal defense.  Such a federal defense, however, would not justify removal.  Only if Congress intended to provide the exclusive cause of action for usury claims against national

> banks would the statute be comparable to the provisions
> that we construed in the [cases addressing complete
> preemption under the LMRA and ERISA].

Id. at 2063-64.  Relying on its "longstanding and consistent construction of the

[NBA] as providing an exclusive federal cause of action for usury against national

banks," as well as the "special nature of federally chartered banks," the Court held

that Sections 85 and 86 completely preempted state-law usury claims against

national banks:  "there is, in short, no such thing as a state-law claim of usury

against a national bank."  Id. at 2064.

Here, Defendants argue that because Section 27 should be read *in pari*

*materia* (*i.e.*, interpreted consistently) with the NBA, Section 27 likewise authorizes

complete preemption with respect to state-law usury claims against state-chartered

banks.  (Defs.' Resp. in Opp'n to Mot. to Remand at 6-11.)  The Court finds this

argument insufficient to establish that Section 27 completely preempts state-law

usury claims against state-chartered banks.

The plain language and historical context of Section 27 supports Defendants'

argument that it was enacted to ensure equal treatment of state-chartered banks and

national banks with respect to state-law usury claims.  See Greenwood Trust Co. v.

Commonwealth of Mass., 971 F.2d 818, 826-27 (1st Cir. 1992) ("Congress tried to

-13-

level the playing field between federally chartered and state-chartered banks when it

enacted [Section 27].") (citing 126 Cong. Rec. 6,907 (1980); 126 Cong. Rec. 6,900

(1980)); see also 12 U.S.C. § 1831d(a) (stating that the purpose of Section 27 is

"to prevent discrimination against State-chartered [banks] . . . with respect to

interest rates . . . .").  This equal treatment is reflected in the strong defensive

preemption language found in Section 27, which provides that state-chartered

banks are permitted to charge the interest rates prescribed by this section

"notwithstanding any State constitution or statute which is hereby preempted for

the purposes of this section . . . ."  12 U.S.C. § 1831d(a).[7]  The Court also agrees

that, with respect to the interpretation and application of the federal cause of action

for usury against state-chartered banks created by Section 27, Sections 85 and 86

of the NBA serve as valuable guides.  See Greenwood Trust, 971 F.2d at 827

---

[7]  Of course, this strong express preemption is not sufficient, standing alone, to justify a finding of complete preemption.  See Lontz, 413 F.3d at 444 ("Even though their ordinary preemptive power is great, sections 7 and 8 [of the National Labor Relations Act] do not on their own terms confer federal jurisdiction and therefore cannot be the basis of removal through complete preemption."); Sullivan, 424 F.3d at 276 ("[R]emoval of state-law claims based on complete preemption becomes possible not solely by virtue of the preemptive force of a substantive federal statute such as the LMRA, ERISA, or [NBA], but rather because a federal statute with completely preemptive force also gives rise to original jurisdiction, and as a consequence allows removal under 28 U.S.C. § 1441.").

("The historical record clearly requires a court to read the parallel provisions of [the FDIA] and the [NBA] *in pari materia*.").

The Court is not persuaded, however, that interpreting these statutes consistently means that Section 27 necessarily completely preempts state-law usury claims against state-chartered banks. First, that Section 27 is viewed *in pari materia* with Sections 85 and 86 of the NBA is not sufficient, by itself, to establish that Section 27 is among the rare federal statutes giving rise to complete preemption. See Saxton v. Capital One Bank, 392 F. Supp. 2d 772, 782-83 (S.D. Miss. 2005) (rejecting the defendant's argument that state-law claims against state-chartered banks were subject to complete preemption under Section 27 based on its similarity to Sections 85 and 86 of the NBA: "Even if [Section 27] is patterned after §§ 85 and 86 of [the NBA] and provides a federal cause of action for usury by a state-chartered bank, this factor alone does not establish complete preemption.").

