UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

PEOPLE OF THE STATE OF NEW YORK, by
ELIOT SPITZER, Attorney General of
the State of New York,

Plaintiffs,

   -against-                         1:03-CV-1320
                                         (LEK/DRH)

COUNTY BANK OF REHOBOTH BEACH,
DELAWARE, CRA SERVICES CORP., d/b/a
CASHNET and TC SERVICES CORPORATION,
d/b/a TELECASH,

Defendants.

---

<u>**MEMORANDUM-DECISION AND ORDER**</u>

## I.    **Background**

The present action was filed in Supreme Court, Albany County, on September 25, 2003, by the People of the State of New York ("the State") against County Bank of Rehoboth Beach, Delaware ("County Bank"), CRA Services, d/b/a Cashnet ("Cashnet"), and TC Services d/b/a Telecash ("Telecash") (collectively, "Defendants").

The State is suing Cashnet and Telecash, pursuant to New York Executive Law § 63(12) and New York General Business Law §§ 349(b) and 350-d, for (a) charging and receiving civilly and criminally usurious rates of interest on loans and forbearances, in violation of New York General Obligations Law § 5-501 and New York Penal Law § 190.40, respectively; (b) making loans without being licensed by the New York Superintendent of Banking, in violation of Banking Law § 340; and (c) engaging in fraud, deception, and false advertising. The State is suing County Bank,

1

pursuant to New York Executive Law § 63(12), for (a) rendering aid to Cashnet and Telecash and engaging in conduct that provides Cashnet and Telecash with means and opportunity to commit criminal usury under New York Penal Code § 190.40 and that in fact aids Cashnet and Telecash to commit criminal usury, in violation of New York Penal Law § 115; (b) engaging in repeated fraudulent business conduct; and (c) engaging in deceptive acts and practices, in violation of New York General Business Law § 349.

The State alleges that Defendants "together repeatedly have engaged in illegal, fraudulent, and deceptive business practices in connection with short term loans to New York consumers" and seeks injunctive relief, restitution, damages, penalties, and costs against [D]efendants." Amended Verified Complaint at ¶ 1. On October 30, 2003, defendants County Bank and Telecash, with the written consent of Cashnet, removed the action to this Court, contending that the State's claims, while drafted as state law claims, actually challenge the legality of interest charges on loans made by County Bank, a federally insured state-chartered bank. Defendants claim that because the legality of such charges is governed solely by Section 27 of the Federal Deposit Insurance Act, 12 U.S.C. § 1831d ("Section 27"), and because this statute provides for complete preemption of claims against a federally insured financial institution such as County Bank, this Court has federal question jurisdiction over this matter, pursuant to 28 U.S.C. § 1441, et seq. Presently before the Court is the State's motion to remand this action to the Supreme Court of the State of New York, Albany County. For the following reasons, the motion to remand is granted.

## II.    Facts

As stated above, the State alleges that Defendants engaged in fraudulent and illegal business practices in connection with short term loans to New York consumers. Specifically, the complaint

alleges that defendants Cashnet and Telecash use County Bank, an FDIC insured Delaware bank, as a willing front through which they make short term, high interest loans, commonly referred to as "payday loans." <u>See</u> Amended Verified Complaint at ¶ 2. The State also alleges that these payday loans typically carry interest rates exceeding 500%, rendering them illegal under New York's usury laws, and that Defendants misrepresent the loans as County Bank loans in order to take advantage of the federal preemption over state interest rate regulation.[1] <u>See</u> <u>id.</u> at ¶ 3.

The State contends that while County Bank is the lender in name, Cashnet and Telecash in fact provide the capital for, market, advertise, originate, service, and collect payment of the loans. <u>See</u> <u>id.</u> at ¶ 4. It alleges that Cashnet and Telecash pay County Bank an annual fee to use County Bank's name and charter to make loans, pay County Bank a small percentage of the finance charge received on each loan, and agree to indemnify County Bank for losses and liabilities arising out of the loan operation, while County Bank itself, because it receives all principal plus part of the finance charge from Cashnet and Telecash within twenty four hours of the loan's origination, shares none of the risk. <u>See</u> <u>id.</u> After the borrower receives the loan, the State claims, Cashnet and Telecash collect additional fees, which are both illegal and usurious, from borrowers as consideration for extending the term of repayment. <u>See</u> <u>id.</u>

## III. Discussion

### (a) Removal Standard

When a party challenges the removal of an action from state court with a motion to remand,

---

[1] 12 U.S.C. § 1831d allows a state chartered bank to charge interest throughout the United States at any rate permitted in its home state. Because Delaware law does not limit the amount of interest that Delaware's banks can charge, County Bank can legally make payday loans in New York State.

