United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CROSS-COUNTY BANK, a Delaware Corporation, and APPLIED CARD SYSTEMS, INC., a Delaware corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. C-01-4190 SC<br><br>ORDER RE: RESPONDENT'S MOTION TO DISMISS FOR LACK OF FEDERAL <u>JURISDICTION</u> |
| Petitioners, | | |
| v. | | |
| DANA KLUSSMAN, an individual, | | |
| Respondent. | | |

## I. **<u>INTRODUCTION</u>**

Presently before the Court are Respondent Dana Klussman's ("Respondent," "Plaintiff" or "Klussman") Motion to Dismiss for lack of federal jurisdiction and Cross County Bank's ("CCB") and Applied Card System, Inc.'s ("ACS") (collectively "Petitioners" or "Defendants") Petition to Compel Arbitration. For the reasons set forth below, this Court hereby: (1) declines to address the arbitration issue raised in the motion filed by CCB and ACS, (2) dismisses the action commenced by CCB and ACS against Dana Klussman, and (3) remands Dana Klussman's action against CCB, ACS, et al. to the Superior Court of the State of California, Alameda County, for lack of federal

subject matter jurisdiction.

## II. BACKGROUND

On October 9, 2001, Dana Klussman, on behalf of herself and all others similarly situated, filed a class action against CCB, ACS, and others in the Superior Court for the State of California, Alameda County. (*Klussman v. Cross County Bank et. al.,* Case No. 2001-02668). In her original complaint, Plaintiff set forth seven causes of action which all sounded in state law. Plaintiff's claims all related to interactions that Klussman and other class members had with the Defendants in connection with credit cards issued to them by CCB.

On November 9, 2001, pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, CCB and ACS filed a Petition to Compel Arbitration in this Court in an action styled *Cross County Bank et al. v. Dana Klussman*. In their Petition Defendants argue that an arbitration provision in the agreements between Plaintiff and Defendants obligate Plaintiff to submit to binding arbitration for resolution of Plaintiff's underlying claims.

On November 13, 2001, CCB and ACS filed a Notice of Removal, pursuant to which Klussman's state court action was removed to this Court. CCB and ACS asserted that this Court had subject matter jurisdiction because Section 521 of the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA"), 12 U.S.C. § 1831d, completely preempts Klussman's state law claims. The removed action was related to

the Petition filed by CCB and ACS, and on May 15, 2002 this Court heard Petitioner's Motion to Compel Arbitration and Klussman's motions to dismiss the action against her and remand her complaint back to state court. In its May 15, 2002 Order this Court (1) declined to address the arbitration issue raised in the motion filed by CCB and ACS, (2) dismissed the action commenced by CCB and ACS against Dana Klussman, and (3) remanded Dana Klussman's action against CCB, ACS, et al. to the Superior Court of the State of California, Alameda County, for lack of subject matter jurisdiction.

On September 8, 2003, the Ninth Circuit vacated this Court's Order in light of the United States Supreme Court's decision in *Beneficial Nat'l Bank v. Anderson*, 123 S.Ct. 2058 (2003). See <u>Cross Country Bank v. Klussman</u>, 74 Fed.Appx. 796, 2003 WL 22088801 (9th Cir. Sept. 8, 2003). The Ninth Circuit remanded the case to this Court to decide whether the allegations in Klussman's complaint are completely preempted under the reasoning in *Anderson*:

> While it appears that the rationale of the Supreme Court's decision in *Anderson* would extend to usury claims against state chartered, federally insured banks such as CCB, we do not decide this question. Instead, we remand to the district court for it to consider and decide, in the first instance, whether and the extent to which any of these allegations are preempted under *Anderson* and applicable law, providing a basis for federal jurisdiction. The district court is also

3

> instructed to consider the impact, if any, of federal regulations, such as 12 C.F.R. § 7.4001(a), on the issue of whether the charges at issue in the complaint constitute "interest" or are otherwise of a nature as to require preemption of state law challenges.

