# EXHIBIT 1

not protect users or others against bacteria, viruses, germs, or other disease organisms. Always clean and wash this product thoroughly before and after each use.''

If applicable, the following statement may also be used:
''Antibacterial properties will not wash off and are intended only to protect the product.''

All references to ''antibacterial'' properties and the required qualifying statements must be located together, must be printed in type of the same size, style, and color, and must be given equal prominence. Moreover, such references may not be given any greater prominence than other described product features.

## IV. Public Record and Electronic Submissions

The official record for this notice, as well as the public version, has been established under docket control number ''OPP–00530'' (including comments and data submitted electronically as described below). A public version of this record, including printed, paper versions of electronic comments, which does not include any information claimed as CBI, is available for inspection from 8:30 a.m. to 4 p.m., Monday through Friday, excluding legal holidays. The official record is located at the Virginia address in ''ADDRESSES'' at the beginning of this document.

Electronic comments can be sent directly to EPA at:
    opp-docket@epamail.epa.gov

Electronic comments must be submitted as an ASCII file avoiding the use of special characters and any form of encryption. Comment and data will also be accepted on disks in Wordperfect 5.1/6.1 or ASCII file format. All comments and data in electronic form must be identified by the docket control number ''OPP–00530''. Electronic comments on this notice may be filed online at many Federal Depository Libraries.

## V. Schedule for Finalizing the PR Notice

EPA plans to issue and make effective the final PR notice as soon as possible. We anticipate that the guidance will be made final and effective within the next 6 months.

## List of Subjects

Environmental protection, Antimicrobial pesticides, Treated articles exemption.

Dated: April 8, 1998.

**Marcia E. Mulkey,**
*Director, Office of Pesticide Programs.*

[FR Doc. 98–10227 Filed 4–16–98; 8:45 am]
**BILLING CODE 6560–50–F**

---

## FEDERAL DEPOSIT INSURANCE CORPORATION

### General Counsel's Opinion No. 10; Interest Charges Under Section 27 of the Federal Deposit Insurance Act

**AGENCY:** Federal Deposit Insurance Corporation (FDIC).

**ACTION:** Notice of General Counsel's Opinion No. 10.

---

**SUMMARY:** The FDIC's Legal Division has received a request for guidance regarding the types of charges that constitute ''interest'' for purposes of section 27 of the Federal Deposit Insurance Act. This General Counsel's Opinion is being provided for the benefit of the public, as well as institutions subject to section 27, because the statute speaks only in terms of ''interest'' but does not define the term. It is the Legal Division's opinion that the term ''interest,'' for purposes of section 27, includes those charges that a national bank is authorized to charge as interest under section 85 of the National Bank Act (NBA).

**FOR FURTHER INFORMATION CONTACT:**
Barbara I. Taft, Assistant General Counsel, (202) 898–6830 or Rodney D. Ray, Counsel, (202) 898–3556, Federal Deposit Insurance Corporation, Legal Division, 550 17th Street, N.W., Washington, D.C. 20429.

### Text of General Counsel's Opinion

General Counsel's Opinion No. 10; Interest Charges Under Section 27 of The Federal Deposit Insurance Act.

By: William F. Kroener, III, General Counsel.

### Background

Federal statutes establish the maximum amounts of interest that insured depository institutions may charge their customers. The interest charges are governed by section 85 of the National Bank Act (NBA) (12 U.S.C. 85) for national banks; section 27 of the Federal Deposit Insurance Act (FDI Act) (12 U.S.C. 1831d) for state-chartered insured depository institutions and insured branches of foreign banks; and section 4(g) of the Home Owners' Loan Act (HOLA) (12 U.S.C. 1463(g)) for savings associations.[1] Although contained in different parts of the United States Code, the latter two provisions are patterned after section 85 of the NBA and generally authorize interest to be charged on loans to customers at the greater of:

(1) A rate not more than one percent above the discount rate on 90-day commercial paper in effect at the Federal Reserve Bank for the federal reserve district in which the lender is located; or

(2) At the highest rate allowed by the laws of the state where the lender is located.

Congress initially addressed the issue of the maximum rates of interest that national banks could charge borrowers by enacting section 85 of the National Bank Act. That statute was enacted to foster a strong national banking system and protect national banks from potentially anti-competitive state legislation. *Tiffany* v. *National Bank of Missouri,* 85 U.S. 409, 412–13 (1873).

