# EXHIBIT 2

1   BILL LOCKYER
        Attorney General
2   RICHARD M. FRANK
        Chief Assistant Attorney General
3   THEODORA BERGER
    MARY HACKENBRACHT
4       Senior Assistant Attorneys General
    DONALD A. ROBINSON (State Bar No. 72402)
5   NICHOLAS STERN (State Bar No. 148308)
        Deputy Attorneys General
6   California Department of Justice
    1300 I Street, 15th Floor
7   Sacramento, California 95814
    Telephone: (916) 323-3840
8   Fax No. (916) 327-2319

9   Attorneys for Amicus Curiae Bill Lockyer,
    Attorney General of the State of California,
10  the State of California Department of Toxic
    Substances Control, and the Central
11  Valley Regional Water Quality Control Board

12

13                  UNITED STATES DISTRICT COURT

14                  EASTERN DISTRICT OF CALIFORNIA

15

16

17  PEOPLE OF THE STATE OF CALIFORNIA )   Case No. CIV-S-00-2441 FCD JFM
    and CITY OF LODI, CALIFORNIA,     )
18                                    )   BRIEF OF AMICUS CURIAE BILL
                          Plaintiffs, )   LOCKYER, ATTORNEY GENERAL OF
                                      )   THE STATE OF CALIFORNIA, STATE
19                   v.               )   OF CALIFORNIA DEPARTMENT OF
                                      )   TOXIC SUBSTANCES CONTROL, and
20  M & P INVESTMENTS, et al.         )   CENTRAL VALLEY REGIONAL WATER
                                      )   QUALITY CONTROL BOARD
21                       Defendants.  )
    ――――――――――――――――――――――――――――― )   Hearing Date: April 19, 2002
22                                    )   Time: 10:00 a.m.
    AND RELATED COUNTERCLAIMS,        )   Dept.: 2
23  CROSS-CLAIMS, AND THIRD-PARTY     )   Judge: Hon. Frank C. Damrell
    COMPLAINTS.                       )
24  ――――――――――――――――――――――――――――― )

25

26

27

28

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

(1)    Is the State of California a party to this suit? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

(2)    Does California Code of Civil Procedure § 731 authorize a City Attorney to
       bring an action in federal court on behalf of the State of California? Specifically,
       does it authorize a City Attorney to bring such a suit under the Resource
       Conservation and Recovery Act of 1976 ("RCRA") § 7002 (42 U.S.C. § 6972)? . . . . . . 6

(3)    If California Code of Civil Procedure § 731 authorizes the City Attorney
       of Lodi to bring an action on behalf of the People of the State of California,
       has the State consented to federal jurisdiction when suit is brought in federal
       court in the name of the "People of the State of California?" . . . . . . . . . . . . . . . . . . . . 9

(4)    Does California Code of Civil Procedure § 731 specify the State of California's
       express intention to waive Eleventh Amendment immunity? . . . . . . . . . . . . . . . . . . . . . 10

(5)    Has the State of California waived its sovereign immunity by its conduct
       in this litigation, in particular through the conduct of the DTSC? . . . . . . . . . . . . . . . . . 11

(6)    If the State of California is not a party to this case, then who is the moving
       party in the motion for preliminary injunction and what is that party's
       standing to bring the motion? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

(7)    What effect, if any, does the Cooperative Agreement between DTSC
       and the City have on these issues? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

(8)    In light of the DTSC and RWQCB's letter, can the City Attorney continue
       to represent both the People of the State of California and the City? Is there
       a conflict of interest? If so, what is the nature of the conflict? . . . . . . . . . . . . . . . . . . . 15

(9)    What do DTSC and RWQCB mean when they state in their January 23, 2002
       letter "for the most part all that is required is rewording of the order so as
       to place obligations on Guild rather than on DTSC or the RWQCB?" . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . .    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

1

## TABLE OF AUTHORITIES

2  **Federal Cases**                                                                    Page

3  *Atascadero State Hospital v. Scanlon*, 473 U.S. 234 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

4  *BV Engineering v. Univ. of Cal. Los Angeles*, 858 F.2d 1394 (9th Cir. 1988),
       *cert. denied* 489 U.S. 1090 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5
6  *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*,
       527 U.S. 666 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11,12

7  *Edelman v. Jordan*, 415 U.S. 651 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

8  *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459 (1945) . . . . . . . . . . . . . . . . . . . . 9, 10, 11, 13

9  *Hill v. Blind Industries & Services of Maryland*, 179 F.3d 754 (9th Cir. 1999),
       *modified by* 201 F.3d 1186 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
10
   *Micomonaco v. State of Washington*, 45 F.3d 316 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . 10
11
   *Santee Sioux Tribe of Nebraska v. State of Nebraska*, 121 F.3d 427 (8th Cir. 1997) . . . . . . . . . . . 9
12

13  **State Cases**

14  *City of Oakland v. Brock*, 8 Cal.2d 639, 67 P.2d 344 (Cal. 1937) . . . . . . . . . . . . . . . . . . . . 4, 8

15  *People ex rel. Roberts v. Beaudry*, 91 Cal. 213, 27 P. 610 (Cal. 1891) . . . . . . . . . . . . . . . . . . . . 7

16  *People v. Hy-Lond Enterprises, Inc.*, 93 Cal.App.3d 734,
       155 Cal.Rptr. 880 (Cal.Ct.App. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 6, 12, 14
17

18  **Federal Statutes**

19  Resource Conservation and Recovery Act of 1976
       Section 1004(15), 42 U.S.C. § 6903(15) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 13
20     Section 7002, 42 U.S.C. § 6972 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
       Section 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 13
21

