RICHARD R. PATCH (State Bar No. 088049)
ef-rrp@cpdb.com
WILLIAM H. ORRICK, III (State Bar No. 113252)
ef-who@cpdb.com
ANN E. JOHNSTON (State Bar No. 141252)
ef-aej@cpdb.com
COBLENTZ, PATCH, DUFFY & BASS LLP
One Ferry Building, Suite 200
San Francisco, California 94111-4213
Telephone: 415.391.4800
Facsimile: 415.989.1663

Attorneys for Defendant
FIRST BANK OF DELAWARE

COUNSEL FOR OTHER DEFENDANTS
ARE LISTED AFTER SIGNATURE PAGE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through City Attorney Dennis J. Herrera, <br><br> Plaintiffs, <br><br> v. <br><br> CHECK 'N GO OF CALIFORNIA, INC. d/b/a CHECK 'N GO; SOUTHWESTERN & PACIFIC SPECIALTY FINANCE, INC. d/b/a/ CHECK 'N GO; AVANTE TELADVANCE, INC. d/b/a CHECK 'N GO ONLINE; MONETARY MANAGEMENT OF CALIFORNIA, INC. d/b/a MONEY MART; MONEY MART EXPRESS, INC. d/b/a CUSTOMCASH ONLINE; FIRST BANK OF DELAWARE; and DOES 1-50, inclusive, <br><br> Defendants. | No. C 07-02789 JSW <br><br> **DEFENDANTS' CORRECTED OPPOSITION TO MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Hearing Date:  August 10, 2007 <br> Hearing Judge: Hon. J.S. White <br> Time:  9:00 a.m. <br> Place:  Courtroom 2, <br> 450 Golden Gate Avenue, <br> San Francisco, CA <br><br> Complaint filed:  April 26, 2007 <br> Complaint removed:  May 30, 2007 |

*(sidebar)* Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

### SUMMARY OF ARGUMENT

Plaintiff's Motion to Remand should be denied. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the Complaint filed by the City Attorney (the "City Attorney") for the City and County of San Francisco (the "City") challenges the rates of interest charged by Defendant First Bank of Delaware (the "Bank")—a state-chartered, federally insured bank. *See, e.g.*, Compl. ¶¶ 1, 36c; *Jenkins v. First Am. Cash Advance of Georgia, LLC*, 400 F.3d 868, 873 n. 3 (11th Cir. 2005). Each circuit of the federal Court of Appeals to have considered the issue holds that just as Sections 85 and 86 of the National Banking Act ("NBA") completely preempt claims challenging the rates of interest charged by national banks, *see Beneficial National Bank v. Anderson*, 539 U.S. 1, 10-11 (2003), Section 27 of the Federal Deposit Insurance Act ("FDIA") completely preempts claims challenging the rates of interest charged by state-chartered, federally insured banks. *See, e.g., Discover Bank v. Vaden*, Civ. No. 06-1221, 2007 WL 1695758, at *7-9 (4th Cir. June 13, 2007); *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 295 (3d Cir. 2005). *See also Forness v. Cross Country Bank*, No. 05-CV-417, 2006 WL 240535, at *3 (S.D. Ill. Jan. 13, 2006).

The Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). The City Attorney does not dispute Defendants' proof that the amount in controversy exceeds $75,000 and admits that all Defendants are citizens of states other than California. The City Attorney argues only that by styling the Complaint as having been brought by the People of the State of California, his client—the City—has somehow been transformed into the sovereign State of California, and thus, is not a citizen of the State. This argument fails because the City is the real party in interest and, as a municipal corporation, it is a citizen of the State of California. *See Moor v. County of Alameda*, 411 U.S. 693, 717 (1973); *California v. M & P Invs.*, 213 F. Supp. 2d 1208, 1214-1217 (E.D. Cal. 2002).

The Court has supplemental jurisdiction over all other claims pursuant to 28 U.S.C. §§ 1367(a) and 1441(c).

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

-i-

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ................................................................................................ i

I.    FEDERAL QUESTION JURISDICTION EXISTS BECAUSE THE
      COMPLAINT CHALLENGES THE RATES OF INTEREST
      CHARGED BY A STATE- CHARTERED, FEDERALLY
      INSURED BANK ........................................................................................................1

      A.    The Complaint Alleges Usury Against First Bank of
            Delaware, a State-Chartered, Federally Insured Bank............................1

      B.    Section 27 of the FDIA Completely Preempts Claims
            Challenging Interest Rates Charged by State-Chartered,
            Federally Insured Banks ............................................................................5

II.   DIVERSITY JURISDICTION EXISTS BECAUSE THE AMOUNT
      IN CONTROVERSY EXCEEDS $75,000 AND THE PARTIES
      ARE CITIZENS OF DIFFERENT STATES ...............................................................10

      A.    The City Is a Citizen of the State of California. ......................................11

            1.    The City—Not the State—Has a Pecuniary Interest in
                  the Lawsuit....................................................................................13

            2.    The City Is Not an Arm or *Alter Ego* of the State. .....................14

      B.    The City—Not the State—Is the Real Party in Interest..........................15

III.  THE CITY SATISFIES ARTICLE III'S STANDING
      REQUIREMENTS.....................................................................................................18

IV.   CONCLUSION.........................................................................................................19

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415. 391.4800 • Fax 415.989.1663

# TABLE OF AUTHORITIES

## CASES

*Am. Title Ins. Co. v. Lacelaw Corp.*
   861 F.2d 224 (9th Cir. 1988) ...................................................................11

*BankWest, Inc. v. Baker*
   411 F.3d 1289 (11th Cir. 2005) ...................................................................9

*BankWest, Inc. v. Baker*
   433 F.3d 1344 (11th Cir. 2005) ...................................................................9

*BankWest, Inc. v. Baker*
   446 F.3d 1358 (11th Cir. 2006) ...................................................................9

*Befitel v. Global Horizons, Inc.*
   461 F. Supp. 2d 1218 (D. Haw. 2006) .......................................................12

*Belanger v. Madera Unified Sch. Dist.*
   963 F.2d 248 (9th Cir. 1992) .....................................................................12

*Beneficial National Bank v. Anderson*
   539 U.S. 1 (2003)..............................................................................*passim*

*California ex rel. Lockyear v. Dynegy, Inc.*
   375 F.3d 831 (9th Cir. 2004) .....................................................................17

*California v. City of Los Angeles*
   160 Cal. App. 2d 494 (Cal. App. 1958) .....................................................16

*California v. M & P Invs.*
   213 F. Supp. 2d 1208 (E.D. Cal. 2002) ...............................................*passim*

*California v. Steelcase, Inc.*
   792 F. Supp. 84 (C.D. Cal. 1992) ..............................................................17

*Casey v. U.S. Bank*
   127 Cal. App. 4th 1138 (Cal. App. 2005) ....................................................3

*City of Oakland v. Brock*
   8 Cal. 2d 639, 67 P.2d 344 (Cal. 1937) .....................................................16

*In re Cmty. Bank of N. Va.*
   418 F.3d 277 (3d Cir. 2005) ................................................................i, 7, 8

*Colorado v. Ace Cash Express, Inc.*
   188 F. Supp. 2d 1282 (D. Colo. 2002)........................................................10

*Conn. Comm'r of Labor v. AT&T Corp.*
   No. 3:06CV01257, 2006 WL 3332982 (D. Conn. Nov. 16, 2006) ...............14

*Cortazar v. Wells Fargo & Co.*
   No. C 04-894 JSW, 2004 WL 1774219 (N.D. Cal. Aug. 9, 2004)...........1, 2, 4

*Cross-Country Bank v. Klussman*
   74 Fed. App'x. 796 (9th Cir. 2003) ..............................................................9

*Cross-Country Bank v. Klussman*
   No. C-01-4190-SC, 2004 WL 966289 (N.D. Cal. Apr. 30, 2004)..........4, 8, 9