In addition, significant to the Supreme Court's finding of complete preemption under the NBA in Beneficial was the special character of national banks: "In finding that the [NBA] completely preempted state law governing interest rates, Beneficial stressed that national banks were the subject of unique national concern. Such banks are, after all, chartered at the national level and explicitly not governed

-15-

by state law." <u>Lontz</u>, 413 F.3d at 441.  This "unique national concern" is absent

here.  Unlike national banks, the banks covered by Section 27 are chartered at the

state level and are explicitly governed by state law in many and diverse respects.

Indeed, the FDIA itself expressly contemplates that states will retain substantial

regulatory authority over state banks insured by the FDIC.  <u>See</u> <u>BankWest</u>, 411

F.3d at 1301 ("[T]he FDIA itself makes it clear that while state banks are subject to

some federal regulation, the *states* remain the 'primary regulatory authority' over

state banks participating in the FDIC's deposit insurance program.") (citing 12

U.S.C. §§ 1813 (defining "State bank supervisor" as the state officer, agency or

other entity with "primary regulatory authority" over state banks); 1820(h)(1)(A)

(granting State bank supervisor regulatory authority over state banks with respect to

state laws governing, among other things, fair lending and consumer protection);

1831a(i) (providing that the section governing activities of insured state banks "shall

not be construed as limiting the authority of . . . any State supervisory authority to

impose more stringent restrictions")).  Simply put, Congress has allowed two

regulating systems -- one state and one federal -- for organizing, chartering and

operating banking institutions.

-16-

Defendants do not address this difference in their briefing, nor do they offer
any support for their argument that, absent complete preemption, Section 27
"cannot achieve its express purpose of avoiding discrimination and providing
parity" with respect to the permitted interest rates charged by state-chartered and
national banks.  (See Defs.' Resp. in Opp'n to Mot. to Remand at 10-11.)  The
strong express preemption set out in Section 27 protects state-chartered banks
from discrimination.  By arguing that this express preemption is ineffective without
complete preemption, Defendants presume that state courts are not as competent
as federal courts to interpret and apply the express preemption provided by Section
27.  The Court rejects this presumption.  This Court believes state courts are fully
competent to interpret the defensive preemption provided by Section 27 believing
further they will apply preemption appropriately when required.  See Geddes v.
Am. Airlines, Inc., 321 F.3d 1349, 1357 (11th Cir. 2003) ("We agree . . . that
'[s]tate courts are competent to determine whether state law has been preempted by
federal law and they must be permitted to perform that function in cases brought
before them, absent a Congressional intent to the contrary.'") (citing Railway Labor
Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co., 858 F.2d 936, 942 (3d Cir.
1988)).  Because Defendants fail to demonstrate that Section 27 should be included

-17-

among the few federal statutes which authorize complete preemption, remand is required.

### 3.    *Plaintiffs' State-Law Usury Claims*

Even if Section 27 completely preempted state-law usury claims against state-chartered banks, this does not mean Plaintiffs' claims are automatically subject to removal.  The proposed complete preemption of Section 27 applies to all state-law usury claims against state-chartered banks.  Plaintiffs did not assert any claims against a state-chartered bank; their state-law usury claims are asserted only against Georgia payday stores.  Consequently, the Court must determine whether Plaintiffs' state-law usury claims against Defendants would be within the class of claims subject to complete preemption under Section 27, if such preemption existed.

Defendants assert that such claims are subject to complete preemption, and thus removal, because there is no difference between state-law usury claims against state-chartered banks and such claims against the payday store agents of state-chartered banks.  (See Defs.' Resp. in Opp'n to Mot. to Remand at 13-18.) Plaintiffs disagree, arguing that Section 27 does not preempt state-law usury claims when applied to non-bank agents.  (Pls.' Reply in Supp. of Mot. to Remand at 9-

18.)  Having carefully reviewed the arguments of the parties, including their supplemental briefing concerning the Eleventh Circuit's decision in BankWest, the Court concludes Plaintiffs' claims are outside the complete preemption of Section 27, assuming such complete preemption exists.