3

"the burden falls squarely upon the removing party to establish its right to a federal forum by competent proof." R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651, 655 (2d Cir. 1979) (internal quotations omitted). "Further, federal courts are required to construe the removal statute narrowly, with any doubts being resolved against removal." Crucible Materials Corp. v. Coltec Industries, Inc., 986 F.Supp. 130, 131 (N.D.N.Y. 1997) (citing Somlyo v. J. Lu-Rob Enterprises, Inc., 932 F.2d 1043, 1046 (2d Cir. 1991)). "If the removing party cannot demonstrate federal jurisdiction by competent proof, the removal was in error and the district court must remand the case to the court in which it was filed." Cespuglio v. Ward, 2004 WL 1088235, at *2 (S.D.N.Y. 2004).

"To determine whether [a] claim arises under federal law, [courts] examine the 'well pleaded' allegations of the complaint and ignore potential defenses: 'a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution.'" Beneficial National Bank v. Anderson, 539 U.S. 1, 6 (2003) (quoting Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1914)). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." Id. However, there are two exceptions to this general rule, as a state claim may be removed to federal court either when Congress expressly so provides or when a federal statute wholly displaces the state-law cause of action through complete preemption. See id. at 8. With respect to this second exception, "[w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law. This claim is then removable under 28 U.S.C. § 1441(b), which authorizes any claim that arises under

4

federal law to be removed to federal court." Id. (internal quotations omitted).

    **(b)**    **Whether Plaintiffs' State Law Claims are Preempted**

    Defendants contend that this action is appropriate for removal because Section 27 completely preempts all of the state-law claims asserted against them. "Complete preemption prevents plaintiffs from denying a defendant access to federal court if the actual nature of the complaint is federal, by artfully pleading a complaint as including solely state law claims." Cicio v. Does, 321 F.3d 83, 92 (2d Cir. 2003). Defendants claim that the State has artfully pleaded its complaint "to avoid the application of Section 27 by arguing that the true lender is not County Bank but rather, in actuality, is [Cashnet] or [Telecash]." Defendants' Memorandum at 9. In other words, Defendants contend that while the State names Cashnet and Telecash as the "true" lenders in its complaint, thereby bringing its usury claims outside the purview of Section 27, the State's claims nevertheless "relate to the overall amount of interest charged by County Bank on the loans," and "[a]ny claim of this nature is exclusively governed and completely preempted by Section 27." Id. The Court disagrees.

    In Flowers v. EZPawn Oklahoma, Inc., 307 F.Supp.2d 1191 (N.D.Okla. 2004), the Northern District of Oklahoma dealt with this very question under virtually identical circumstances. In that case, a class action lawsuit, the plaintiff brought Oklahoma state-law claims of usury and fraud against two defendants, alleging that those defendants had "[entered] into a 'sham' relationship with County Bank of Rehoboth Beach, Delaware . . . for the purpose of claiming federal preemption and evading state usury, fraud and consumer protection laws." Id. at 1196. While County Bank was not itself a defendant in that action, the court's decision whether to allow removal on the basis of Section 27 complete preemption rested on a determination as to whether County Bank was actually

5

the lender in a series of allegedly usurious payday loans similar to those at issue in the instant action.