78 Fed.Appx. at 797-98, 2003 WL 22088801, at *1.

Consequently, this Court is again asked to decide whether the allegations in Klussman's complaint are completely preempted so as to confer original subject matter jurisdiction on this Court and provide a basis for Defendant's removal of Klussman's state court action.[1] Defendants argue that Klussman's allegations amount essentially to a claim for usury and thus are completely preempted according to the rationale of the Supreme Court's decision in <u>Anderson</u>. Plaintiff adamantly argues that she has not asserted any usury claims against Defendants, and thus the case was improperly removed because there is no federal subject matter jurisdiction over this action. Plaintiff completely disavows any interpretation of her complaint which would include a claim alleging that she had been charged a rate

---

[1] A separate issue is which of Plaintiff's complaints the Court should evaluate in making this determination. The appeal to the Ninth Circuit considered the question of federal subject matter jurisdiction only with respect to Klussman's original complaint. However, Klussman's action against CCB and ACS has been ongoing in state court since this Court's May 15, 2002 Order. The complaint has been amended three times, the most recent of which occurred on January 30, 2004. Klussman argues that this Court should look at her Third Amended Complaint in deciding whether there is federal subject matter jurisdiction in this case, while CCB and ACS argue that it is still the original complaint that controls this determination. This issue will be addressed subsequently.

4

of interest which is usurious under state law.  Having read Plaintiff's complaint and the papers submitted in connection with this motion and for the reasons articulated below, the Court Hereby Grants Plaintiff's motion to dismiss for lack of federal subject matter jurisdiction and Hereby Remands this action to the Superior Court of the State of California, Alameda County, for lack of subject matter jurisdiction.

### III. LEGAL STANDARD

#### A. Removal Jurisdiction

Federal courts have limited subject matter jurisdiction.  A suit filed in state court may be removed to federal court only if the federal court would have had original subject matter jurisdiction over the suit.  28 U.S.C. § 1441(a); Caterpillar, Inc. v. Williams, 482 U.S. 386 (1987).  Remand to state court may be ordered for lack of subject matter jurisdiction under 28 U.S.C. § 1447©).  Ordinarily, "jurisdiction must be analyzed on the basis of the pleadings filed at the time of the removal without reference to subsequent amendments".  Sparta Surgical Corp. v. Nat'l Ass'n of Secs. Dealers, Inc., 159 F.3d 1209, 1213 (9th Cir.1998).  A plaintiff may not compel remand under 28 U.S.C. § 1441(b) by amending a complaint to eliminate the federal question on which the notice of removal was based.  Id.

Out of respect for the independence of state courts, and in order to control the federal docket, the removal statute is narrowly construed and the court must reject jurisdiction if there is any doubt as to whether removal was proper.  Duncan v.

Steutzle, 76 F.3d 1480, 1485 (9th Cir. 1996); <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992). Moreover, the burden of establishing federal jurisdiction is on the party seeking removal. <u>Duncan</u>, 76 F.3d at 1485. When the removal of an action to federal court is contested, "the burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof'." <u>R.G. Barry Corp. v. Mushroom Makers, Inc.</u>, 612 F.2d 651, 655 (2nd Cir. 1979). Here, Defendants bear the burden of establishing by competent proof that the Court has subject matter jurisdiction over Plaintiff's claims.

<u>B. Federal Question Jurisdiction and Complete Preemption</u>

In this case Defendants argue that the Court has federal question jurisdiction over Plaintiff's claims. Federal question jurisdiction depends on whether the "action arise[s] under the Constitution, laws, or treaties of the United States." <u>28 U.S.C. § 1331</u>. In making this determination, a court generally must apply the "well-pleaded complaint rule." <u>Toumajian v. Frailey</u>, 135 F.3d 648, 652 (9th Cir.1998) (citing <u>Metropolitan Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63 (1987)). Under this rule, the existence of a federal jurisdiction must be determined from the face of the plaintiff's well-pleaded complaint, without consideration of any defenses that are raised or anticipated. <u>Caterpillar, Inc.</u>, 482 U.S. at 393. Moreover, the plaintiff is generally the master of his lawsuit and can avoid federal jurisdiction by relying exclusively on state law in his complaint. <u>Id.</u>

6

Federal preemption is typically raised as a defense to a plaintiff's cause of action. As such, this defense "does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." Metropolitan Life, 481 U.S. at 63. However, the Supreme Court has recognized an exception to the well-pleaded complaint rule: "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Id. at 63-64. Where an area of law is "completely preempted," any state-law complaint falling under that area of the law arises under federal law for purposes of the well-pleaded complaint rule. Caterpillar, Inc., 482 U.S. at 393. The complete preemption doctrine rests on the notion that, "on occasion ... the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson, 201 F.3d 1212, 1215 (9th Cir. 1999), as amended by 208 F.3d 1170 (9th Cir. 2000). Such claims are recharacterized as federal claims for purposes of determining removal jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint.