Currently, section 85 authorizes national banks to charge their customers interest rates allowed by the laws of the state where the bank is located.[2] The statute has been construed to authorize national banks to charge interest at rates authorized by state law for competing state institutions (the ''most favored lender doctrine''). *Tiffany,* 85 U.S. at 413.[3] It also has been construed to authorize the use of interest rates authorized by the state where the lender is located no matter where the borrower resides. *Marquette Nat'l Bank* v. *First Omaha Serv. Corp.,* 439 U.S. 299 (1978).

### I. Construction of Section 27

In the high interest rate environment of the late 1970s Congress recognized that section 85 of the NBA provided national banks with a distinct competitive advantage over state-chartered lending institutions, whose interest rates were constrained by state laws.[4] To establish competitive equality between state-chartered banks, savings associations, and national banks, section 27 was added to the FDI Act by section

---

[1] *See also* section 501 of the Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDMCA) (12 U.S.C. 1735f–7a) which addresses interest rates on certain types of residential real estate loans, and section 528 of the DIDMCA (12 U.S.C. 1735f–7a note (Choice of Highest Applicable Interest Rate).

[2] Section 85 also contains several alternative interest rate formulations which are not relevant to this opinion.

[3] *See also* 12 CFR 7.4001(b) (1997) (National bank may charge the maximum rate permitted to any state-chartered or licensed lending institution by the law of the state where the national bank is located).

[4] *See* 126 Cong. Rec. 30665 (1979) (statements of Senators Pryor and Bumpers).

521 of the Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDMCA), Pub. L. 96–221, 94 Stat. 132 (1980). Section 27 was intended to give state-chartered banks the benefit of section 85 and purposefully engrafted, at several points, language from the NBA.[5] *Greenwood Trust Co.* v. *Commonwealth of Massachusetts,* 971 F.2d 818, 826 (1st Cir.), *cert. denied,* 506 U.S. 1052 (1993).

Because similar language and concepts appear in both statutes they frequently have been cited and discussed together in court opinions and construed in *pari materia. See e.g., Greenwood Trust,* 971 F.2d at 827; *Hill* v. *Chemical Bank,* 799 F. Supp. 948, 953 (D. Minn. 1992); *Stoorman* v. *Greenwood Trust Co.,* 908 P.2d 133, 135 (Colo.), *cert. denied,* 116 S.Ct. 2498 (1996); *Copeland* v. *MBNA America Bank, N.A.,* 907 P.2d 87, 93 (Colo.), *cert. denied,* 116 S.Ct. 2498 (1996); *Hunter* v. *Greenwood Trust Co.,* 272 N.J. Super. 526, 532–38, 640 A.2d 855 (N.J. Super. 1994), *reinstated,* 146 N.J. 65, 679 A.2d 652 (N.J. 1996). The FDIC's practice also has been to construe the two provisions similarly. *See* FDIC Advisory Opinion No. 81–3, February 3, 1981, reprinted in [1988–1989 Transfer Binder] Fed. Banking L. Rep. (CCH) P 81,006 (state-chartered banks have the same "most favored lender" status under section 27 as national banks have under section 85 of the NBA); FDIC Advisory Opinion No. 81–7, March 17, 1981, reprinted in [1988–1989 Transfer Binder] Fed. Banking L. Rep. (CCH) P 81,008 (state-chartered banks have the same right to export interest rates under section 27 as national banks have under section 85 of the NBA).

### II. Charges Constituting Interest

While neither section 85 nor section 27 defines what charges constitute "interest," court decisions have not limited the scope of the term solely to a state's numerical percentage rate, but have broadly construed the term to include various other types of credit charges. *See e.g., Smiley* v. *Citibank (South Dakota), N.A.,* 116 S.Ct. 1730, 1734 (1996) (deferring to the Office of the Comptroller of the Currency's (OCC) regulation interpreting "interest," for purposes of section 85, as including payments compensating a creditor for making a loan, extending a line of credit, or any default or breach by a borrower of a condition upon which credit was extended, but excluding other types of payments, such as, payments to reimburse a creditor for loan processing fees, collateral insurance, or appraisal fees); *Greenwood Trust,* 971 F.2d at 824 (late payment fees and kindred charges may constitute "interest" under section 27); *Fisher* v. *First Nat'l Bank of Omaha,* 548 F.2d 255, 258–61 (8th Cir. 1977) (cash advance fees); *Watson* v. *First Union Nat'l Bank,* 837 F. Supp. 146, 150 (D.S.C. 1993) (overlimit fees); *Tikkanen* v. *Citibank (South Dakota) N.A.,* 801 F. Supp. 270, 278–79 (D. Minn. 1992) (late payment, over the limit fees, and similar charges); *Hill,* 799 F. Supp. at 954 (over the limit fees); *Stoorman,* 908 P.2d at 136 (late payment fees); *Copeland,* 907 P.2d at 94 (late payment fees); *Sherman* v. *Citibank (South Dakota), N.A.,* 272 N.J. Super. 435, 640 A.2d 325 (N.J. Super. 1994), *reinstated,* 146 N.J. 65, 679 A.2d 652 (N.J. 1996) (late payment fees); *Hunter,* 272 N.J. Super. at 537 (late payment fees).