22  **State Constitution, Statutes**

23  California Constitution
       Article V, Section 13 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9
24     Article III, Section 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

25  California Code of Civil Procedure
       Section 731 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 7, 10
26

27

28

California Government Code
    Section 11040 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    Section 11042 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 14
    Section 12511 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 14
    Section 12512 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 14

Additional Sources

Chemerinsky, E., *Federal Jurisdiction*, § 7.6, at 358 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

"Environmental Protection in California: Court Action Powers of State and
Local Government Attorneys," 14 *Santa Clara Lawyer* 296 (1974) . . . . . . .    . . . . . . . . . . . . 8

1    At the Court's request. this amicus curiae brief is respectfully submitted by Bill Lockyer.

2  Attorney General of the State of California, the State of California Department of Toxic

3  Substances Control. and the Central Valley Regional Water Quality Control Board. collectively

4  referred to as the "State," to address the jurisdictional and other issues set forth in the Court's

5  January 28, 2002 Order.

6

7                                    INTRODUCTION

8    The Attorney General. the State of California Department of Toxic Substances Control

9  ("DTSC") and the Central Valley Regional Water Quality Control Board ("Regional Board") are

10  not parties to this action, but have been asked by the Court to address certain jurisdictional and

11  other issues raised in a January 23, 2002 letter sent by DTSC and the Regional Board to the

12  litigants in this case and the Court. Following a January 25, 2002 hearing. the Court issued its

13  January 28, 2002 Order requesting that the Attorney General. DTSC and the Regional Board

14  submit an amicus curiae brief on those issues.

15    Although the Court's January 28, 2002 Order suggests that the Attorney General and the

16  state agencies might submit separate briefs, the position of all these amicus curiae on the

17  jurisdictional and other issues is consistent and, therefore. the following brief is filed on behalf of

18  the Attorney General, as well as his client agencies.  The State appreciates the opportunity to

19  provide its input to the Court on these important questions of federal jurisdiction.

20    As a preliminary comment, most of the issues raised by the Court implicate the question

21  of whether the State or its agencies are "parties" to this litigation and whether a particular statute,

22  document or conduct constitutes "consent" by the State to federal jurisdiction. How the Court

23  answers these questions is important to the State because of its fundamental position that neither

24  it nor its agencies have made an "appearance" in the litigation and. more significantly, because

25  none of the attorneys on either side of this lawsuit are authorized to represent the State. its

26  agencies, or its entire People. That being the case. the State is not legally bound by

27  representations made by the litigants in their pleadings or in open court. The January 23, 2002

28

1

letter from DTSC and the Regional Board was sent with this paramount concern in mind. The State respectfully asks that the Court consider that letter and the following comments for the purpose of ensuring that the State's role is not misperceived by the parties in furtherance of their own goals, some of which may be contrary to the more comprehensive enforcement interests of agencies with true statewide jurisdiction.

### (1)    Is the State of California a party to this suit?

Neither the State of California nor any of its agencies are parties to this suit. This action was brought by the City of Lodi (herein at times referred to as the "City"), and it is the City that is the plaintiff in this suit. To the extent the City represents the "people" as well, that representation extends no further than those persons who reside in the City of Lodi.

The State respectfully suggests that the Court's concerns on this issue may have arisen, at least in part, because of statements made by counsel for plaintiff City of Lodi to the effect that it is a "representative" of the People of the State of California. In its brief submitted to the Court on February 19, 2002, the City asserts – erroneously – that its legal counsel, consisting of an elected official and a private law firm under contract with the City, have the authority to represent all of the People in the entire State of California.

Section 731 of the California Code of Civil Procedure (herein at times "Section 731") provides, in part, that a city attorney for a city in which a public nuisance exists, may bring an action to abate such nuisance "in the name of the people of the State of California." In its brief, the City construes this language from Section 731 – that such public nuisance actions may be styled in the name of the "people" – as authorization for it to act as the "state sovereign." City's Response, at 5. The City goes even further when it states, in its brief, that

"[a]s the public prosecutor, the City Attorney is acting not to protect the pecuniary interests of the state nor to execute the will of any elected or appointed officer of the State, but rather the interests of the public at large in the healthfulness of the environment and the appropriate stewardship of the natural resources within the State, the protection of

2

1    which is an inherent function of the state sovereign."

2  City's Response, at 3-4.

3        To the extent that the City is proffering that its actions displace State authority, the
4  Attorney General and the state agencies must disagree. First, there is no authority for making a
5  distinction between the "pecuniary" interests of the State's executive branch and the interests of
6  the sovereign in protecting health and safety and the environment. The City's desire to promote
7  the latter interest – as commendable and determined as it might be – does not yield the
8  conclusion that its attorneys represent the "state sovereign" (to the exclusion of the State's
9  agencies). The environmental agencies of the State's executive branch have the same mission as
10  the City Attorney asserts – to assure a safe and healthy environment. Indeed, those state agencies
11  are directed by state statute to enforce the State's environmental laws.

12        The City Attorney is also mistaken when he asserts that one of his functions is the
13  "appropriate stewardship of the natural resources within the State." On the contrary, the State
14  prosecutor who possesses this function is the Attorney General. Section 12600(b) of the
15  California Government Code provides that –

16        "It is in the public interest to provide the people of the State of California through
17        the Attorney General with adequate remedy to protect the natural resources of the State of
18        California from pollution, impairment, or destruction."