*Discover Bank v. Vaden*
   Civ. No. 06-1221, 2007 WL 1695758 (4th Cir. June 13, 2007)...........i, 1, 7, 8

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

-iii-

*District of Columbia ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co.*
    797 F.2d 1041 (D.C. Cir. 1986) ........................................................................14

*Donald v. Golden 1 Credit Union*
    839 F. Supp. 1394 (E.D. Cal. 1993) ...............................................................10

*Executive Software N. Am., Inc. v. U.S. Dist. Ct. for Cent. Dist. of Cal.*
    24 F.3d 1545 (9th Cir. 1994) ..........................................................................19

*Fiol v. Doellstedt*
    50 Cal. App. 4th 1318 (Cal. App. 1996) ...........................................................3

*Flowers v. EZPawn Okla., Inc.*
    307 F. Supp. 2d 1191 (N.D. Okla. 2004)............................................................9

*Forness v. Cross Country Bank*
    No. 05-CV-417, 2006 WL 240535 (S.D. Ill. Jan. 13, 2006) .....................i, 4, 5, 8

*Gerard v. Ross*
    204 Cal. App. 3d 968 (Cal. App. 1988) .............................................................3

*Greenwood Trust Co. v. Mass.*
    971 F.2d 818 (1st Cir. 1992)..............................................................................7

*Hill v. Chemical Bank*
    799 F. Supp. 948 (D. Minn. 1992)......................................................................8

*Jenkins v. First Am. Cash Advance of Georgia, LLC*
    400 F.3d 868 (11th Cir. 2005) ...................................................................i, 2, 5

*Klussman v. Cross-Country Bank*
    Civ. No. 01-4228, 2002 WL 1000184 (N.D. Cal. May 15, 2002)........................8

*Krispin v. May Dep't Stores Co.*
    218 F.3d 919 (8th Cir. 2000) .............................................................................5

*Long v. Ace Cash Express, Inc.*
    No. 3:00-CV-1306-J-25TJC, 2001 WL 34106904 (M.D. Fla. June 18, 2001)..........10

*Louisiana ex rel. Guste v. Fedders Corp.*
    524 F. Supp. 552 (M.D. La. 1981)....................................................................14

*Mangini v. R.J. Reynolds Tobacco Co.*
    793 F. Supp. 925 (N.D. Cal 1992)....................................................................19

*Moor v. County of Alameda*
    411 U.S. 693 (1973) ...............................................................................*passim*

*Navarro Sav. Ass'n v. Lee*
    446 U.S. 458 (1980)..........................................................................................11

*Neilson v. Union Bank of Cal.*
    290 F. Supp. 2d 1101 (N.D. Cal. 2003) ..............................................................3

*New York v. County Bank of Rehoboth Beach*
    No. 1:03-CV-1320 (N.D.N.Y. May 25, 2004)......................................................9

*Nguyen v. Superior Court*
    49 Cal. App. 4th 1781 (Cal. App. 1996)............................................................17

*In re Pac. Gas & Elec. Co.*
    281 B.R. 1 (Bankr. N.D. Cal. 2002)..................................................................17

*Partin v. Cabelview, Inc.*
    948 F. Supp.1046 (S.D. Ala. 1996) ....................................................................8

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415. 391.4800 • Fax 415.989.1663

-iv-

*People v. Beltz Travel Serv., Inc.*
    379 F. Supp. 948 (N.D. Cal. 1974) ................................................................. 19

*People v. Hy-Lond Enterprises*
    93 Cal. App. 3d 734 (Cal. App. 1979) .................................................. 16, 17, 18

*PYCA Indus. v. Harrison County Waste Water Mgmt.*
    81 F.3d 1412 (11th Cir. 1996) ....................................................................... 12

*Roche v. Lincoln Prop. Co.*
    175 Fed. App'x. 597 (4th Cir. 2006) .............................................................. 12

*Saunders v. Super. Ct.*
    27 Cal. App. 4th 832 (Cal. App. 1994) ............................................................ 3

*Saxton v. Capital One Bank*
    392 F. Supp. 2d 772 (S.D. Miss. 2005) ........................................................... 8

*Strong v. First Am. Cash Advance of Georgia, LLC*
    No. 1:04-cv-2610-WSD (N.D. Ga. Dec. 13, 2005) .......................................... 8

*Univ. of R.I. v. A.W. Chesterton Co.*
    2 F.3d 1200 (1st Cir. 1993) .......................................................................... 12

*Vermont Agency of Natural Res. v. United States*
    529 U.S. 765 (2000) ..................................................................................... 19

*Wood v. Bd. of Election Comm'rs*
    58 Cal. 561 (1881) ....................................................................................... 15

## FEDERAL STATUTES

12 United States Code section 1831d ........................................................ *passim*

12 United States Code section 85 ............................................................. *passim*

12 United States Code section 86 ............................................................. *passim*

28 United States Code section 1331 ................................................... i, 10, 19

28 United States Code section 1332 ........................................... i, 10, 18, 19

28 United States Code section 1367(a) ............................................... i, 19

28 United States Code section 1441 ........................................... i, 10, 18, 19

## STATE STATUTES

California Business & Professions Code section 17200 ............................ 3, 4

California Business & Professions Code section 17204 ........................ 17, 18

California Business & Professions Code section 17206 ........................ 13, 18

California Business & Professions Code section 17206(c) ......................... 13

California Business & Professions Code section 17206(f) ............... 13, 18, 19

California Business & Professions Code section 17535 ............................. 17

California Code of Civil Procedure section 731 ............................... 15, 16

California Government Code section 12511 ............................................. 16

California Government Code section 12512 ............................................. 16

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

-v-

California Government Code section 12550 ...................................................................17

California Government Code section 37350 ...................................................................15

California Government Code section 41801 ............................................................16, 17

California Government Code section 940.4 ...................................................................14

Delaware Code, Annotated title 5, section 963 ...............................................................6

## OTHER AUTHORITIES

126 Congress Record 6,900 (1980) (Statement of Senator Proxmire) ...........................7

126 Congress Record 6,908 (1980) (Statement of Senator Bumpers) ...........................7

California Constitution article V, section 13 ................................................................16

General Counsel's Opinion No. 10:  Interest Charges under Section 27 of the Federal
       Deposit Insurance Act, 63 Fed. Reg. 19,258 (Apr. 17, 1998) ..............................7

San Francisco Charter article I, section 1.101 .......................................................14, 15

San Francisco Charter article VI, section 6.102 ...........................................................17

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200,  San Francisco,  California  94111-4213
415.391.4800 • Fax 415.989.1663

-vi-

I.    **FEDERAL QUESTION JURISDICTION EXISTS BECAUSE THE COMPLAINT CHALLENGES THE RATES OF INTEREST CHARGED BY A STATE- CHARTERED, FEDERALLY INSURED BANK**

The Bank and the other Defendants[1] removed this action to federal court because Section 27 of the Federal Deposit Insurance Act ("FDIA")[2] completely preempts the Complaint's state law claims challenging the rates of interest charged by the Bank, a state- chartered, federally insured bank.[3]  This Court is familiar with the complete preemption doctrine, albeit in the context of Sections 85 and 86 of the National Bank Act ("NBA").  *See Cortazar v. Wells Fargo & Co.*, No. C 04-894 JSW, 2004 WL 1774219, at *5 (N.D. Cal. Aug. 9, 2004).

The Court should deny the Motion to Remand, in view of the complete preemption doctrine, by answering just two questions.  First, does the Complaint challenge the rates of interest charged by the Bank, a state-chartered, federally insured bank?  Second, if so, does Section 27 of the FDIA completely preempt such claims against state-chartered, federally insured banks just as Sections 85 and 86 of the NBA completely preempt such claims against national banks?  The answer to both questions is clearly yes.