In BankWest, the Eleventh Circuit recognized a distinction between regulation of state-chartered banks and regulation of in-state payday store agents of such banks.  BankWest involved a constitutional challenge to the Georgia PayDay Lending Statute (the "PayDay Statute"), which prohibits in-state payday stores from making payday loans directly, and also declares unlawful any agency arrangement between payday stores and exempt entities (such as out-of-state, state-chartered banks) where the payday store has "the predominant economic interest" in loan revenue.  See O.C.G.A. § 16-17-2(b)(4); BankWest, 411 F.3d at 1296-98. A contingent of Georgia payday stores and state-chartered banks sought a preliminary injunction against the enforcement of the PayDay Statute on the grounds, *inter alia*, that it is defensively preempted by Section 27 of the FDIA. BankWest, 411 F.3d at 1299-1300.  The district court denied the plaintiffs' application for a preliminary injunction, finding that Section 27 did not preempt the PayDay Statute, and the plaintiffs appealed.  Id.

-19-

The Eleventh Circuit upheld the district court's ruling regarding preemption, holding that the PayDay Statute's restrictions on payday stores' activities constituted a permitted agency regulation on the circumstances in which non-bank payday stores operating in Georgia may properly serve as agents for out-of-state banks. Id. at 1305-09. In doing so, the court emphasized the distinction between direct regulation of the interest rates charged by out-of-state banks and regulation of the conduct of the in-state agents of the out-of-state banks. Id. at 1305-06. The court held that even if the PayDay Statute's direct regulation of the conduct of in-state agents had an indirect effect on the terms under which an out-of-state bank can arrange for in-state agents to procure these loans, this indirect effect did not implicate Section 27, and the statute therefore was not preempted:

> [Section] 27(a) refers to "State banks" and certainly protects its subsidiaries, various employees, divisions, and the like. Section 27(a) does not address or purport to protect an out-of-state bank's ability to use any local, non-bank vendors as agents or to have any form of agency relationship with non-bank vendors. There is also nothing in § 27(a) that preempts a state's power to regulate local, non-bank entities operating within the state as independent contractors or agents for an out-of-state bank. Thus, in the absence of some "clear and manifest" expression of Congressional purpose that States may not regulate non-bank payday stores' agency relationships which effectively enable the non-bank stores to do what

-20-

>Congress permits out-of-state banks to do, the Georgia
>statute is not preempted.

411 F.3d at 1306.[8] The BankWest court's distinction between regulation of out-of-state banks and regulation of in-state payday agents of such banks supports the Court's conclusion that Plaintiffs' claims are outside of the class of claims subject to complete preemption under Section 27, even if there was complete preemption under Section 27.

This conclusion is also supported by analogy to state-law usury claims involving loans originated by national banks. After Beneficial, it is clear that state-law usury claims against a national bank are subject to complete preemption under the NBA. See 539 U.S. at 11. However, where a plaintiff asserts state-law usury claims against an in-state agent of a national bank, and does not name the national bank as a defendant, courts have held that the NBA's complete preemption is not applicable, notwithstanding that such claims involve a loan originated by a national bank.

---

[8] The court also held that the PayDay Statute's provision regarding "aiders and abettors" of unlawful payday lending and the portion providing for the voiding of unlawful payday loans are not preempted by Section 27. See BankWest, 411 F.3d at 1308-09.