In <u>Flowers</u>, as here, the defendants contended that they merely acted as servicers for loans made by County Bank, and that, as County Bank was the lender, removal was appropriate on complete preemption grounds because federal banking law governed the legality of the interest rates. In denying removal, the <u>Flowers</u> court stated that "[n]o claims have been brought against County Bank in this lawsuit. The state action claims are asserted against EZPawn and EZCorp, neither of which is a state-chartered, federally insured (or national) bank." <u>Id.</u> at 1204. Similarly, in the present action, the State's state law usury claims are brought solely against Cashnet and Telecash. The claims brought by the State against County Bank here involve only the alleged fraudulent and deceptive business practices through which it aided Cashnet and Telecash in committing usury. Further, it is undisputed that the state law causes of action in which the State has actually named County Bank as a defendant are governed New York State, rather than federal, law.

This Court agrees with the court's decision in <u>Flowers</u>, and the weight of legal precedent is consistent with that decision. For instance, in <u>Long v. Ace Cash Express, Inc.</u>, 2001 WL 34106904, at *1 (M.D.Fla. 2001), another rent-a-bank case, the defendant based its removal on the assertion that the loan forming the basis of the plaintiff's complaint was obtained from a national bank and that the plaintiff's state law usury claims against the non-bank defendant were therefore preempted. Finding that removal was not appropriate in that case, the court noted that "Plaintiff's complaint alleges that while Plaintiff's loan documents show that Plaintiff entered into an agreement with [the national bank], in reality Plaintiff entered into a loan agreement with Defendant. Defendant is not a national bank and thus would not be covered by the terms of the National Bank Act; consequently,

6

Plaintiff has sued Defendant under Florida state law." Id.[2]  The court went on to state that the question before it in the defendant's removal action was not "[w]hether or not Plaintiff can properly sue Defendant, a party not named in the loan documents, under [Florida law]," but was rather whether federal law preempted any state law claims that the plaintiff had against the defendant.  Id. Because the defendant was not itself a national bank, the court found that federal law could not preempt the state law claims.

In another case, Colorado v. Ace Cash Express, Inc., 188 F.Supp.2d 1282 (D.Colo. 2002), a Colorado district court rejected the defendant's contention that the plaintiffs' complaint was artfully pleaded so as to use state law claims in an attempt to prevent the non-party national bank from charging the interest permitted by federal law.  That court agreed with the plaintiffs' assertion that "Defendant and the national bank are *separate* entities and their relationship does not give rise to complete preemption under the [National Bank Act] . . . [t]he [c]omplaint *strictly* is about a non-bank's violations of *state* law.  It alleges *no* claims against a *national bank* under the *NBA*."  Id. at 1285 (quoting Plaintiffs' Reply Memorandum).  Because the plaintiffs' complaint directed no allegations at a national bank, and because the weight of legal precedent supported the proposition that the National Bank Act does not provide federal question removal jurisdiction in actions against entities that are not banks, the court found removal unwarranted.

Finally, in Brown v. Ace Cash Express, Inc., No. 01-2674, slip. op. (D.Md. Nov. 14, 2001), the court made a similar analysis, rejecting removal upon finding that Ace Cash Express was "not a

---

[2] As both parties acknowledge, Sections 85 and 86 of the National Bank Act, which concerns national banks, and Section 27 of the Federal Deposit Insurance Act, which governs FDIC-insured State-chartered banks, are generally cited and discussed together and are construed in pari materia. See The State's Memorandum at 12-13; Defendants' Memorandum at 7-8.

national bank, nor [was] a national bank named as a party to this lawsuit"and that "indeed, the involvement of a national bank in the underlying transaction is alleged merely to be nominal and pretextual." Id. at 4.

That the above cases involved suits filed only against non-bank defendants does not bear on this Court's decision here. The distinction would be relevant if the State in this case were asserting state law usury claims against County Bank. However, as stated above, the State's claims against County Bank include only allegations of criminal facilitation, fraudulent business conduct, and deceptive business practices, none of which is preempted by federal law. Thus, as the State's state law usury claims are brought against Cashnet and Telecash only, the Court sees no reason to deviate from the reasoning in the cases cited above. Nor does the fact that these defendants are alleged to have conspired with County Bank to charge usurious fees for the loans in question change the Court's analysis. "There is no support for the proposition that an entity that acts in concert with, or is in privity with, a national bank is entitled to remove state claims to federal court under the NBA." Green v. H&R Block, Inc., 981 F.Supp. 951, 955 (D.Md. 1997).