### C. Complete Preemption of State Law Usury Claims Against National Banks

Sections 85 of the National Bank Act ("NBA"), 12 U.S.C. §

85, limits the amount of interest[2] that a national bank may charge, and section 86 provides the exclusive remedy for violations of that part.[3] Recently the United States Supreme Court determined that sections 85 and 86 of NBA completely preempt state law usury claims against national banks. <u>Beneficial Nat. Bank v. Anderson</u>, 123 S.Ct. 2058 (2003). In

---

[2] 12 C.F.R. § 7.4001(a) defines the term "interest" for purposes of section 85. It provides, in relevant part:

> The term "interest" as used in 12 U.S.C. § 85 includes any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees connected with credit extension or availability: numerical periodic rates, late fees, creditor-imposed not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds, overlimit fees, annual fees, cash advance fees, and membership fees.

[3] Section 85, 12 U.S.C. § 85, provides in relevant part:

> Any association may take, receive, reserve, and charge on any loan ... or other evidence of debt, interest at the rate allowed by the laws of the State ... where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more....

Section 86, 12 U.S.C. § 86, provides in relevant part:

> The taking, receiving, reserving, or charging a rate of interest greater than is allowed by section 85 of this title, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same....

8

Anderson, 26 individual plaintiffs filed suit in state court against a national bank for allegedly charging excessive interest in violation of both "the common law usury doctrine" and an Alabama usury statute. Anderson, 123 S.Ct. at 2060. The plaintiffs' complaint made no mention of any federal law. The defendant-bank then removed the action to federal court contending that sections 85 and 86 of NBA completely preempt the field of usury claims against national banks. The Supreme Court agreed, finding that:

> In actions against national banks for usury, [sections 85 and 86 of NBA] supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive, even when a state complainant, as here, relies entirely on state law. Because §§ 85 and 86 provide the exclusive cause of action for such claims, *there is, in short, no such thing as a state-law claim of usury against a national bank*.

Anderson, 123 S.Ct. at 2064 (emphasis added).

### 1. Section 521(a) of DIDA

Section 521(a) of DIDA established the maximum interest rate for loans made by state-chartered, FDIC-insured banks.[4]

---

[4] Section 521(a), 12 U.S.C. § 1831d(a), reads in relevant part:
> In order to prevent discrimination against State-chartered insured depository institutions ... with respect to interest rates, if the applicable rate prescribed in this subsection exceeds the rate such State bank .. would be permitted to charge in the absence of this subsection, such State bank ... may, notwithstanding any State constitution or statute which is hereby preempted for the

9

1 This statute effectively allows state-chartered, nationally
2 insured banks such as CCB to choose among three interest rate
3 ceilings: (1) the highest rate lawfully permitted without
4 reference to section 521; (2) a rate not more than one percent
5 above the discount rate on 90-day commercial paper in effect at
6 the Federal Reserve Bank in the federal reserve district where
7 the lender is located; or (3) the highest rate allowed by the
8 laws of the state where the lender is located. The statute
9 expressly preempts any conflicting state law. Section 521(b) of
10 DIDA creates a federal remedy in favor of borrowers who are
11 charged rates in excess of the limits established in § 521(a).[5]

---

purposes of this section, take, receive,
reserve, and charge on any loan or discount
made ... interest at a rate of not more than 1
per centum in excess of the discount rate on
ninety-day commercial paper in effect at the
Federal Reserve Bank in the Federal Reserve
district where such State ... bank is located
or at the rate allowed by the laws of the State
... where the bank is located, whichever may be
greater.

[5]Section 521(b), 12 U.S.C. § 1831d(b), reads in relevant part:

If the rate prescribed in subsection (a) exceeds the
rate such State bank ... would be permitted to charge
in the absence of this section, and such State fixed
rate is thereby preempted by the rate described in
subsection (a), the taking, receiving, reserving, or
charging a greater rate of interest than is allowed by
subsection (a), when knowingly done, shall be deemed a
forfeiture of the entire interest which the note, bill,
or other evidence of debt carries with it, or which has
been agreed to be paid thereon. If such greater rate
of interest has been paid, the person who paid it may
recover in a civil action commenced in a court of
appropriate jurisdiction not later than two years after
the date of such payment, an amount equal to twice the
amount of the interest paid from such State bank

10

Borrowers may recover twice the amount of interest paid on a usurious loan, and the entire interest due on the loan will be deemed forfeited.