### III. Other Agency Interpretations

The OCC has defined "interest" for purposes of the NBA by interpretive ruling as follows: "The term 'interest' as used in 12 U.S.C. 85 includes any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees connected with credit extension or availability: numerical periodic rates, late fees, not sufficient funds (NSF) fees, overlimit fees, annual fees, cash advance fees, and membership fees. It does not ordinarily include appraisal fees, premiums and commissions attributable to insurance guaranteeing repayment of any extension of credit, finders' fees, fees for document preparation or notarization, or fees incurred to obtain credit reports." 12 CFR 7.4001(a) (1997). Virtually the same definition also has been adopted by the Office of Thrift Supervision in connection with section 4(g) of the HOLA for savings associations.[6] *See* 12 CFR 560.110 (1997).

Although the OCC's interpretive ruling was only recently published in the Code of Federal Regulations, the ruling is consistent with the OCC's earlier legal interpretation of the term[7] and the United States Supreme Court has determined that it constitutes a reasonable interpretation of the statute. *Smiley,* 116 S.Ct. at 1736.

### Conclusion

Section 27 and section 85 of the NBA have been and should be, in the Legal Division's opinion, construed in *pari materia* because section 27 is patterned after section 85 and the provisions embody similar terms and concepts. Congress also clearly intended to establish competitive equality between state-chartered lending institutions and national banks with regard to interest rates by enacting section 27. In addition, the OCC and OTS have adopted similar regulatory definitions of "interest" for purposes of section 85 of the NBA and section 4(g) of HOLA, respectively. Therefore, it is the Legal Division's opinion that the term "interest", for purposes of section 27, includes those charges that a national bank is authorized to charge under section 85 of the NBA. *See* 12 CFR 7.4001(a) (1997).

Authorized to be published in the **Federal Register** by Order of the Board of Directors, dated at Washington, D.C., this 24th day of March, 1998.

Federal Deposit Insurance Corporation.

**James D. LaPierre,**

*Deputy Executive Secretary.*

[FR Doc. 98–10181 Filed 4–16–98; 8:45 am]

**BILLING CODE 6714–01–P**

---

## FEDERAL DEPOSIT INSURANCE CORPORATION

### Sunshine Act

Pursuant to the provisions of the "Government in the Sunshine Act" (5 U.S.C. 552b), notice is hereby given that at 10:07 a.m. on Tuesday, April 14, 1998, the Board of Directors of the Federal Deposit Insurance Corporation met in closed session to consider matters relating to the Corporation's corporate and supervisory activities.

In calling the meeting, the Board determined, on motion of Director Joseph H. Neely (Appointive), seconded by Director Julie Williams (Acting Comptroller of the Currency), concurred by Director Ellen S. Seidman (Director, Office of Thrift Supervision), and Acting Chairman Andrew C. Hove, Jr., that Corporation business required its consideration of the matters on less than seven days' notice to the public; that no earlier notice of the meeting was practicable; that the public interest did

---

[5] *See* 126 Cong. Rec. 6900 (1980) (statement of Sen. Proxmire); 126 Cong. Rec. 6907 (1980) (statement of Sen. Bumpers).

[6] The statutory language contained in section 4(g) of HOLA was enacted in section 522 of DIDMCA and was originally codified as section 414 of the National Housing Act (NHA)(12 U.S.C. 1730g (a)). The language was later transferred from the NHA to section 4(g) of HOLA by section 301 of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), Pub. L. No. 101–73, 103 Stat. 183, 282 (1989).

[7] *See,* OCC Interpretive Letter No. 670, February 17, 1995, reprinted in [1994–1995 Decisions] Fed. Banking L. Rep. (CCH) P 83618.