19  Under these statutory provisions, the California Legislature expressly gave the Attorney General
20  the authority to "maintain an action for equitable relief in the name of the people of the State of
21  California against any person for the protection of the natural resources . . . ." Calif. Govt. Code
22  § 12607.

23        The City Attorney cites no statute or constitutional provision expressly giving a local
24  government attorney the authority to protect the State's natural resources. That a local
25  government attorney lacks jurisdiction to bring an action to protect the State's natural resources,
26  wherever they might be found, is obvious. The Lodi City Attorney would certainly lack standing
27  to file an action in San Francisco County Superior Court to protect the State's natural resources
28

3

1   in that city. The geographical boundaries of the city represent the jurisdictional limits of a city

2   attorney. *See City of Oakland v. Brock*, 8 Cal.2d 639. 641. 67 P.2d 344 (Cal. 1937).

3         The leading case on the issue of whether a local prosecutor has the authority to represent

4   the interests of the State is *People v. Hy-Lond Enterprises. Inc.*, 93 Cal.App.3d 734, 155

5   Cal.Rptr. 880 (Cal.Ct.App. 1979). In *Hy-Lond*, the District Attorney of Napa County brought

6   suit in the name of the People against a corporation that operated several nursing homes in

7   California, and then subsequently submitted a stipulated judgment settling the matter. The case

8   had been referred to the District Attorney by the State Department of Health after that agency had

9   conducted an inspection of one of Hy-Lond's nursing homes and discovered numerous violations

10  of the California Health and Safety Code and the skilled nursing facility regulations. The

11  stipulated judgment covered all of Hy-Lond's facilities in the State and included express

12  restraints on the type of enforcement actions that could be brought against those facilities by the

13  Department of Health and the Attorney General. The judgment also gave Hy-Lond absolution

14  for all past violations of law. No state agency or prosecutor approved these restrictions on its

15  jurisdiction to enforce the law. Concerned that the language in the stipulated judgment

16  unlawfully purported to bind state agencies and officials. the Attorney General moved to set aside

17  and vacate the judgment. After the trial court denied his motion, the Attorney General appealed.

18        In reversing the trial court, the appellate court rejected Hy-Lond's argument that the grant

19  of power to the district attorneys includes the right to restrain the powers of other public officials

20  and agencies. Hy-Lond had argued that a litigant should be able to treat the State as a single

21  entity "to avoid being caught in the midst of a power struggle among various state agencies and

22  other entities." *Hy-Lond, supra*. 93 Cal.App.3d at 752. The court held that the district attorney's

23  argument "does not survive scrutiny" when the particular situation shows that the litigant is

24  attempting "to secure concessions which would limit the powers of other state agents or entities.

25  which he knows are involved and are not parties to the action." Id.

26        The court in *Hy-Lond* recognized that a district attorney acts as both a county officer and

27  a state officer, and that "in conducting the prosecution of violations of state law on behalf of the

28

4

1   people, the district attorney is acting as an agent of the state." *Hy-Lond*, 93 Cal.App.3d at 751.

2   The district attorney's authority does not extend, however, to grant jurisdiction to the court to

3   restrain the State Department of Health's authority over the operation and licensing of nursing

4   homes. Nor does an individual district attorney have the power "to surrender the powers of the

5   Attorney General and his fellow district attorneys to commence, when appropriate, actions [for

6   unfair business practices] in other counties. . . ." *Hy-Lond*, 93 Cal.App.3d at 753. Even though

7   representatives of the Department of Health had been involved, to a certain extent, in the District

8   Attorney's suit, and may even have "authorized the suit," there was no power on the part of the

9   district attorney to compromise the State's enforcement authority. *Hy-Lond*, 93 Cal.App.3d at

10  747-48.

11      Fundamentally, the State should not be considered a party to the instant action because

12  the City Attorney of the City of Lodi lacks any legal authority to be the legal representative of the

13  State. Article V, Section 13, of the California Constitution provides that the Attorney General is

14  the "chief law officer of the State." Sections 12511 and 12512 of the California Government

15  Code similarly provide that the Attorney General "has charge, as attorney, of all legal matters in

16  which the State is interested . . . " and shall "prosecute or defend all causes to which the State, or

17  any State officer is a party in his or her official capacity." Moreover, absent the Attorney

18  General's consent, the City Attorney of the City of Lodi cannot act as the legal counsel of DTSC,

19  the Regional Board, or any other state agency. California Government Code § 11042 provides

20  that "[n]o state agency . . . shall employ any legal counsel other than the Attorney General . . . ."

21  *See also* Calif. Govt. Code § 11040 (the consent of the Attorney General is required before a

22  state agency can employ counsel "in any matter of the State").

23      In *Hy-Lond*, the district attorney there, like the Lodi City Attorney in this case, had also

24  brought his action against Hy-Lond in the name of the "People of the State of California." There,

25  the Court found that the stipulated judgment went beyond the authority of the district attorney to

26  negotiate, including language that "[n]o actions pursuant to the Civil Code § 3369 *et seq.* shall be

27  brought by the People of the State of California for alleged violations . . . ." The court in *Hy-*

28

5

1  *Lond* held that this was an unlawful restriction on the State's authority to enforce state law, and

2  beyond the power of a local prosecutor to negotiate. 93 Cal.App.3d at 753.