A.    **The Complaint Alleges Usury Against First Bank of Delaware, a State-Chartered, Federally Insured Bank**

The Complaint plainly challenges the rates of interest charged by the Bank, in at least two ways.  First, according to the first paragraph of the Complaint, the case concerns "installment loans, purportedly made by FIRST BANK OF DELAWARE.  These installment loans violate California law and California's constitutional ban on usury because of their unconscionable

---

[1]  The Defendants are the First Bank of Delaware (the "Bank"); Check 'n Go of California, Inc., Southwestern & Pacific Specialty Finance, Inc., and Avante Teladvance, Inc. (collectively the "Check 'n Go Defendants"); and Monetary Management of California, Inc. and Money Mart Express, Inc., (collectively the "Money Mart Defendants").

[2]  Section 27 was added to the FDIA by Section 521 of the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA"), Pub. L. 96-221, 94 Stat. 132, 12 U.S.C. § 1831d (1980).  Some courts refer to Section 27 of the FDIA as Section 521 of DIDA, but the statutory provision is the same, 12 U.S.C. § 1831d.  *See, e.g., Discover Bank v. Vaden*, Civ. No. 06-1221, 2007 WL 1695758, at *8 n.13 (4th Cir. June 13, 2007).

[3]  The Complaint alleges that the Bank is chartered under the laws of the State of Delaware. Compl. ¶ 10.  *See also* Declaration of Alonzo Primus In Support of Notice of Removal ¶ 2.  The Bank's deposits "are insured by the Federal Deposit Insurance Corporation" ("FDIC").  *Id.* ¶ 3.

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

-1-

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415. 391.4800 • Fax 415.989.1663

interest rates, which exceed 400 percent APR." Compl. ¶ 1. Further, the Complaint alleges in paragraph 36c: "DEFENDANTS have violated Section 1 of the Article XV of the California Constitution, California's usury law, or aided and abetted violations of Section 1 of Article XV of the California Constitution, by the acts and practices set forth in this Complaint."[4] The Bank is clearly one of the "DEFENDANTS," and paragraph 12 of the Complaint reinforces this conclusion by alleging that "all of the acts and omissions described in this Complaint by any defendant were duly performed by, and attributable to, all DEFENDANTS, including Doe Defendants, each acting as agent and/or under the direction and control of the others, and such acts and omissions were within the scope of such agency, direction, and/or control. Any reference in this complaint to any acts of 'DEFENDANTS' shall be deemed to be the acts of each and every defendant acting individually, jointly, or severally." In short, the Complaint directly and unambiguously pleads a usury claim against the Bank. *See Jenkins v. First Am. Cash Advance of Georgia, LLC*, 400 F.3d 868, 873 n. 3 (11th Cir. 2005) (rejecting contention that usury claim was not brought against national bank where complaint expressly named bank as defendant and consistently used plural form of "Defendants" while claiming usury violations). Indeed, unlike the complaint in *Cortazar*, the Complaint here expressly "challenge[s] the legality of the rate of interest" on the installment loans at issue and "assert[s] that these rates . . . are usurious." *Cortazar*, 2004 WL 1774219, at *4. At the very least, the plain language of the Complaint pleads a usury claim in the alternative against the Bank. This is sufficient to decide the first question in favor of removal.

The Complaint states a usury claim against the Bank in a second way that is also sufficient to support removal on complete preemption grounds. It alleges that "FIRST BANK OF DELAWARE unlawfully aids and abets violations of the California Finance Lenders Law by permitting CHECK 'N GO and CHECK 'N GO ONLINE to purport to broker installment loans for consumers where the terms of these loans violate the California Finance Lenders Law. Prior to April 2007, FIRST BANK OF DELAWARE unlawfully aided and abetted violations of this law

---

[4] "Section 1 of Article XV of the California Constitution, prohibits usury and deems to be usurious interest rates on personal loans that exceed ten percent per annum." Compl. ¶ 15.

-2-

by permitting MONEY MART to purport to broker similar installment loans that did not comply with the terms of this law." Compl. ¶ 32. The alleged violations of the California Finance Lenders Law for which the Bank is allegedly liable as an aider or abettor are clearly for usury. Paragraph 18 states: "The terms of CHECK 'N GO and CHECK 'N GO ONLINE's installment loans violate the provisions of the California Finance Lenders Law because these loans bore unconscionable, usurious interest rates: the annual percentage rates for CHECK N' GO's installment loans exceed 400 percent." Paragraph 23 states: "The terms of MONEY MART's installment loans violated the provisions of the California Finance Lenders Law because these loans bear unconscionable, usurious interest rates; the annual percentage rates for MONEY MART's installment loans exceed 400 percent."

"Under California law, 'liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the aider and abettor's own conduct, separately considered, constitutes a breach of duty to the third person.'" *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1118 (N.D. Cal. 2003). *See also Casey v. U.S. Bank*, 127 Cal. App. 4th 1138, 1144 (Cal. App. 2005); *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325-26 (Cal. App. 1996); *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 846 (Cal. App. 1994); *Gerard v. Ross*, 204 Cal. App. 3d 968, 983 (Cal. App. 1988). Aiding and abetting "necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." *Nielson,* 290 F. Supp. 2d at 1133.

Accordingly, to show that the Bank aided and abetted the Check 'n Go and Money Mart Defendants' purported violations of the California usury law, which is the basis for the alleged violation of California Business & Professions Code Section 17200, the City Attorney must plead and prove that the Bank consciously decided to and did substantially assist the Check 'n Go and Money Mart Defendants so that they could engage in usury. The Bank did this, allegedly, by "purport[ing] to act as the lender for installment loans brokered and marketed by third party

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

-3-

retailers such as CHECK 'N GO and MONEY MART," which "purport[ed] to broker installment loans" that violated California's usury law.  Compl. ¶¶ 31-32.  This creates an obvious fiction to provide a basis for suing the Bank for usury but trying to avoid calling it usury.  This fiction is unavailing as the City Attorney necessarily has to prove that the Bank was involved in making usurious loans, which explains why paragraph 36c is phrased as a usury claim against the Bank.

Further, it matters not whether the City Attorney calls his claims against the Bank "usury," "aiding and abetting," or a violation of California Business and Professions Code Section 17200 arising from transactions the City Attorney claims to be usurious.  The issue is not how the Complaint characterizes the claims, but whether the Complaint challenges interest rates charged by the Bank.  *See Forness v. Cross Country Bank*, No. 05-CV-417, 2006 WL 240535, at *3 (S.D. Ill. Jan. 13, 2006) (complete preemption doctrine applies to plaintiff's claims against a state-chartered bank and its affiliates under the Illinois deceptive trade practices act where complaint "challenges the amount of Defendants' fees"); *Cortazar,* 2004 WL 1774219, at *4 ("The Court . . . concludes that the allegations [of the complaint] do not challenge the legality of the rate of interest, points, or fees charged by WFHM."); *Cross-Country Bank v. Klussman*, No. C-01-4190-SC, 2004 WL 966289, at *6 (N.D. Cal. Apr. 30, 2004) ("Plaintiff does not challenge the legality of the rate of interest charged by the Defendants.").

The City Attorney cannot avoid the obvious affirmative answer to this question by claiming that the Check 'n Go and Money Mart Defendants are the "true lender," not the Bank, for that would eviscerate Congress's intent for Section 27 of the FDIA to be the exclusive cause of action for usury claims against state-chartered, federally insured banks, under the principles set forth by the Supreme Court in *Beneficial National Bank v. Anderson*, 539 U.S. 1, 9 (2003), as explained, *infra*, at Section IB.  Section 27 states that such a bank may "notwithstanding any state constitution or statute which is hereby preempted for purposes of this Section . . . charge on any loan or discount made . . . interest . . . at the rate allowed by the laws of the state. . . where the bank is located."  This statutory language leaves no room for an exception to complete federal preemption where a complaint characterizes a loan transaction based on the alleged underlying

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200,  San Francisco,  California 94111-4213
415.391.4800 • Fax 415.989.1663

-4-

economic relationship between the bank and the other defendants. *See, e.g.,* Compl. ¶ 2 ("because [Money Mart and Check 'n Go] bear the risk of loss associated with these loans, [the Bank] is the lender in name only.").