In <u>Long v. Ace Cash Express, Inc.</u>, No. 3:00-cv-1306, 2001 WL 34106904 (M.D. Fla. 2001), the plaintiff brought state-law usury claims against an in-state payday store. The complaint did not name a national bank as a defendant -- the plaintiff alleged that although the loan documents showed a national bank as the originator of the loan, the payday store was the true lender. <u>Id.</u> at *1. The defendant payday store removed the case to federal court on the basis of complete preemption, arguing that the loan at issue was obtained from a national bank and therefore any claim for usury based on the loan was completely preempted by the NBA. <u>Id.</u> The court rejected this argument, holding that the plaintiff's decision not to name the national bank as a defendant meant the NBA did not apply. <u>Id.</u> The court noted that the issue of which entity was the "true lender" under the state's usury law was a matter of substantive law and would be addressed by the state court after remand. <u>Id.</u>

Other courts have similarly rejected the removal of state-law usury claims against non-national banks on the basis of complete preemption under the NBA. <u>See, e.g.</u>, <u>Colorado v. Ace Cash Express, Inc.</u>, 188 F. Supp. 2d 1282, 1284-85 (D. Colo. 2002) (holding complete preemption of the NBA did not apply, and removal was thus improper, where the plaintiff's state-law usury claims were brought against

-22-

the payday store agent only, notwithstanding the defendant's argument that the

claims constituted an indirect attack on the national bank's right to charge the

interest permitted under the NBA); In re Cmty. Bank of N. Va., 418 F.3d 277, 296-

97 (3d Cir. 2005) (holding removal on the basis of complete preemption was

improper where the complaint asserted claims only against non-bank purchasers of

mortgage loans, and did not name a national or state-chartered, federally insured

bank as a defendant); Green v. H&R Block, Inc., 981 F. Supp. 951, 955 (D. Md.

1997) ("There is no support for the proposition that an entity that acts in concert

with, or is in privity with, a national bank is entitled to remove state claims to federal

court under the NBA."). Cf. Goleta Nat'l Bank v. Lingerfelt, 211 F. Supp. 2d 711,

717-18 (E.D.N.C. 2002) ("While it is true that the NBA does preempt state efforts

to regulate the interest collected by national banks, the NBA patently does not

apply to non-national banks.") (addressing defensive preemption).[9]

---

[9]  To counter these authorities, Defendants rely primarily on Krispin v. May
Department Stores, 218 F.3d 919 (8th Cir. 2000).  In Krispin, the court held that
usury claims against a department store were subject to complete preemption under
the NBA because the credit card accounts at issue had been assigned to a wholly
owned national bank subsidiary of the store, and it was the bank, not the store, that
"issues credit, processes and services customer accounts, and sets such terms as
interest and late fees."  218 F.3d at 924.  Krispin is not the law of this Circuit and,
for the reasons cited by the Court in BankWest, is distinguishable from this case.

The distinction between state-law usury claims against national banks and claims against in-state payday agents of such banks was implicitly acknowledged by the Eleventh Circuit in Jenkins v. First American Cash Advance of Georgia, LLC, 400 F.3d 868 (11th Cir. 2005). In that case, the plaintiff brought state-law usury claims against in-state payday agents as well as the national bank which originated the loans. Id. at 872-73. The defendants removed the case on the basis of complete preemption under the NBA. Id. at 873. The district court denied the defendants' subsequent motion to compel arbitration, and the defendants appealed. Id.

On appeal, the plaintiff argued that removal was not appropriate because the district court lacked subject-matter jurisdiction. Id. at 873 n.3. Specifically, she argued that because her state-law usury claims were brought primarily against the

---

See BankWest, 324 F. Supp. 2d at 1349 ("In this case, unlike the department store and its national bank subsidiary in Krispin, the Banks and their [payday store] Agents are completely separate and independent entities. Nothing in Krispin suggests that application of the [PayDay Statute] to the separate and independent non-bank Agents under the circumstances prescribed by the [statute's] de facto lender provisions implicates the Banks or their rights under the federal banking laws."). Cf. Colorado, 188 F. Supp. 2d at 1284-85 (distinguishing Krispin on the basis of the parent-subsidiary relationship between the store and the bank).

payday agents, not the national bank, complete preemption under the NBA did not

apply.  Id.  The Eleventh Circuit rejected this argument, holding that because the

plaintiff chose to name a national bank as a defendant, complete preemption

applied and removal was proper:

> Jenkins attempts to evade the Supreme Court's holding in
> [Beneficial National Bank v. Anderson] by contending her
> usury claims were brought primarily against First
> American, not [First National Bank in Brookings
> ("FNB")].  She argues FNB was only included in her
> complaint because she was seeking a declaratory
> judgment finding FNB to be a "sham" lender.  Her
> complaint, however, expressly named both First
> American and FNB as Defendants and charged them both
> with usury.  The complaint consistently used the plural
> form of "Defendants."  She asserted that "Defendants
> violated" Georgia usury laws, and that she was "entitled
> to recover from Defendants all interest charges paid by
> [her]."  Because Jenkins charged a national bank with
> violating Georgia usury laws, removal was proper.

Id.  Although the court did not address whether the NBA's complete preemption

would have applied in the absence of a named national-bank defendant, its

emphasis on the plaintiff's inclusion of the national bank is consistent with the

district court holdings outlined above.[10]

---

[10]  Both the district court and the Eleventh Circuit in BankWest found that
state-law usury claims against the in-state payday agents are not defensively

Because Defendants fail to demonstrate that Section 27 completely preempts

state-law usury claims against state-chartered banks, and fail to demonstrate that

Plaintiffs' state-law usury claims against Defendants fall within the class of claims

subject to complete preemption under Section 27, removal on the basis of

complete preemption was not proper.[11] [12]

---

preempted by Section 27. See 324 F. Supp. 2d at 1351; 411 F.3d at 1306-09.
That such claims are not defensively preempted is further support for the Court's
determination that such claims are not subject to complete preemption under
Section 27. See Cotton, 402 F.3d at 1281 (holding that cases addressing defensive
preemption are helpful in examining complete preemption, since "if it appears that a
claim is not even defensively preempted, then it will not be completely preempted
either").

[11] Defendants devote much of their briefing to arguing that they are not the
"*de facto*" lenders for the payday loans at issue here, and that Community State
Bank is the true lender. (Defs.' Resp. in Opp'n to Mot. to Remand at 13-17.) Like
the district court in Long, the Court concludes that whether or not Defendants are
"*de facto*" lenders with respect these loans is an element of the substantive claims
and should be addressed by the state court. 2001 WL at *1; see also Lingerfelt,
211 F. Supp. 2d at 717-18 (characterizing the issue of which entity is true lender
with respect to payday loans as a "sharp factual issue" for the fact-finder to
decide). Cf. Flowers v. EZPawn Okla., Inc., 307 F. Supp. 2d 1191, 1205-06 (N.D.
Okla. 2004) (addressing the issue of whether the state-chartered bank or payday
store is the true lender in the context of motion to remand, but expressly
questioning "whether this determination based on state law should be made in the
first instance by a federal court on removal rather than the state court prior to
removal").

[12] Of course, that the Court finds Plaintiffs' claims are not completely
preempted by Section 27 does not prejudice Defendants' ability to assert defensive

-26-

B.    <u>Diversity Jurisdiction</u>

Defendants also argue removal was proper based on diversity jurisdiction under 28 U.S.C. § 1332.  (Notice of Removal ¶¶ 18-25.)  Section 1332 provides that this Court "shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  28 U.S.C. § 1332(a).  It is undisputed that complete diversity exists in this case.  The parties disagree, however, regarding whether the amount-in-controversy requirement is satisfied.