Defendants cite Hudson v. Ace Cash Express, Inc., 2002 WL 1205060 (S.D.Ind. 2002), in which the plaintiff sued both a national bank and a non-bank entity for engaging in usurious payday loans, in support of their position that the State's state law claims are preempted in the instant action. In that case, the plaintiff contended that the national bank's role in servicing her loan was so insignificant that the court should have regarded the non-bank entity as the true lender. The court dismissed the action, finding that the lending arrangement between the national bank and non-bank entity was lawful under the National Bank Act "even if the purpose of the arrangement was to avoid application of state usury laws." Id. at *4.

The Hudson decision is not persuasive in the instant action. First, Hudson was before the court on a motion to dismiss, and the court explicitly distinguished the Long and Colorado decisions, which dealt with "the issue of whether the National Bank Act preempts the field so as to establish federal jurisdiction" rather than the issue of "whether the National Bank Act provided a complete defense to the state law claims on the merits." Id. at *7. Second, in Hudson, the plaintiff's state law usury claim was brought against both the national bank defendant and the non-bank defendant, and the plaintiff there contended that the federal statute should not apply to the national bank under the circumstances presented in that case. In other words, the plaintiff in that case alleged a state law claim of usury against a national bank and claimed that federal law should simply not apply to bank loans "made for the purpose of evading state usury laws, or to loans in which a national bank 'rents' its charter to some other entity." Id. As discussed above, the State in the present action has asserted usury claims against Telecash and Cashnet, but not County Bank. Thus, Hudson's analysis is inapplicable to the issue of whether federal law should preempt state-law usury claims brought against non-bank defendants Telecash and Cashnet.

Defendants also cite Krispin v. May Department Stores, Co., 218 F.3d 919 (8th Cir. 2000) in support of their contention that Plaintiffs' state law claims are preempted. In that case, the defendant, a Missouri department store, issued credit cards to the plaintiffs, and the store later assigned its interest in the credit cards to a wholly-owned subsidiary national bank located in Arizona. The store then issued a notice to the plaintiffs stating that, effective immediately, credit was being extended by the Arizona national bank. After these credit accounts were transferred to the bank, the store purchased the credit card receivables originated by the bank on a daily basis while also collecting and receiving cardholders' payments. The Krispin court held that because the

9

bank was the originating entity of the credit, the bank was also the real party in interest, and the plaintiffs' state law usury claims against the store therefore implicated the National Bank Act. Id. at 924.

The circumstances in Krispin, however, are different than those presented in the instant action, as has been noted in several other decisions. See e.g., Colorado, 188 F.Supp.2d at 1284-85 (federal jurisdiction invoked in Krispin because the store and the national bank at issue were related based on an assignment shifting of contractual rights and duties to another because the national bank was a wholly-owned subsidiary of the store); Flowers, 307 F.Supp.2d at 1194-95 (citing Colorado and finding that defendants' reliance on Krispin was misplaced because the defendants were separate entities, and their relationship was unlike the relationship between the parties in Krispin); Brown, No. 01-2674 at 4-5 (that the national bank's involvement in the underlying transaction was alleged merely to be nominal and pretextual distinguished the case from Krispin, in which the national bank involved was a wholly-owned subsidiary of the named defendant). The Court agrees with this line of caselaw, which has found that the Krispin analysis is not applicable under circumstances in which the national bank and the non-bank involved in the loans at issue are separate entities.

In light of the foregoing analysis, and given that the State in this case has alleged state law usury claims against non-banks Cashnet and Telecash only, the Court finds that no complete preemption exists and that the Court does not have subject matter jurisdiction over this action.

IV.     **Conclusion**

For the reasons stated above, it is hereby

ORDERED, that the State's motion to remand is **GRANTED**; and it is further

10

ORDERED, that this matter is **REMANDED** to the Supreme Court of the State of New

York, Albany County; and it is further

ORDERED, that the Clerk serve a copy of this order on all parties.

IT IS SO ORDERED.

DATED:  May 25, 2004
        Albany, New York


Lawrence E. Kahn
U.S. District Judge