Section 521 of DIDA is the counterpart to sections 85 and 86 of NBA. Prior to the enactment of DIDA in 1980, regulation of interest rates charged by state banks was solely a matter of state law. By contrast, NBA has regulated the interest rates chargeable by national banks since its enactment in 1864. In enacting DIDA, Congress was trying to create a measure of functional and competitive equality between national banks and state-chartered banks by permitting state-chartered banks to enjoy the same "most favored lender" status that national banks enjoy. Greenwood Trust Co. v. Com. of Mass., 971 F.2d 818, 826-827 (1st Cir. 1992) ("Congress tried to level the playing field between federally chartered and state-chartered banks when it enacted DIDA"). To assure that equalization, Congress made a conscious choice to incorporate much of the language and standards of section 85 into DIDA. See Hill v. Chemical Bank, 799 F.Supp. 948, 952 (D.Minn. 1992)("The key language of § 521 is substantially identical to the language of §§ 85 and 86 of the National Bank Act ..."). As a result, courts have held that section 521 of DIDA should be construed *in pari materia* with sections 85 and 86 of the National Bank Act. See e.g., Greenwood Trust Co., 971 F.2d at 826-828 ("The historical record clearly requires a court to read the parallel provisions of DIDA

---

taking, receiving, reserving, or charging such interest.

11

and the Bank Act *in pari materia*."); Hill, 799 F.Supp. at 951-52.

## IV. DISCUSSION

Before addressing Defendants' basis for removal of this action, we note that we are determining subject matter jurisdiction as evinced on the face of Plaintiff's Third Amended Complaint[6]. The Court is aware of the general rule that jurisdiction is determined from the face of the complaint at the time of removal, and that at the time this action was first removed Plaintiff had only submitted her original complaint. However, this rule is predicated on not allowing plaintiffs to amend their complaint after a notice of removal has been filed in an effort to defeat federal jurisdiction. Here, Plaintiff only amended her complaint after this Court determined there was no federal jurisdiction and remanded the case back to state

---

[6]In her Third Amended Complaint, Plaintiff brings eight causes of action:

> (1) Violation of the Consumers Legal Remedies Act, California Civil Code § 1750 et seq.;
> (2) Violation of 6 Delaware Code § 2501 et seq. for Unfair Business Practices;
> (3) Breach of Contract for Defendants' alleged failure to post payments as of the date they were received;
> (4) Breach of Contract for Defendants' alleged failure to grant customers promised credit line increases;
> (5) Breach of contract for Defendants' alleged failure to honor the terms of the Credit Account Protection Plan;
> (6) Breach of Contract for Defendants' alleged closing of customers' account without justification or notice;
> (7) Fraud; and
> (8) Violation of the Cartwright Act, California Business and Professions Code § 16700 et seq.

12

court. This case proceeded in state court while the appeal to the Ninth Circuit was pending, and each amended complaint was filed by Plaintiff in state court in response to substantive motions brought by Defendants.[7] Under these circumstances, we think it makes little sense to resolve this motion on the basis of an outdated complaint that has been refined at the time and expense of the state court. We therefore exercise our discretion to evaluate jurisdiction here on the basis of Plaintiff's most recent complaint.

Defendants' argument is necessarily as follows. First, that Plaintiff's allegations fall under § 521(a) of DIDA because they are actually usury claims which challenge the "rate of interest" charged by an FDIC-insured state bank; second; that § 521(a) of DIDA is "substantially identical" to the language of §§ 85 and 86 of the National Bank Act ("NBA") and has been interpreted *in pari materia* with sections 85 and 86 of NBA; third, that NBA "completely preempts" state law usury claims against national banks; fourth, that § 521(a) of DIDA must therefore completely preempt Plaintiff's claims; and fifth, consequently federal question jurisdiction exists making removal appropriate.

The Court finds that the first step in Defendants' chain of reasoning is flawed because it is based on an untenable characterization of Plaintiff's complaint. The Court finds that

---

[7]Defendants brought three separate demurrers and motions to strike part of Plaintiff's complaint, which gave rise to each of Plaintiff's amended complaints.

Plaintiff's claims are not in fact usury claims, that is claims challenging the "rate of interest" charged by an FDIC-insured state bank within the meaning of section 521. Because this error alone is enough to take the case outside of 28 U.S.C. 1331, the Court will not analyze subsequent steps in Defendants' logic.

In this case, Plaintiff is challenging business practices they believe Defendants designed and implemented to defraud California consumers. Plaintiff alleges, *inter alia*, that Defendants misrepresented the nature and benefit of their services, placed unauthorized and undisclosed charges on customers' accounts, assessed late fees and other interest on these improper charges without informing customers, breached their express agreements with customers in various ways, and wrongfully closed consumers' accounts without reason and forced the consumer to pay fees to reopen the account. Third Amended Complaint. ¶¶ 2, 11, 16-18, 25, 41, 66.