3      Indeed, the very issue of most concern to the State is this: whether attorneys for the City

4  of Lodi, by describing themselves as the "state sovereign," can take actions that preclude state

5  agencies and their counsel, the Attorney General, and perhaps other public prosecutors, such as

6  district attorneys and other city attorneys, from pursuing appropriate enforcement action to

7  remedy the contamination at issue in this litigation. The City Attorney repeatedly asserts that his

8  role in this litigation is to represent the sovereign interests of the people of this state. Without

9  qualification, this statement cannot stand. Other state prosecutors have equal authority to bring

10  actions in the name of the People under Section 731, but differ from the City Attorney herein in

11  that they represent other constituencies. The flaw in the City Attorney's remarks on this issue is

12  the suggestion that the power to sue on behalf of the People includes the authority to seek this

13  Court's order for injunctive relief on behalf of all the People -- an injunction that would have a

14  preclusive effect on state agencies, state prosecutors and other local prosecutors who likewise

15  have the statutory authority to bring actions in the name of the People.

16      If the City acknowledges that it seeks no preclusive effect to its litigation and that its suit

17  is brought as the legal representative of the City's residents only, and the Court accepts this

18  limitation, then the question is more academic than real. The State submits that the only

19  acceptable, the only common-sense resolution of this dispute, is to restrict the legal authority of

20  the City and its attorneys to that role.

21

22      (2)    Does California Code of Civil Procedure § 731 authorize a City Attorney to bring

23          an action in federal court on behalf of the State of California? Specifically, does it

24          authorize a City Attorney to bring such a suit under the Resource Conservation

25          and Recovery Act of 1976 ("RCRA") § 7002 (42 U.S.C. § 6972)?

26      Section 7002 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §

27  6972 (herein at times "Section 7002"), was enacted by Congress in 1976. Under section

28

6

1   7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B), an action may be brought to restrain any person who is

2   contributing to the past or present handling, storage, treatment, transportation, or disposal of any

3   solid or hazardous waste which may present an imminent and substantial endangerment to

4   human health or the environment. By contrast, California Code of Civil Procedure section 731,

5   that authorizes a city attorney (along with district attorneys) to bring an action to abate a public

6   nuisance in the name of the people,[1] is an entirely separate and distinct remedy. This authority to

7   bring an action to abate a public nuisance was enacted by the California Legislature in 1872. The

8   State does not dispute that the City Attorney may bring such a state cause of action if it is

9   pendent to a RCRA claim, or to any other cause of action where jurisdiction resides in the federal

10  courts.

11          Under section 1004(15) of RCRA, 42 U.S.C. § 6903(15), a "person" authorized to

12  commence such a citizen suit includes "an individual, trust, firm, joint stock company,

13  corporation (including a government corporation), partnership, association, State, municipality,

14  commission, political subdivision of the State . . . ." Accordingly, the State does not question the

15  authority of the City to bring an action under Section 7002(a)(1)(B) of RCRA in the name of the

16  City. A municipality is expressly referred to in the definition of what "persons" may bring such

17  an action. Similarly, a State may bring a citizen suit under RCRA. The City Attorney, however,

18  does not represent, and has no authority under RCRA to represent, the State, in this or in any

19  other proceeding. See Response to Issue No. 1, above. More fundamentally, the definition of

20  "person" in section 1004(15) of RCRA does not include the term "the People."

21          That the City Attorney cannot represent the People of the entire State of California in a

22  RCRA citizen suit action is inescapable. If the City's suit under Section 7002 were deemed to be

23  on behalf of all the people of the State, would a resolution of that suit, by way of a judgment or

24  settlement, have the effect of precluding another public prosecutor, such as the Attorney General,

25  from bringing a suit under that same federal statute? The answer, of course, must be "No." Put

26

27          [1]Although not specifically mentioned in Section 731, the Attorney General has authority
    to maintain an action in the name of the people to abate a public nuisance. See People ex rel.
28  Roberts v. Beaudry, 91 Cal. 213, 27 P. 610 (Cal. 1891).

7

1  in more concrete terms, if the City obtained an injunction in the name of the "People" under

2  Section 7002, the result of which was to require the removal of all contamination from the <u>City</u>

3  <u>of Lodi's</u> drinking water wells, would that injunction foreclose a city attorney from an adjacent

4  city -- who the City of Lodi would have to concede has the same authority as a "state sovereign" -

5  - from bringing a RCRA claim to remedy contamination in its own water wells arising from the

6  same groundwater plume?

7       Surely, multiple actions by local prosecutors claiming to be the "state sovereign" is an

8  illogical scenario.   The authority of a city and its attorney is confined to the geographical limits

9  of the municipality. *City of Oakland v. Brock*, 8 Cal.2d 639, 641, 67 P.2d 344 (Cal. 1937) ("A

10  municipal corporation has generally no extraterritorial powers of regulation" and "may not

11  exercise its governmental functions beyond its corporate boundaries.")[2]  The litigants herein

12  should not mistakenly assume that this suit is a resolution of the interests of the entire State and

13  its People in remedying pollution that might have been caused by the defendants' activities.

14  / / /

15  / / /

16  / / /

17

18

19

20

21

22

23

24

25

---

26       [2] <u>See</u>, <u>also</u>, "Environmental Protection in California: Court Action Powers of State and
Local Government Attorneys," 14 *Santa Clara Lawyer* 296, 312 (1974) ("As the legal
27  representative of an incorporated city, the city attorney also possesses certain <u>limited</u>
environmental powers . . . ." [Emphasis supplied.]
28

8

    (3)    If California Code of Civil Procedure § 731 authorizes the City Attorney of Lodi to bring an action on behalf of the People of the State of California, has the State consented to federal jurisdiction when suit is brought in federal court in the name of the "People of the State of California?"