Where, as here, a plaintiff sues a state-chartered, federally insured bank claiming that it was a party to usurious loans, there is no way to avoid the conclusion that that complaint is challenging the interest rates charged by that bank. *Jenkins,* 400 F.3d at 873 n.3 (rejecting plaintiff's "attempt to evade the Supreme Court's holding in [*Beneficial v.*] *Anderson* by contending her usury claims were brought primarily against" a defendant other than national bank); *Forness,* 2006 WL 240535, at *3 ("Plaintiffs do not merely contest the general manner in which Defendants assessed fees, but also the amounts of those fees and, more specifically, the lack of a connection between those amounts and the underlying costs actually incurred by Defendants. Under the logic of *Beneficial v. Anderson*, this invokes the complete-preemption doctrine."); *see also Krispin v. May Dep't Stores Co.*, 218 F.3d 919, 924 (8th Cir. 2000) (finding that state law usury claims against a non-bank store relating to credit card late fees were completely preempted by NBA notwithstanding the fact that the store took daily assignments of 100 percent of the credit card receivables generated by the national bank credit card issuer).

The Complaint here challenges the interest rates charged by the Bank on the installment loans at issue. The next question for the Court to decide is whether Section 27 of the FDIA completely preempts such a claim.

## B. Section 27 of the FDIA Completely Preempts Claims Challenging Interest Rates Charged by State-Chartered, Federally Insured Banks

In *Beneficial National Bank v. Anderson*, the Supreme Court held that Sections 85 and 86 of the NBA completely preempt state law claims for usury against a national bank because Section 85 provides a national bank with a complete federal defense to a state law usury claim and Section 86 provides the exclusive cause of action for usury against national banks. 539 U.S. at 9-10. In addition, the Court took note "of the special nature of federally chartered banks," specifically, the need for "[u]niform rules limiting the liability of national banks and prescribing

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

-5-

1  exclusive remedies for their overcharges [as] an integral part of a banking system that needed

2  protection from 'possibly unfriendly State legislation.'" *Id.* at 10-11. All of these considerations

3  apply with equal force here.

4       The starting point is the language of the statute. In Section 27 of the FDIA, Congress used

5  language very similar to the language it used in Sections 85 and 86 of the NBA. Section 27(a) of

6  the FDIA, enacted in 1980, provides in pertinent part as follows:

> In order to prevent discrimination against State-chartered insured
> depository institutions . . . with respect to interest rates. . . such State
> bank[s] . . . may, notwithstanding any State constitution or statute
> which is hereby preempted for purposes of this section, *take, receive,*
> *reserve, and charge on any loan or discount made, or upon any note,*
> *bill of exchange, or other evidence of debt, interest . . . at the rate*
> *allowed by the laws of the State . . . where the bank is located . . . .*

11  12 U.S.C. § 1831d(a) (emphasis added).[5] The City Attorney is therefore plainly wrong when he

12  states that "Section 27 is silent about any preemptive force it has over state-law causes of action."

13  Remand Memo at 4. Section 85 of the NBA, enacted in 1864, provides in pertinent part as

14  follows:

> Any [national bank] association may take, receive, or reserve, and
> charge on any loan or discount made, or upon any notes, bills of
> exchange, or other evidences of debt, interest at the rate allowed by
> the laws of the State, Territory, or District where the bank is located .
> . . .

18  12 U.S.C. § 85 (emphasis added). Congress also used language in Section 27(b) of the FDIA that

19  is very similar to the language it used in Section 86 of the NBA. Both provide a federal cause of

20  action for usury that is exclusive of any state remedy because Section 27(a) of the FDIA and

21  Section 85 of the NBA preempt state law usury claims against state-chartered federally insured

22  banks and national banks, respectively.

23       The similarity between Section 27 of the FDIA and Sections 85 and 86 of the NBA is not a

24  fluke. "The historical record clearly requires a court to read the parallel provision of DIDA and

25  the Bank Act *in pari materia*. It is, after all, a general rule that when Congress borrows language

---

26  [5] Under Delaware law, "[a] bank may charge and collect periodic interest in respect of a loan at
27  such daily, weekly, monthly, annual, or other periodic percentage rates as the agreement
    governing, or the bond, note or other evidence of, the loan provides." Del. Code. Ann. tit. 5 § 963.

28

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

from one statute and incorporates it into a second statute, the language of the two acts should be interpreted in the same way." *Greenwood Trust Co. v. Mass.*, 971 F.2d 818, 827 (1st Cir. 1992) (holding that Section 27 preempted enforcement of state law that prohibited the imposition of late fees on credit cards issued by subsidiary of state-chartered, federally insured bank).[6]  Each of the two circuits of the federal Court of Appeals that have considered whether Section 27 completely preempts state law claims challenging the rates of interest charged by state-chartered, federally insured banks have relied on this principle to find that Congress intended Section 27 to completely preempt such claims. *See In re Cmty. Bank of N. Va.*, 418 F.3d 277, 295-296 (3d Cir. 2005); *Discover Bank v. Vaden*, Civ. No. 06-1221, 2007 WL 1695758, at *7-9 (4th Cir. June 13, 2007).[7]

In *Community Bank*, the Court of Appeals held that Section 27 "completely preempts any state law attempting to limit the amount of interest and fees a federally insured state-chartered bank can charge." 418 F.3d at 295.[8]  In *Vaden*, decided a week before the Motion to Remand but not cited by the City Attorney, the Court of Appeals stated: "Given the express preemption language of the FDIA, the statute's legislative history affirming Congress' intent to provide competitive equality between national and state-chartered banks, the virtual identity of the preemption language in the NBA and that of the FDIA, and the Supreme Court's finding of

---

[6]  The FDIC, the agency charged with implementing the FDIA, also construes Section 27 of the FDIA and Sections 85 and 86 of the NBA *in pari materia*. *See, e.g.,* General Counsel's Opinion No. 10:  Interest Charges under Section 27 of the Federal Deposit Insurance Act, 63 Fed. Reg. 19,258, 19,259 (Apr. 17, 1998), *available at*: www.fdic.gov/regulations/laws/rules/5500-700.html, attached as Exhibit 1 to Declaration of Ann E. Johnston.

[7]  *Vaden* also relied on the legislative history of Section 27, which "tells us that Congress intended 'to allow competitive equity among financial institutions, and reaffirm the principle that institutions offering similar products should be subject to similar rules,'" and that "[t]he FDIA was enacted in part 'to provide parity, or competitive equality, between national banks and State chartered depository institutions.'"  2007 WL 1695758, at *7 (citing 126 Cong. Record 6,908 (1980) (Statement of Sen. Bumpers); 126 Cong. Record 6,900 (1980) (Statement of Sen. Proxmire)).  *See also Greenwood Trust*, 971 F.2d at 826-27 (discussing Section 27's legislative history).

[8]  The City Attorney incorrectly argues that the quotation in the text from *Community Bank* is "pure *dicta*." *See* Remand Memo at 8.  The Third Circuit's analysis regarding Section 27 was necessary to the case because it implicated the issue of whether the lower court possessed subject matter jurisdiction.  418 F.3d at 293.  Ultimately, the Third Circuit concluded that although Section 27 completely preempts state law usury claims, the complaint at issue did not assert state law usury claims.  *Id.* at 296-98.  Of course, that is not the case here, as discussed, *supra*, at Section IA, as the Complaint clearly challenges the rates of interest charged by the Bank.