In their Complaint, Plaintiffs expressly disavow any claim for damages in the aggregate for the individual Plaintiffs or any member of the putative class in excess of $75,000, exclusive of interest and costs.  (Compl. ¶¶ 117-20.)  Notwithstanding this representation, Defendants argue the amount in controversy here exceeds $75,000 based on the attorneys' fees sought by Plaintiffs in connection with their claims under the PayDay Statute.  Thus, whether the amount-in-controversy requirement is satisfied in this case depends on how an award of attorneys' fees

---

preemption as a defense if the action is remanded to state court.  <u>See</u> <u>Cotton</u>, 402 F.3d at 1292 ("[I]f a district court remands to state court claims that are not completely preempted, the defendant may still attempt to raise [ordinary preemption] as a defense in the state court.").

under the PayDay Statute is attributed to the members of the putative class.  If the award is viewed in the aggregate, with the total amount attributed to each class member, then the amount in controversy exceeds $75,000 and diversity jurisdiction exists.  If the award is divided *pro rata* among the members of the putative class, then the amount in controversy is not satisfied and remand is required.[13]

The Eleventh Circuit's decision in <u>Cohen v. Office Depot, Inc.</u>, 204 F.3d 1069 (11th Cir. 2000), is controlling.  In <u>Cohen</u>, the court examined how an award of attorneys' fees under certain Florida statutes should be attributed to each class member for amount-in-controversy purposes.  <u>Id.</u> at 1080.  Construing its previous decisions regarding attorney fee awards, the court held that

> a statutory claim for attorney fees may not be considered in the aggregate for amount in controversy purposes, at least not when both of these factors are present:  (1) the class members have a "separate and distinct" right to recover attorney fees under the relevant statute; and (2) state law provides that the statutory attorney fees serve to compensate the class members for their injuries.

---

[13]  Neither party contends that the potential attorneys' fees award under the PayDay Statute will be so large that, even when divided *pro rata* among the putative class members, it would cause the total amount in controversy to exceed $75,000 per class member.

Id. at 1081-82.  Applying this test, the court held that the statutory claim for

attorney fees at issue in that case could not be considered in the aggregate:

> Because the attorney fees authorized by the Florida
> statutes in this case serve to compensate plaintiffs for
> losses resulting from allegedly unlawful business
> practices, and because claims for those fees could be
> asserted by the class plaintiffs in individual suits, we
> conclude that the claimed fees do not constitute "a single
> title or right in which [the class members] have a common
> and undivided interest."

Id. at 1082 (quoting Snyder v. Harris, 394 U.S. 332, 335 (1969)).

The Eleventh Circuit reached a similar result in Darden v. Ford Consumer

Finance Co., 200 F.3d 753 (11th Cir. 2000).  Darden was a class action in which

the plaintiffs sought damages and attorneys' fees in connection with the alleged

unauthorized sale of credit life insurance in Georgia.  Id. at 754-55.  The case

originally was filed in state court, but was removed to federal court on the basis of

diversity jurisdiction.  Id.  Because the plaintiffs disclaimed any damages in excess

of $75,000, the sole jurisdictional issue for the Court of Appeals to decide was

"whether all of the [plaintiffs'] shares of any potential attorneys' fees awarded

under Georgia's RICO statute may be aggregated to satisfy the amount-in-

controversy requirement for diversity jurisdiction."  Id. at 756.  Relying on the same

factors cited in <u>Cohen</u>, the court held that an award of attorneys' fees under

Georgia's RICO statute could not be aggregated:

> After review, we hold that each Plaintiff's share of the
> attorneys' fees recoverable under Georgia's RICO statute
> may not be aggregated to satisfy the
> amount-in-controversy requirement because under
> Georgia law each individual Plaintiff has a separate and
> distinct statutory right or claim to recover those
> attorneys' fees, and Georgia law provides that those fees
> are to compensate the injured Plaintiff.  The Plaintiffs here
> are joining to enforce their individual rights to recover
> attorneys' fees as part of their compensatory damages;
> they are not joining to enforce a single right in which they
> have a common and undivided interest and are not
> seeking to deduct sums as attorneys' fees from a
> common fund.

<u>Id.</u> at 758-59.