With regard to "interest," Plaintiff does not challenge the legality of the *rate* of interest charged by Defendants. Rather, Plaintiff claims that various interest fees were not disclosed, were unwarranted, were based on charges that were themselves improper, and in short, should never have been charged at all. The various references in the complaint to "late fees," "add-on fees," and other "interest" merely detail what Plaintiff saw as "insult added to injury", and do not themselves form the basis for any usury claims. It is clear to the Court that it is not the *per se* amount of late fees or other "interest" that

14

1    Plaintiff challenges here but rather the allegedly improper and
2    deceptive manner in which it was charged.  Hence, this is not a
3    claim for usury.  See e.g., Carson v. H&R Block, Inc., 250
4    F.Supp.2d 669, 673 (S.D. Miss. 2003) ("[D]istrict court have
5    overwhelmingly found that claims for failure to disclose
6    interest charges are not within the scope of § 85 of the NBA.");
7    Hunter v. Beneficial Nat. Bank USA, 947 F.Supp. 446, 451-52
8    (M.D.Ala. 1996)(holding that a claim that the defendant
9    fraudulently failed to disclose certain charges for interest was
10   not a claim for usury.)

11        As stated above, section 521(b) of DIDA provides borrowers
12   a cause of action when state-chartered, FDIC insured banks
13   exceed the maximum interest rate chargeable on loans.  The
14   maximum rate is detailed in section 521(a).  In this case,
15   Plaintiff makes no claim that Defendants exceeded the rate set
16   forth under section 521(a), or any other usury laws for that
17   matter.  In every claim where Plaintiff uses the word "unlawful"
18   in connection with interest charged by Defendants, it is with
19   reference to the statutory claims they asserted -- the
20   California Consumer Legal Remedies Act, the Delaware Unfair
21   Practices Act, and the Cartwright Act -- and not with respect to
22   any usury laws.  Nowhere does Plaintiff even identify a usury
23   statute in her complaint, much less make it the basis for any of
24   her claims.  In these circumstances we cannot find that
25   Plaintiff's claims are completely preempted by section 521 of
26   DIDA.  See Hunter, 947 F.Supp. at 451 (to show that plaintiffs
27   were actually asserting usury claims against a national bank,

1 "[D]efendants have the burden of showing that plaintiffs are, in
2 fact, claiming excessive interest rates in violation of some
3 state law.").

4 The gravamen of Plaintiff's complaint is that Defendants
5 misrepresented the nature and cost of their services, -- not
6 that they charged a usurious rate of interest. As far as
7 interest is concerned, Plaintiff merely contends that Defendants
8 wrongfully assessed interest on charges that Plaintiff contends
9 were improper. Plaintiff is not contesting the rate of interest
10 Defendants assessed but the fact that it was assessed at all on
11 charges she believes were assigned in bad faith. Just because
12 Plaintiff refers to this interest as "excessive" or "exorbitant"
13 *in this context* does not make this a claim for usury.

14 As a final point it should be noted that the Alameda County
15 Superior Court has presided over this case for two and a half
16 years. In addition, that court has heard arguments and entered
17 orders on exactly the issue now before this Court, i.e., which
18 of Plaintiff's claims may be presented in state court and which
19 are preempted and has specifically held that any claim for usury
20 will not be part of the state court action. Therefore,
21 principles of comity and judicial economy reinforce the Court's
22 decision today.

**V.    CONCLUSION**

25 Remand is typically favored where federal jurisdiction is
26 not clear. In this case federal jurisdiction is far from clear.
27 Moreover, as stated, a plaintiff is "master" of his own

16

complaint, and thus he is permitted to assert any particular theory of law notwithstanding the possibility that there are others which may provide him a cause of action. Therefore, the fact that Plaintiff has elected to pursue her claims under breach of contract, fraud, etc., does not justify removal even if Plaintiff also has unpursued claims that Defendants charged a usurious rate of interest. For all of these reasons, we find that Plaintiff's complaint does not raise a federal question on its face and therefore this Court does not have jurisdiction over this action. The Court HEREBY GRANTS Plaintiff's motion to dismiss for lack of federal subject matter jurisdiction and HEREBY REMANDS this action to the Superior Court of the State of California, Alameda County.

**IT IS SO ORDERED.**

Dated: April 30, 2004

/s/ Samuel Conti
UNITED STATES DISTRICT JUDGE

17