If an action to abate a public nuisance is brought in federal court by a city attorney as a state claim that is pendent to a federal cause of action, it would be appropriate for a city to bring this public nuisance cause of action, but not the entire federal suit, in the name of the People of the State of California. The denomination of this suit as being brought by the "People" does not, however, confer statewide jurisdiction on the city attorney, and certainly does not invest him with the authority to consent to federal jurisdiction on behalf of prosecutors and enforcement agencies with true statewide jurisdiction.

Where a city attorney brings a pendent cause of action to abate a public nuisance in federal court on behalf of the People, this action does not operate as either express or implied consent by the State or any of its agencies to federal jurisdiction; nor is it a waiver, in whole or in part, of state sovereign immunity. A city attorney has no authority to represent the State or any of its agencies in court; that authority resides only in the office of the Attorney General. Cal. Const., Art.V, § 13:, Calif. Govt. Code §§ 11042, 12511, 12512. Accordingly, the Lodi City Attorney's pendent state claim in federal court on behalf of the city's residents, cannot operate to grant consent by the State to federal jurisdiction. *Ford Motor Co. v. Dept of Treasury*, 323 U.S. 459, 469 (1945) (absent the powers of an attorney general at common law, no properly authorized executive or administrative officer of the State can waive the State's immunity from suit); *Santee Sioux Tribe of Nebraska v. State of Nebraska*, 121 F.3d 427, 431-32 (8th Cir. 1997) (state official may consent to suit in federal court only where authorized to do so by that State's constitution, statutes or decisions). As the City Attorney does not have express or implied powers to consent on behalf of the State to federal jurisdiction, a test that the Supreme Court said should be "construe[d] strictly,"[2] a federal lawsuit brought by the City's prosecutors cannot

---

[2] *See Ford Motor Co. v. Dept. of Treasury, supra,* 323 U.S. at 469.

9

1    possibly operate as such "consent" by the State.

2

3        (4)    Does California Code of Civil Procedure § 731 specify the State of California's

4               express intention to waive Eleventh Amendment immunity?

5        In order for a state statute to operate as a waiver of sovereign immunity, it must expressly

6    set forth the State's consent to be sued in federal court. *Atascadero State Hospital v. Scanlon*,

7    473 U.S. 234 (1985). In *Atascadero*, the Court said that

8               "[B]ecause the Eleventh Amendment implicates the fundamental

9               constitutional balance between the Federal Government and the States, we have

10              held that a State will be deemed to have waived its immunity 'only where stated

11              "by the most express language or by such overwhelming implication from the text

12              as [will] leave no room for any other reasonable construction."' *Edelman v.*

13              *Jordan, supra*, 415 U.S., at 673. 94 S.Ct., at 1361, *quoting Murray v. Wilson*

14              *Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)."

15   473 U.S. 239-240 [Footnote omitted.]. The *Atascadero* test for waiver "'is so stringent that it is

16   quite unlikely that very many explicit state waivers of Eleventh Amendment immunity will be

17   found.'" *Micomonaco v. State of Washington*, 45 F.3d 316, 321 (9th Cir. 1995) (*quoting*

18   Chemerinsky, E., *Federal Jurisdiction*, § 7.6, at 358 (1989)).

19       Section 731 of the California Code of Civil Procedure does not meet or even approach

20   this standard. It says nothing about the State's amenability or consent to suit, let alone suit in

21   federal court. Therefore, it cannot operate as consent by the State to federal jurisdiction.

22   Moreover, even if adding a Section 731 cause of action as a pendent claim to a federal suit could

23   operate as consent to federal jurisdiction, the act of filing the complaint in federal court must

24   have been taken by an authorized State officer, such as the Attorney General. A city attorney has

25   no authority to waive the State's sovereign immunity or to consent, on behalf of the State, to

26   federal jurisdiction. *See* Response to Issue No. 4 above.

27

28

(5) Has the State of California waived its sovereign immunity by its conduct in this litigation, in particular through the conduct of the DTSC?

Ordinarily, the argument that the State has waived its sovereign immunity by conduct is raised after a general appearance by the State or one of its agencies that has been named as defendant in a suit brought in federal court by a private party. Because neither the State of California nor any of its agencies are even parties in this litigation, the question of whether there has been a general appearance or other litigant conduct does not arise. More fundamentally, the doctrine of waiver by general appearance has been discredited in recent years. The United States Supreme Court has declared that the Eleventh Amendment is a "limitation on federal judicial power of such compelling force" that it will be considered even if raised for the first time before the Supreme Court itself. *Ford Motor Co. v. Dept. of Treasury, supra*, 323 U.S. 459, 467; *Edelman v. Jordan*, 415 U.S. 651, 677-78 (1974) (ruling that the Eleventh Amendment "partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court"). Although some courts have limited this rule somewhat,[4] until the State has actually been put on notice that it has been sued in federal court, the obligation to raise the consent issue does not even arise.

The other type of conduct that arguably has resulted in a waiver of sovereign immunity is where a State "voluntarily invokes" the jurisdiction of the federal court, such as by filing a complaint in federal court or a proof of claim in federal bankruptcy court. *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 676 (1999). Neither has taken place in this litigation. The filing of this federal action by the Lodi City Attorney is not a waiver of state sovereign immunity because a city attorney is a municipal officer not empowered to waive the State's immunity. *See* Response to Issue No. 4 above.

In its questions to the parties and the State, the Court has focused more specifically on the involvement of certain DTSC representatives in these proceedings. Under the Cooperative Agreement, DTSC representatives have agreed to cooperate with the City's efforts by providing

---

[4]*See Hill v. Blind Industries & Services of Maryland*, 179 F.3d 754 (9th Cir. 1999), *modified by* 201 F.3d 1186 (1999) (where State was named as defendant and its counsel actively litigated case until eve of trial before raising Eleventh Amendment, the immunity was waived).

1  assistance and advice to the City Attorney, not unlike what occurred in the *Hy-Lond* case, where
2  representatives of the State Department of Health participated in the investigation of Hy-Lond's
3  skilled nursing facilities. The court in *Hy-Lond* said that "[e]ven if we were to infer that the
4  Department authorized the suit, and that it could be deemed the appropriate agent of the state to
5  act as client in the action . . . there still was an alleged lack of authority to effect the settlement on
6  the terms embodied in the judgment." *People v. Hy-Lond*, 93 Cal.App.3d 734, 747, 155
7  Cal.Rptr. 880 (Cal.Ct.App. 1979).

8      *Hy-Lond* must be read for the basic proposition that the fundamental rights of a State and
9  its agencies, including (1) the right not to be bound by a settlement unless the State has given its
10  express approval and (2) the immunity from federal jurisdiction unless an authorized state
11  official has so consented, cannot be implicitly compromised by conduct alone. *BV Engineering
12  v. Univ. of Cal., Los Angeles*, 858 F.2d 1394, 1396 (9th Cir. 1988), *cert. denied* 489 U.S. 1090
13  (1989) (implied consent was not sufficient to override the State's Eleventh Amendment
14  immunity). Similarly, under the *Atascadero* test, consent to federal jurisdiction must be
15  unequivocally and expressly stated. And, there must be a "clear declaration" that the State
16  intends to submit itself to the federal court's jurisdiction. *College Savings Bank, supra*, 527 U.S.
17  at 676 (1999) (*quoting Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944)). As the
18  Supreme Court said in *College Savings Bank*, "[t]he whole point of requiring a 'clear
19  declaration' by the State of its waiver is to be certain that the State in fact consents to suit." 527
20  U.S. at 680.[5]

21      The Attorney General and the State agencies are cognizant of the Court's questions
22  regarding the role of DTSC representatives in assisting and cooperating with the City's officials
23
24
25

26      [5]In any event, because representatives of client agencies do not have the statutory or
27  common law powers to waive State sovereign immunity (*see Ford Motor Co. v. Dept. of
   Treasury, supra*), mere "conduct" by these representatives cannot operate to waive the State's
28  immunity from suit in federal court.

12

1  in their enforcement effort.[6] Absent the authority of these City officials to legally speak for or

2  bind the State and its agencies, however, DTSC's participation should be seen as nothing more

3  than what it is — the assistance and cooperation that regularly exists between public agencies.

4  The difference in this case, of course, is that there is a written Cooperative Agreement

5  memorializing that relationship. We discuss below our position that this Cooperative Agreement

6  cannot operate to subject DTSC to federal jurisdiction as there is no mention of the City's desire

7  to pursue its enforcement action in a federal forum.

8

9       (6)    If the State of California is not a party to this case, then who is the moving party

10             in the motion for preliminary injunction and what is that party's standing to bring

11             the motion?

12      Because the City is a "person" under section 1004(15) of RCRA, 42 U.S.C. § 6903(15),

13  its City Attorney has the authority to bring an action under RCRA 7002(a)(1)(B), 42 U.S.C. §

14  6972(a)(1)(B), on behalf of and in the name of the City. The City likewise has the authority to

15  bring a pendent cause of action in federal court under state law to abate a public nuisance. This

16  particular state cause of action may be brought in the name of the people, as California Code of

17  Civil Procedure section 731 provides, so long as it is recognized and understood that the

18  authority of the City and its counsel extends only to the limits of the City's geographical

19  boundaries and only as a representative of its own residents. The City Attorney cannot bring

20  these causes of action on behalf of all of the People of the State, on behalf of the State's

21  environmental agencies, on behalf of the Attorney General, or on behalf of other local

22  prosecutors.

23      The City's standing to seek a preliminary injunction is limited by these principles. It is

24  unclear to the State, however, whether the City is seeking its preliminary injunction under RCRA

25  or under a pendent state claim to abate a public nuisance. In either case, the moving party is the

26

27      [6]The Court has directed no specific questions to the State as to the involvement or lack of
    involvement of the Regional Water Quality Control Board and the State Water Resources

28  Control Board.

13

1  City and, additionally under the separate public nuisance cause of action, the citizens of the City.

2  In short, the City has no standing to seek this preliminary injunction on behalf of the State, its

3  agencies, or the people of the State who reside outside the jurisdictional limits of the City.

4

5      (7)    What effect, if any, does the Cooperative Agreement between DTSC and the City

6      have on these issues?

7      The portions of the Cooperative Agreement which provide for DTSC cooperating and

8  assisting the City of Lodi with its enforcement efforts have no effect on the question whether the

9  State of California or one of its agencies is a party to this litigation. The fact that a state

10  governmental agency, through a cooperative agreement, undertakes to assist a local prosecutor in

11  litigation brought by the local prosecutor does not make the state agency a party to the suit.

12  Calif. Govt. Code §§ 12511, 12512 (the Attorney General "has charge, as attorney, of all legal

13  matters in which the State is interested . . . " and shall "prosecute or defend all causes to which

14  the State, or any State officer is a party in his or her official capacity); Calif. Govt. Code § 11042

15  ("No state agency . . . shall employ any legal counsel other than the Attorney General . . . .");

16  *see, also, People v. Hy-Lond Enterprises, Inc.*, 93 Cal.App.3d 734, 746-48 (Cal.Ct.App. 1979).

17  Nowhere in the Cooperative Agreement is there any suggestion that the City would be acting as

18  counsel for DTSC. Indeed, even if there had been such a statement, it would violate these

19  Government Code provisions. It is also worth noting that the Regional Board, a state agency

20  with its own enforcement authority, independent of DTSC's authority, is not even a party to the

21  Cooperative Agreement.

22      Nor can the Cooperative Agreement constitute "consent" by the State to federal

23  jurisdiction. Nowhere in that Agreement is there any reference to the intent of the City to bring

24  its enforcement actions in federal court. Therefore, because a State's consent to suit in federal

25  court must be express, unequivocal and entirely voluntary,[7] the Cooperative Agreement cannot

26  operate as such consent by the State. Quite simply, there is no statement in the Cooperative

27  _____

28      [7]*See* State's Responses to Issues 4 and 5 above.

14

1  Agreement that the City intends to bring actions under RCRA in federal court. *See Atascadero*

2  *State Hospital v. Scanlon*, 473 U.S. 234, 241 (1985) (Article III. Section 5. of the California

3  Constitution, which provides that "suits may be brought against the State in such manner and in

4  such courts as shall be directed by law" cannot operate as consent to federal jurisdiction because

5  the State has not expressly consented to suit in federal court.).

6  Accordingly, the Cooperative Agreement does not authorize the City of Lodi and its

7  attorneys to represent any state agency or to consent to federal jurisdiction on behalf of those

8  agencies.

9

10  (8)  In light of the DTSC and RWQCB's letter. can the City Attorney continue to

11  represent both the People of the State of California and the City? Is there a

12  conflict of interest? If so. what is the nature of the conflict?

13  As we have explained above. the City Attorney has no authority to represent DTSC, the

14  Regional Board, the State of California as a sovereign entity. or the People of the State who

15  reside outside of the City's geographical boundaries. He is a representative of the City and only

16  those persons who reside within the City. Accordingly, the State does not believe January 23,

17  2002 letter sent by the DTSC and Regional Board creates any conflict of interest.

18  The intent of that letter was to put the parties to this litigation – the City and the

19  defendants – on notice that the competing drafts of the preliminary injunction should be crafted

20  with the understanding that DTSC and the Regional Board are not parties to this litigation and

21  have concerns about certain language in those proposed orders.

22

23  (9)  What do DTSC and RWQCB mean when they state in their January 23, 2002

24  letter "for the most part all that is required is rewording of the order so as to place

25  obligations on Guild rather than on DTSC or the RWQCB?"

26  The provisions of the proposed preliminary injunctions which "order" DTSC and/or the

27  Regional Board to act in a certain manner are attempts to "restrain" or "enjoin" a non-party from

28

15

1  acting in a certain manner. Because neither DTSC nor the Regional Board is a party to this

2  litigation, they cannot be restrained, enjoined or ordered in any way. The obligations should be

3  placed on the defendants and, where appropriate, the City of Lodi.

4      If the defendants must obtain the approval of these state agencies for any element of work

5  pursuant to state or federal law, the preliminary injunction should <u>not</u> provide, for example, that

6  "DTSC <u>shall</u> approve the work by a date certain . . . " or that "the Regional Board <u>shall</u> review

7  and comment on a particular report . . . ." Instead, it should provide, for example, that the

8  <u>defendants</u> shall obtain the approval of DTSC and the Regional Board – both agencies, since they

9  have independent authority – prior to initiating a certain action, or, alternatively, that no work

10  shall commence until DTSC and the Regional Board have given their approval. If the

11  preliminary injunction, as adopted by the Court, requires the parties to obtain the approval of

12  DTSC and the Regional Board, those agencies are not treated as if they are being legally bound in

13  a lawsuit to which they are not parties.

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19

20

21

22

23

24

25

26

27

28

16

CONCLUSION

The California Attorney General, the State Department of Toxic Substances Control, and the Central Valley Regional Water Quality Control Board appreciate the opportunity to participate in this matter as amicus curiae. We are available to respond to any residual questions the Court may have concerning these issues.

March 12, 2002                    Respectfully submitted.


                                  BILL LOCKYER
                                        Attorney General of the State of California
                                  RICHARD M. FRANK
                                        Chief Assistant Attorney General
                                  DONALD A. ROBINSON
                                  NICHOLAS STERN
                                        Deputy Attorneys General
                                  State Department of Justice



                                  _____
                                  NICHOLAS STERN
                                  Deputy Attorney General

                                  Attorneys for Amici Curiae

17

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name: **People of the State of California v. M&P Investments CIV-S-00-2441 FCD JFM**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter; my business address is: 1300 I Street, P.O. Box 944255, Sacramento, California 94244-2550.

On March 12, 2002, I served the attached **BRIEF OF AMICUS CURIAE BILL LOCKYER, ATTORNEY GENERAL OF THE STATE OF CALIFORNIA STATE OF CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL, AND CENTRAL VALLEY REGIONAL WATER QUALITY CONTROL BOARD** by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States Mail at Sacramento, California, addressed as follows:

**PLEASE SEE ATTACHED SERVICE
LIST**

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on March 12, 2002, at Sacramento, California.

|  |  |
|---|---|
| JULIE S. GOMEZ | |
| Declarant | Signature |

PEOPLE OF THE STATE OF CALIFORNIA & CITY OF LODI, CALIFORNIA
v. M&P INVESTMENTS, etc., et al
US DISTRICT COURT, EASTERN DISTRICT CASE NO. CIV-S-00-2441
**SERVICE LIST**

Randall A. Hays
City of Lodi Attorney's Office
P.O. Box 3006
221 West Pine Street
Lodi, CA 95241-1910

Brian Robert Paget
Envision Law Group
Disco Plaza II, Ste. 312

3687 Mount Diablo Blvd.
Lafayette, CA 94549-2071

Donald A. Robinson. SDAG
Attorney General's Office
300 So. Spring Street, 5th Floor
Los Angeles, CA 90013-1204

Michael C. Donovan
Cecilia C. Fusich
Assistant City Attorneys
ENVision Law Group, LLP
Desco Plaza II, Suite 312
3687 Mount Diablo Blvd.
Lafayette, CA 94549

Derek Edward Van Hoom
Dept. of Toxic Substances Control
700 Heinz Ave., Ste 200
Berkeley, CA 94710

Frances L. McChesney
State Water Resources Control Board
1001 I Street
P.O. Box 100
Sacramento, CA 95812

Joseph A. Salazar, Jr.
Mayall, Hurley Knutsen, Smith & Green
2453 Grand Canal Blvd., 2nd Floor
Stockton, CA 95207-8253

Glenn Allen Friedman
Lewis, D'Amato, Brisbois & Brisgaard
One Sansome St., Suite 1400
San Francisco, CA 94104

James Michael Sobolewski, Esq.
2180 Harvard St., Ste. 560
Sacramento, CA 95815

Paul Richard Walker
Adams, Nye. Sinunu & Walker, LLP
1801 Oakland Blvd., Ste. 210
Walnut Creek, CA 94596

Aaron L. Bowers
Isola Bowers, LLP
701 South Ham Lane, 2nd Floor
Lodi, CA 95242

Lori J. Gualco
Law Offices of Lori J. Gualco
455 Capitol Mall, Ste. 210
Sacramento, CA 95814

Jon Enscoe
Barg, Coffin, Lewis & Trapp. LLP
One Market St., Steuart Tower
Ste. 2700
San Francisco, CA 94105-1475

William Eric Hvidsten
Somach, Simmons & Dunn
400 Capitol Mall, Ste 1900
Sacramento, CA 95814-4407

Cain Electrical Works
205 North Church
Lodi, CA 95240

Herman C. Weber
205 North Church
Lodi, CA 95240

Ida P. Weber
205 North Church
Lodi, CA 95240

Daryl Blake Katcher, Esq.
3415 American River Drive, Ste. D
Sacramento, CA 95864

K. Robert Foster, Esq.
P.O. Box 4438
2600 Pacific Ave.
Stockton, CA 95240-0438

David L. Bird

McKay, Burton & Thurman
10 East South Temple, Ste. 200
Salt Lake City, UT 84133

John A. McFadden
Donahue, Wood & Loving
83 Scripps Drive, Ste. 200
Sacramento, CA 95825

Daniel S. Floyd
Gibson, Dunn & Crutcher
333 South Grand Ave. Ste. 4900
Los Angeles, CA 90071-3197

Barry S. Sandals
Morrison & Foerster. LLP
425 Market Street
San Francisco, CA 94105-2482

Michael Norris
3718 Wood Duck Circle
Stockton, CA 95207

Thomas H. Keeling
Freeman, D'Aiuto, Pierce,
 Gurve & Keeling
1818 Grand Canal Blvd., Ste 4
Stockton, CA 95207

Edward R. Hugo
Pond, North & Hugo
459 Fulton St., Ste. 102
San Francisco, CA 94102

Deborah C. Prosser
Burke, Williams & Sorenson
3403 Tenth St., Ste. 300
Riverside, CA 92501

Andrew Nelson
Walsworth, Franklin, Bevins & McCall
550 Montgomery St., 8th Floor
San Francisco, CA 94104

Stephen James Meyer
Downey, Brand Seymour & Rohwer
555 Capitol Mall, 10th Floor
Sacramento, CA 95814-4686

Scott Malm
Cassel, Malm & Fagundes
Six So. El Dorado, Ste. 601
Stockton, CA 95202

Karna E. Harrigfeld
Herum, Crabtree & Brown
2291 W. March Lane, Ste. B100
Stockton, CA 95207

M. Taylor Florence
Bullivant, Houser, Bailey,
 Pendergrass & Hoffman
11335 Gold Express Drive. Ste., 105
Gold River, CA 95670-4491

George D. Yaron, Jr.
Yaron & Associates
111 Pine St., 12th Floor
San Francisco, CA 94111-5614

John S. Poulos
Pillsbury, Winthrop LLP
400 Capitol Mall, Ste. 1700
Sacramento, CA 95814-7880

Michael J. Steel
Pillsbury Winthrop LLP
P.O. Box 7880
50 Fremont St., 5th Floor
San Francisco, CA 94105

Robert D. Nelson
Parish & Nelson, PC
1919 Grand Canal Blvd., Ste. A-5
Stockton, CA 95207-8114

James H. Colopy
Farella, Braun & Martel
235 Montgomery St., Ste. 3000

San Francisco, CA 94104

Kristin N. Blake
Matheny, Sears, Linkert & Long
P.O. Box 13711
3638 American River Drive
Sacramento, CA 95853-4711

Robert Cedric Goodman
Goodman & Kang LLP
177 Post St., Ste. 600
San Francisco, CA 94108

Stephen H. McClain
Kirkland & Ellis
777 So. Figueroa St., Ste. 3700
Los Angeles, CA 90071

James Arthur Bruen
Farella, Braun & Martel
235 Montgomery St., 30th Floor
San Francisco, CA 94104