---

-7-

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

complete preemption under the NBA, we are hard-pressed to conclude other than that Congress intended complete preemption of state-court usury claims under the FDIA." 2007 WL 1695758, at *9.[9]

This same holding has been reached by two district courts. *See Forness*, 2006 WL 240535, at *3-4 (holding that complaint challenging fees against state-chartered bank is completely preempted); *Hill v. Chemical Bank*, 799 F. Supp. 948, 952 (D. Minn. 1992) (holding that Section 27 "completely preempts the field of usury claims against federally-insured state banks").[10]

One other district court has discussed the issue of complete preemption under Section 27, without deciding the issue. *See Cross-Country Bank v. Klussman*, No. C-01-4190-SC, 2004 WL 966289 (N.D. Cal. Apr. 30, 2004). In *Klussman*, the court decided prior to *Beneficial* that Section 27 did not completely preempt plaintiff's state law usury claims. *Klussman v. Cross-Country Bank*, Civ. No. 01-4228, 2002 WL 1000184, at *6 (N.D. Cal. May 15, 2002). On appeal, the Ninth Circuit, without deciding the question, vacated and remanded that decision stating that "it appears that the rationale of the Supreme Court's decision in [Beneficial] would extend to usury claims against state-chartered, federally insured banks such as [appellant]."

---

[9] The procedural posture of *Vaden* differs from that of this case. In *Vaden*, Discover Bank's servicing agent Discover Financial Services ("DFS") brought claims against Vaden, a card-holder, for failing to pay her credit card balance. *Vaden*, 2007 WL 1695758, at *1-2. Vaden then responded with class-action counterclaims against DFS, including claims that certain fees and interest rates charged violated Maryland law. *Id.* at *2. Both DFS and Discover Bank then filed suit in federal court to compel arbitration of Vaden's counterclaims. Because Vaden had not named Discover Bank in the counterclaim, the Fourth Circuit necessarily had to analyze whether Discover Bank was nevertheless the actual lender. *Id.* at *4-7. Such an analysis is not necessary here because the Complaint names the Bank as a defendant and, as discussed, *supra*, at 2, challenges the rates of interest charged by the Bank.

[10] Prior to the appellate decisions in *Vaden* and *Community Bank*, three district courts held to the contrary. *See Strong v. First Am. Cash Advance of Georgia, LLC*, No. 1:04-cv-2610-WSD, at *15 (N.D. Ga. Dec. 13, 2005) (attached to the Motion to Remand); *Saxton v. Capital One Bank*, 392 F. Supp. 2d 772, 782-83 (S.D. Miss. 2005); *Partin v. Cabelview, Inc.*, 948 F. Supp. 1046, 1049 (S.D. Ala. 1996). None of these cases can be squared with *Beneficial*, the express language of Section 27 of the FDIA, the strong similarity between Section 27 of the FDIA and Sections 85 and 86 of the NBA, or the legislative history of Section 27. In addition, in all three cases the district courts also held that the plaintiffs were not claiming usury against a state-chartered, federally insured bank. None of the other cases cited by the City Attorney held or even stated in dicta that Section 27 does not preempt usury claims against state-chartered banks.

-8-

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

1    *Cross-Country Bank v. Klussman*, 74 Fed. App'x. 796, 797 (9th Cir. 2003).  On remand, the

2    district court held that the claims were not completely preempted because the plaintiff's third

3    amended complaint did not make any allegation regarding the rates of interest charged.  *See* 2004

4    WL 966289, at *6.[11]  "Nowhere does Plaintiff even identify a usury statute in her complaint, much

5    less make it the basis for any of her claims." *Id.*

6        None of the other cases cited by the City Attorney provide any support for the Motion to

7    Remand.  Remand Memo at 6-7.  First, *BankWest, Inc. v. Baker,* 411 F.3d 1289 (11th Cir. 2005),

8    *vacated* 446 F.3d 1358 (11th Cir. 2006)—the vacated decision relied upon by the City Attorney

9    four times in his Remand Memo including in the Summary of Argument for the proposition that

10   "there is no complete preemption here"—does not cite *Beneficial*, or discuss preemption in the

11   removal context, or even use the words "complete preemption."[12]

12       In two of the cases cited by the City Attorney, the courts did not reach the issue of

13   complete preemption under Section 27 of the FDIA but instead held that the complaints stated no

14   usury claims against state-chartered banks.  *See New York v. County Bank of Rehoboth Beach*,

15   No. 1:03-CV-1320, slip op. at 8 (N.D.N.Y. May 25, 2004) (attached to the Motion to Remand)

16   (noting that the State had brought no usury claim against a state-chartered bank); *Flowers v.*

17   *EZPawn Okla., Inc.*, 307 F. Supp. 2d 1191, 1204 (N.D. Okla. 2004) ("No claims have been

18   brought against County Bank in this lawsuit.").  One case cited by the City Attorney, decided

19   before *Beneficial,* did not address the issue of complete preemption under Section 27 of the FDIA,

---

[11] The court in *Klussman* declined to follow "the general rule that jurisdiction is determined from the face of the complaint at the time of removal," based on considerations unique to that case. 2004 WL 966289, at *5, 7.

[12] At issue in *BankWest* was the legality of a narrow provision of a Georgia law regulating the relationships between in-state agents and out-of-state banks.  *BankWest* has no application here because this case does not involve any statutory provision regulating the relationship between in-state agents and out-of-state banks.  Moreover, and further showing that the *BankWest* decision has no precedential value, prior to being vacated as moot, it was vacated when the Eleventh Circuit granted rehearing *en banc.*  *See* 433 F.3d 1344 (11th Cir. 2005).  After the Eleventh Circuit granted rehearing *en banc*, the appellees filed a suggestion of mootness.  The Eleventh Circuit then vacated its order granting rehearing en banc and remanded to the original panel for consideration and decision on the mootness issue.  On remand, the original panel vacated its prior decision and the district court's order in the case and dismissed the appeal as moot.  446 F.3d at 1358, 1360 (11th Cir. 2006).

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415. 391.4800 • Fax 415.989.1663

-9-

DEFENDANTS' <u>CORRECTED</u> OPPOSITION TO MOTION TO REMAND; MPA
Case No. C 07-02789 JSW

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

1    but instead considered the effect of Section 523 of DIDA.  *Donald v. Golden 1 Credit Union*, 839

2    F. Supp. 1394 (E.D. Cal. 1993).  And in the remaining two cases cited by the City Attorney, both

3    decided before *Beneficial*, the defendants sought to remove under Sections 85 and 86 of the NBA,

4    even though no national bank had been named as a defendant in either case.  *Colorado v. Ace Cash*

5    *Express, Inc.*, 188 F. Supp. 2d 1282, 1285 (D. Colo. 2002) ("My careful review of the Complaint

6    indicates no allegations directed at Goleta or a national bank.");  *Long v. Ace Cash Express, Inc.*,

7    No. 3:00-CV-1306-J-25TJC, 2001 WL 34106904, at *1 (M.D. Fla. June 18, 2001) ("The National

8    Bank Act, however, does not apply to defendant because defendant is not a national bank.").

9        In short, the City Attorney has offered no sound reason why this Court should not rely on

10   the express language of Section 27 of the FDIA, the similarity between that language and the

11   language used in Sections 85 and 86 of the NBA, the legislative history of Section 27, and the

12   weight of the precedent to hold that Section 27 preempts state law claims challenging the rates of

13   interest charged by state-chartered, federally insured banks, such as the Bank.   Accordingly,

14   Defendants properly removed this action to federal court under 28 U.S.C. § 1441 because this

15   Court has original jurisdiction under 28 U.S.C. § 1331.

16   II.    **DIVERSITY JURISDICTION EXISTS BECAUSE THE AMOUNT IN CONTROVERSY EXCEEDS $75,000 AND THE PARTIES ARE CITIZENS OF DIFFERENT STATES**

17

18        The Court also has jurisdiction under 28 U.S.C. § 1332(a)(1).  The amount in controversy

19   exceeds $75,000, and the parties to the dispute are citizens of different states.  As shown in the

20   Notice of Removal (¶¶ 19, 27-33) and supporting Declarations, the amount in controversy exceeds

21   $75,000, a fact the City Attorney does not dispute.  As to the citizenship of Defendants, the City

22   Attorney admits in the Complaint that Defendants are all incorporated in states other than

23   California and have their principal places of business outside of California.  *See* Compl. ¶¶ 6-10.[13]

24   Thus, it is undisputed that none of the Defendants is a citizen of California.

25

26   [13] Notwithstanding the Complaint's allegations, the City Attorney makes a half-hearted attempt to

27   reserve the right to assert a second challenge to diversity jurisdiction.  *See* Remand Memo at 12 n.4.  The City Attorney should not be permitted two bites at the apple, especially when the Complaint admits that Defendants' principal places of business are outside of California.  *See Am.*

28                                                                                              (continued...)

-10-

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

The only question before the Court is the citizenship of Plaintiff, and the answer to this question depends on whether the City and County of San Francisco or the State of California is the real party in interest. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy"). In the seminal case of *Moor v. County of Alameda*, 411 U.S. 693 (1973), the United States Supreme Court held that while a State is not a citizen of itself for purposes of diversity jurisdiction, "a political subdivision of a State, unless it is simply 'the arm or *alter ego* of the State,' is a citizen of the State for diversity purposes." *Id.* at 717 (emphasis added).

As demonstrated below, the City is a political subdivision, and not an arm or *alter ego,* of the State of California. The City is therefore a citizen of California. Moreover, the City—not the State—is the real party in interest in this case.

**A.      The City Is a Citizen of the State of California.**

In *Moor,* a citizen of Illinois sued the County of Alameda, California under a state law cause of action. 411 U.S. at 694-95. On the issue of diversity jurisdiction, the Court held that Alameda County was a citizen of California because it was not "a mere agent of the State of California." *Id.* at 719. In so deciding, the Court focused on the following factors:

> Most notably, under California law a county is given "corporate powers" and is designated a "body corporate and politic." In this capacity, a county may sue and be sued, and significantly for purposes of suit, it is deemed to be a "local public entity" in contrast to the State and state agencies. In addition, the county, and from all that appears the county alone, is liable for all judgments against it and is authorized to levy taxes to pay such judgments. A California county may also sell, hold, or otherwise deal in property, and it may contract for the construction and repair of structures. The counties also are authorized to provide a variety of public services such as water service, flood control, rubbish disposal, and harbor and airport facilities. . . . In sum, these provisions strike us as persuasive indicia

(continued...)

*Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("A statement in a complaint, answer or pretrial order is a judicial admission . . . .").

-11-

DEFENDANTS' <u>CORRECTED</u> OPPOSITION TO MOTION TO REMAND; MPA
Case No. C 07-02789 JSW

of the independent status occupied by California counties relative to the State of California.

*Id.* at 719-20 (footnotes omitted).

"Several ancillary principles derive from *Moor*. The criteria are substantially similar for evaluating whether an entity is a citizen of the State for diversity purposes, or a State for Eleventh Amendment sovereign immunity purposes." *Univ. of R.I. v. A.W. Chesterton Co.*, 2 F.3d 1200, 1203 (1st Cir. 1993). *See also Roche v. Lincoln Prop. Co.*, 175 Fed. App'x. 597, 600 (4th Cir. 2006) ("[T]o determine whether a state entity or political subdivision is an arm of the state and therefore not a citizen under § 1332, a court must look 'to the standards announced in cases addressing whether governmental entities are entitled to Eleventh Amendment immunity as an arm of the state.'"); *PYCA Indus. v. Harrison County Waste Water Mgmt.*, 81 F.3d 1412, 1416 (11th Cir. 1996) (same).

More recently, the district court in Hawaii determined that the Ninth Circuit would follow the "weight of authority" and apply the Eleventh Amendment immunity factors to the determination of whether an entity is an arm or *alter ego* of the State for purposes of diversity jurisdiction. *Befitel v. Global Horizons, Inc.*, 461 F. Supp. 2d 1218, 1221-23 (D. Haw. 2006). The five factors the Ninth Circuit considers under an Eleventh Amendment immunity analysis are as follows:

> (1) [W]hether a money judgment would be satisfied out of state funds, (2) whether the entity performs central government functions, (3) whether the entity may sue or be sued, (4) whether the entity has the power to take property in its own name or only in the name of the state, and (5) the corporate status of the entity.

*Id.* at 1222 (quoting *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 250-51 (9th Cir. 1992)). The *Befitel* court explained that these five factors "mirror so closely those from the Supreme Court's diversity jurisdiction analysis in *Moor* . . . that it is appropriate to use those factors to assess whether Plaintiff operates as an arm of the state or as a political subdivision." *Id.* at 1223. Applying these five factors to the City, it is clear that the City—like the County of Alameda— enjoys "a sufficiently independent corporate character to dictate that it be treated as a citizen of California." *Moor*, 411 U.S. at 721.

-12-

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

1. **The City—Not the State—Has a Pecuniary Interest in the Lawsuit.**

The State treasury will not be affected by this lawsuit. On the other hand, the City's treasury has a pecuniary interest in the case. Section 17206(f) of the California Business and Professions Code provides that where a city attorney of a city and county (i.e., San Francisco) brings an action seeking a penalty, "the entire amount of the penalty collected shall be paid to the treasurer of the city and county in which the judgment was entered for the exclusive use by the city attorney for the enforcement of consumer protection laws."

The City Attorney's argument that "such penalties are not for the benefit of the City itself" rings hollow. *See* Remand Memo at 13 n.5. Section 17206(f) makes clear that the proceeds from any penalty are for the "exclusive use by the city attorney for the enforcement of consumer protection laws." Moreover, the City Attorney cites the wrong provision of Section 17206 when he argues that the City will have to share any penalty proceeds with the District Attorney. *See id.* (*citing* Section 17206(c), instead of Section 17206(f)). Finally, earmarking funds for use by a city attorney to protect the residents in his or her city and county clearly benefits the city and county that receives the funds. To suggest otherwise is disingenuous. Regardless, the City Attorney has not argued—and cannot argue—that Section 17206(f) gives a role to the State in the litigation or in any way benefits the State's treasury.

In *California v. M & P Invs.*, 213 F. Supp. 2d 1208 (E.D. Cal. 2002), a California district court found that the City of Lodi, not the State, was the real party in interest, notwithstanding the fact that—like here—the case was brought in the name of the People of California. *Id.* at 1219. The court based its conclusion, in part, on the respective involvement of the City of Lodi and the State in instituting, financing, and directing the litigation:

> Plaintiff People's counsel acknowledged that the City Council of Lodi directed the filing of this action (*not the people of the California*); the City is financing this litigation (*not the taxpayers of California*); and that any claim asserted against the "People of California" would be directed against the City, since service would have to be made on the City. In addition, an award of damages, costs or sanctions against the "People of California" would be paid by the City, and most importantly, the City (*not the people of California*) would be subject to any order of injunctive relief. In

-13-

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

> sum, it seems absurd to argue that the state legislature intended that under CCP §731 a city attorney represent the "People of California" as a separate, albeit "virtual," client when the "actual" client, the city, alone, authorizes, directs, finances, and assumes complete responsibility for the litigation in which the State of California is not a party and refuses to participate. Rarely has the phrase "real party in interest" seemed *so apropos*.

*Id.* at 1216-17 (emphasis in original). Similarly, in this case, based on the public information available to Defendants, it appears that the City alone has authorized, directed, financed, and assumed complete responsibility for this lawsuit. Therefore, just like the City of Lodi, the City is the real party in interest in this litigation. *See also District of Columbia ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1047-48 (D.C. Cir. 1986) (concluding that the District of Columbia was not the real party in interest for purposes of diversity because it did not have a pecuniary interest in the lawsuit, was not involved in the prosecution, and was protected from any liability for the lawsuit's costs or results).[14]

**2.    The City Is Not an Arm or *Alter Ego* of the State.**

The remaining four factors of the Ninth Circuit's Eleventh Amendment test, which mirror the *Moor* factors, further demonstrate that the City is not an arm or *alter ego* of the State. Like Alameda County, the City is a "local public entity" under California law performing a variety of local functions. *See* Cal. Gov't Code § 940.4 ("local public entity" includes "a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State, but does not include the State"); San Francisco Charter art. I, § 1.101[15] ("The City and

---

[14] The additional remedies sought by the City also do not affect the State treasury. The requested injunctive relief has no impact on the State's treasury, and the remaining relief sought by the City Attorney—disgorgement and rescission—affects a specific, identifiable group of persons who had loans with the Bank, not the State. *See Conn. Comm'r of Labor v. AT&T Corp.*, No. 3:06CV01257, 2006 WL 3332982, at *2 (D. Conn. Nov. 16, 2006) ("'[W]hen Connecticut claims refunds to be distributed to identifiable purchasers, the citizen status of the purchasers rather than the sovereign status of their benefactor controls for diversity purposes.'") (citation omitted); *Louisiana ex rel. Guste v. Fedders Corp.*, 524 F. Supp. 552, 557-58 (M.D. La. 1981) (finding the Department of Urban and Community Affairs to be a citizen of Louisiana where "[t]he action brought by the plaintiffs clearly does not benefit the state treasury. Instead, the action simply is an effort to make the consumers of Louisiana whole").

[15] San Francisco Charter, *available at*: http://www.municode.com/content/4201/14130/HTML/index.html.

-14-

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

1    County may make and enforce within its limits all local police, sanitary, and other ordinances and

2    regulations."). Like Alameda, the City may sue and be sued. *See* San Francisco Charter art. I,

3    § 1.101 ("The City and County may appear, sue and defend in all courts in all matters and

4    proceedings."). The City may own, hold, sell, or otherwise deal in property. *See, e.g.,* Cal Gov't

5    Code § 37350 ("[a] city may purchase, lease, receive, hold, and enjoy real and personal property,

6    and control and dispose of it for the common benefit"). Finally, the City is a municipal

7    corporation. *See Wood v. Bd. of Election Comm'rs*, 58 Cal. 561, 563 (1881) (City and County of

8    San Francisco "is nothing more nor less than a municipal corporation").

9         All five factors overwhelmingly support the conclusion that the City is the real party in

10   interest and that it is not an arm or *alter ego* of the State. It is, therefore, a citizen of the State of

11   California for purposes of diversity jurisdiction.

12         **B.      The City—Not the State—Is the Real Party in Interest.**

13         The City Attorney recognizes in his Remand Memo that "only those parties with a real and

14   substantial interest in the controversy are considered" for purposes of diversity jurisdiction. *See*

15   Remand Memo at 12. The City Attorney argues that, merely because the Complaint has been

16   styled as having been brought in the name of the "People of the State of California," the City that

17   undeniably filed this action (through its City Attorney) has somehow been transformed into the

18   sovereign State of California. *See* Remand Memo at 13. California law, however, does not

19   support this argument.

20         As the California case law recognizes, just because a statute provides authority to a city

21   attorney to bring an action in the name of the People does not mean that the party in interest

22   changes from the city to the State. While a "statute gives a city attorney the authority to act *for the*

23   *benefit of* the people of California, it does not expressly confer upon the city attorney authority to

24   *represent* all Californians as an entity separate and apart from the city itself." *M & P Invs.*, 213 F.

25   Supp. 2d at 1216 (emphasis in original).

26         In *M & P Invs.*, the City Attorney for the City of Lodi sought to abate a public nuisance

27   pursuant to CCP § 731. *Id.* at 1212 n.10. As permitted by CCP § 731, the Lodi City Attorney

28

-15-

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

brought the lawsuit in the name of the People and the City of Lodi. The question before the court was "who is the real party in interest asserting the Plaintiff People's . . . state law nuisance claims . . . who is the plaintiff 'People of the State of California?' Is it a party separate and distinct from the City itself?" *Id.* at 1212. The court requested briefing on this question from the City Attorney and from the Attorney General of the State of California.

Relying on *People v. Hy-Lond Enterprises*, 93 Cal. App. 3d 734 (Cal. App. 1979), the Attorney General argued "that the geographical boundaries of the city represent the jurisdictional limits of a city attorney; therefore, a city attorney cannot represent the State or the 'people of the State' as a separate party apart from the city." *M & P Invs.*, 213 F. Supp. 2d at 1214. Rather, it is the Attorney General, who is designated as the "chief law officer of the State," *id.* at 1214 (*quoting* Cal. Const. art. V, § 13), and it is the Attorney General that is directed to "'prosecute or defend all causes of action to which the *State* . . . is a party.'" *Id.* (*quoting* Cal. Gov't Code §§ 12511, 12512) (emphasis in original). The Attorney General unequivocally stated in his brief that "the State should not be considered a party to the instant action because the City Attorney of the City of Lodi lacks any legal authority to be the legal representative of the State." *See* Exhibit 2 to Declaration of Ann E. Johnston at 5.[16]

The court agreed with the Attorney General, ruling that "the City Attorney of Lodi's authority to prosecute a public nuisance under CCP § 731 does not elevate him to the status of agent for the State, with the full authority commensurate with such a position." *M & P Invs.*, 213 F. Supp. 2d at 1213 (*citing California v. City of Los Angeles*, 160 Cal. App. 2d 494, 500 (Cal. App. 1958)). The court further stated that: "[i]t is important to note that city attorneys, by definition, are not state officials, despite the occasional grant of authority to prosecute violations of specific state laws. *See generally* Cal. Gov't Code § 41801 *et seq.* The primary function of a city attorney is to

---

[16] The Attorney General's amicus brief also noted the problems associated with multiple lawsuits filed by different prosecutors, all claiming to represent the State: "Surely, multiple actions by local prosecutors claiming to be the 'state sovereign' is an illogical scenario. The authority of a city and its attorney is confined to the geographical limitations of the municipality. *City of Oakland v. Brock*, 8 Cal. 2d 639, 641, 67 P.2d 344 (Cal. 1937) ('A municipal corporation has generally no extraterritorial powers of regulation' and 'may not exercise its governmental functions beyond its corporate boundaries.'" Exhibit 2 to Declaration of Ann E. Johnston at 8.

-16-

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415. 391.4800 • Fax 415.989.1663

1   'advise city officials in all legal matters pertaining to city business,' not to prosecute violations of

2   state law. Cal. Gov't Code § 41801." *Id.* at 1213 n.13.[17] Accordingly, the court held "the City

3   Attorney in this case has but one client—the City of Lodi. . . . [T]he real party in interest asserting

4   the Plaintiff People's state law nuisance claims is the City of Lodi." *Id.* at 1217.[18]

5        Significantly, the two California cases relied upon by the City Attorney, *California v.*

6   *Steelcase, Inc.*, 792 F. Supp. 84 (C.D. Cal. 1992) and *Nguyen v. Superior Court*, 49 Cal. App. 4th

7   1781 (Cal. App. 1996), involved district attorneys, not city attorneys. In finding that the State was

8   the real party in interest in *Steelcase*, the court held that "the district attorney has the authority to

9   bind the State." 792 F. Supp. at 86. City attorneys, however, are not state officials and cannot

10  bind the State. *See M & P Invs.*, 213 F. Supp. 2d at 1213 n.13. *See also* Cal. Gov't Code § 12550

11  (unlike district attorneys, city attorneys are not supervised by Attorney General).[19] Thus, neither

12  *Steelcase* nor *Nguyen* addresses the issue presented in this case, which is whether a city attorney—

13  who does not have authority to bind the State—may nevertheless represent the State when he or

14  she brings an action in the name of the People. The *M & P Invs.* case, on the other hand,

15  addressed this exact question in 2002 and held that a "city attorney's authority is limited to the

16  geographical boundaries of the constituency which he or she represents." 213 F. Supp. 2d at 1216.

17       In *Hy-Lond*, the court considered the authority conferred upon a district attorney by

18  Sections 17204 and 17535 of the Business and Professions Code and concluded that "'a district

19  attorney acts for the state within the territorial limits of the county for which he was elected.'" 93

20  Cal. App. 3d at 751. "Hy-Lond instructs that there are limitations on public prosecutors' (like

---

22  [17] *See also* San Francisco Charter art. VI, § 6.102 ("The City Attorney shall: 1. Represent the City and County in legal proceedings with respect to which it has an interest").

23  [18] The three non-California cases cited by the City (*Abrams*, *Eure*, and *Scott*) are inapposite, as
24  none of them involved a city attorney seeking to bring an action putatively in the name of the People.

25  [19] Moreover, *Steelcase* has been called into question by a number of courts with respect to its Eleventh Amendment analysis. *See, e.g.*, *In re Pac. Gas & Elec. Co.*, 281 B.R. 1, 6 (Bankr. N.D.
26  Cal. 2002) ("*Steelcase* is inconsistent with the weight of authority, including that of the Supreme Court and the Northern District of California and has been rejected in many subsequent decisions
27  from other courts"); *California ex rel. Lockyear v. Dynegy, Inc.*, 375 F.3d 831, 849 n.15 (9th Cir. 2004).

-17-

district attorneys and city attorneys) authority *vis a vis* the State of California." *M & P Invs.*, 213 F. Supp. 2d at 1215. In short, as both *Hy-Lond* and *M & P Invs.* make clear, a statute permitting a city attorney to bring a lawsuit in the name of the People does not transform or elevate the State of California into the real party in interest. Thus, notwithstanding the fact that the City Attorney brought this action in the name of the People, the real party in interest is the City, which is a citizen of California.[20] Accordingly, Defendants properly removed this action to federal court under 28 U.S.C. § 1441 because this Court has original jurisdiction under 28 U.S.C. § 1332.

III.    **THE CITY SATISFIES ARTICLE III'S STANDING REQUIREMENTS.**

The City Attorney also erroneously argues in his Remand Memo that the City does not have Article III standing to challenge Defendants' practices in federal court because it has not obtained any loans from Defendants. *See* Remand Memo at 12. The City Attorney's argument ignores the fact that he, on behalf of the City, has filed this lawsuit against the Defendants pursuant to California Business and Professions Code Sections 17204 and 17206 challenging installment loans made by the Bank and seeking penalties from the Defendants pursuant to California Business and Professions Code Section 17206 for each challenged installment loan. Section 17026(f) provides in relevant part:

> If the action is brought by a city attorney of a city and county, the entire amount of the penalty collected shall be paid to the treasurer of the city and county in which the judgment was entered for the exclusive use by the city attorney for the enforcement of consumer protection laws.

Cal. Bus. & Prof. Code § 17206(f). Thus, the entire amount of any penalty collected by the City would be paid to the San Francisco Treasurer. Because Section 17206 provides the City with the right to seek and collect penalties for itself from the Defendants with respect to each challenged installment loan, the City has Article III standing to pursue this case. *See Vermont Agency of*

---

[20] Because the factors set forth in *Moor* and the *M & P Invs.* establish that the City is the real party in interest in this case, the City Attorney's reliance on Section 100 of the California Government Code is misplaced. Remand Memo at 13. Section 100 discusses the sovereignty of the State. It does not, however, transform the City into an agent of the State merely because the City brings a lawsuit in the name of the People. *See, e.g., M & P Invs.* 213 F. Supp. at 1217; *Hy-lond,* 93 Cal. App. at 751-52.

-18-

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

1  *Natural Res. v. United States,* 529 U.S. 765, 771-78 (2000) (plaintiff who brought an action under

2  the False Claims Act ("FCA") had Article III standing to sue, even though plaintiff suffered no

3  injury in fact, because the FCA allowed the plaintiff to receive a share of the proceeds of the

4  action). Section 17206(f)—similar to the FCA—provides the City with the right to seek and

5  collect penalties for itself from the Defendants based on the challenged installment loans. Thus,

6  under *Vermont Agency,* the City has satisfied the Article III standing requirements.[21]

7  IV.    **CONCLUSION**

8      For the foregoing reasons, the Bank and the other Defendants properly removed this action

9  to federal court under 28 U.S.C. § 1441(a) and (b) because this Court has original jurisdiction

10  under 28 U.S.C. §§ 1331 and 1332. The Court has supplemental jurisdiction over all other claims

11  under 28 U.S.C. §§ 1367(a) and 1441(c). *See Executive Software N. Am., Inc. v. U.S. Dist. Ct. for*

12  *Cent. Dist. of Cal.,* 24 F.3d 1545, 1556 (9th Cir. 1994). Accordingly, the Motion to Remand

13  should be denied.

14  DATED: July 18, 2007

15                          COBLENTZ, PATCH, DUFFY & BASS LLP

16

17                          By: */s/William H. Orrick, III*
                                 William H. Orrick, III
18                               Attorneys for Defendant
                                 FIRST BANK OF DELAWARE

19

20

21

22

23

24

25  [21] *Mangini v. R.J. Reynolds Tobacco Co.,* 793 F. Supp. 925 (N.D. Cal 1992) and *People v. Beltz
    Travel Serv., Inc.,* 379 F. Supp. 948 (N.D. Cal. 1974) offer the City no support for its standing
26  argument, as both of those cases were decided prior to *Vermont Agency* and neither involved a city
    attorney of a city and county seeking penalties for the city and county under California Business &
27  Professions Code Section 17206(f).

28

-19-

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

**COUNSEL FOR OTHER DEFENDANTS**

DATED: July 18, 2007                     PEPPER HAMILTON LLP


By:  _____/s/_____
     Stephen G. Harvey, Esq.
     Larry R. Wood, Jr., Esq
     Kathleen A. Mullen, Esq
     Attorneys for Defendants
     MONETARY MANAGEMENT OF
     CALIFORNIA, INC. AND MONEY MART
     EXPRESS, INC.


DATED: July 18, 2007                     BARTKO, ZANKEL, TARRANT & MILLER
                                         A Professional Corporation


By:  _____/s/_____
     Robert H. Bunzel, Esq
     C. Griffith Towle, Esq.
     Attorneys for Defendants
     MONETARY MANAGEMENT OF
     CALIFORNIA, INC. and MONEY MART
     EXPRESS, INC.


DATED: July 18, 2007                     SQUIRE, SANDERS & DEMPSEY L.L.P.


By:  _____/s/_____
     Mark C. Dosker, Esq.
     Amy L. Brown, Esq
     Nicholas M. Beizer, Esq
     Jeremy W. Dutra, Esq.
     Attorneys for Defendants
     CHECK'N GO OF CALIFORNIA, INC.;
     SOUTHWESTERN & PACIFIC SPECIALTY
     FINANCE, INC.; AND AVANTE
     TELADVANCE, INC.

Coblentz, Patch, Duffy & Bass LLP
One Ferry Building Suite 200, San Francisco, California 94111-4213
415.391.4800 • Fax 415.989.1663

–20–

DEFENDANTS' <u>CORRECTED</u> OPPOSITION TO MOTION TO REMAND; MPA
Case No. C 07-02789 JSW

2186.000/330820.1