Like the statutes at issue in <u>Cohen</u> and <u>Darden</u>, the PayDay Statute authorizes

claims for attorneys' fees in individual suits:  "In a successful action to enforce the

provisions of this chapter, a court shall award a borrower, or class of borrowers,

costs including reasonable attorneys' fees."  O.C.G.A. § 16-17-3.  Defendants

argue that Plaintiffs' claimed fees must be considered in the aggregate because,

unlike the statutes at issue in <u>Cohen</u> and <u>Darden</u>, the PayDay Statute provides for

an award of fees to the class as a whole.  (Defs.' Resp. in Opp'n to Mot. to

-30-

Remand at 18-20.)  Defendants argue the statute's phrase "a class of borrowers" should be construed to alter the nature of an award of attorneys' fees in the class-action setting such that Plaintiffs' right to attorneys' fees is transformed from an individual right to a right in which they have a common and undivided interest.  (See id. at 19.)

Defendants' argument is without merit.  The focus of the Cohen and Darden decisions was the right of the class members to recover attorneys' fees in individual lawsuits.  This right is undisputably present here.  Defendants fail to offer any support for their position that the phrase "class of borrowers" should be read to transform the nature of the attorneys' fee award under the statute.  This language simply tracks the language of the preceding sentence, which provides that "[a] civil action under [this statute] may be brought on behalf of an individual borrower or on behalf of an ascertainable class of borrowers," see O.C.G.A. § 16-17-3, and is more plausibly read as simply clarifying that attorneys' fees are available in both individual and class-action lawsuits.[14]

_____

[14]  It is undisputed that the claimed attorneys' fees here satisfy the second element of the test under Cohen, namely, that the claimed fees under the PayDay Statute are designed to compensate the class members for their injuries.  Defendants argue that "under the plain language of Cohen," both of the elements

-31-

Defendants bear the burden of demonstrating that jurisdiction exists, and their arguments and the facts here are insufficient to demonstrate that this Court has jurisdiction over the claims asserted in this action.[15]  Because the Court lacks jurisdiction over this action, removal was improper and Plaintiffs' Motion to Remand is GRANTED.

## III.    CONCLUSION

---

listed by the court must be present to attribute an award of attorney fees *pro rata* among the class members.  (Defs.' Resp. in Opp'n to Mot. to Remand at 19.) This argument ignores the plain language of the <u>Cohen</u> decision.  In the footnote immediately following the portion of the opinion in which the Eleventh Circuit set out the two-factor test, the court expressly stated that "[b]ecause both factors are present in this case, we need not decide whether either one standing alone would prevent aggregation of attorney fees to satisfy the amount in controversy."  <u>Cohen</u>, 204 F.3d at 1082 n.15.  Like the court in <u>Cohen</u>, the Court finds that both factors are present here, and therefore it expresses no opinion regarding whether the second factor, standing alone, is sufficient to prevent aggregation.

[15]  Defendants argue in a footnote of their supplemental briefing that federal question jurisdiction is proper under the test discussed in <u>Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.</u>, --- U.S. ---, 125 S. Ct. 2363 (2005).  In <u>Grable & Sons</u>, the Court relied on a narrow category of federal "arising under" jurisdiction where federal-question jurisdiction "will lie over state-law claims that implicate significant federal issues . . . and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." <u>Id.</u> at 2366-67.  This ground for federal jurisdiction was not raised in Defendants' Notice of Removal and was argued for the first time in Defendants' supplemental briefing.  As a result, this issue is not properly before the Court and will not be addressed here.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion for Extension of Time to Reply to Plaintiffs' Motion to Remand [6] is **GRANTED** *NUNC PRO TUNC*.

**IT IS FURTHER ORDERED** that Defendants' Motion Requesting Substitution of Exhibit C to Defendants' Notice of Removal [16] is **GRANTED**. The Clerk of Court is **DIRECTED** to **STRIKE** the original Exhibit C to Defendants' Notice of Removal and **INSERT** in its place the redacted version of Exhibit C attached to Defendants' Motion.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Remand [5] is **GRANTED** and the Clerk of Court is **DIRECTED** to **REMAND** this action to the State Court of Fulton County, Georgia.

**SO ORDERED**, this 12th day of December, 2005.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE