DENNIS J. HERRERA, State Bar #139669
City Attorney
OWEN J. CLEMENTS, State Bar #141805
Chief of Special Litigation
PETER J. KEITH, State Bar #206482
CHRISTINE VAN AKEN, State Bar #241755
ANN M. O'LEARY, State Bar #238408
Deputy City Attorneys
Office of the City Attorney
1 Dr. Carlton B. Goodlett Place, Suite 234
San Francisco, CA 94102
Telephone:      (415) 554-4721
Facsimile:      (415) 554-4757
E-Mail:         christine.van.aken@sfgov.org

Attorneys for Plaintiff
THE PEOPLE OF THE STATE OF CALIFORNIA
Ex rel. San Francisco City Attorney Dennis J. Herrera

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, acting by and through City Attorney Dennis J. Herrera,<br><br>        Plaintiffs,<br><br>      vs.<br><br>CHECK 'N GO OF CALIFORNIA, INC. d/b/a CHECK 'N GO; SOUTHWESTERN & PACIFIC SPECIALTY FINANCE, INC. d/b/a CHECK 'N GO; AVANTE TELADVANCE, INC. d/b/a CHECK 'N GO ONLINE; MONETARY MANAGEMENT OF CALIFORNIA, INC. d/b/a MONEY MART; MONEY MART EXPRESS, INC. d/b/a CUSTOMCASH ONLINE; FIRST BANK OF DELAWARE; and DOES 1-50, inclusive.<br><br>        Defendants. | Case No. C 07-2789-JSW<br><br>**PLAINTIFF PEOPLE OF THE STATE OF CALIFORNIA'S REPLY IN SUPPORT OF MOTION TO REMAND**<br><br>Hearing Date:    August 10, 2007<br>Hearing Judge:   Hon. J. S. White<br>Time:        9:00 a.m.<br>Place:       Courtroom 2, 450<br>Golden Gate Avenue, San Francisco, CA<br><br>Date Action Filed:    April 26, 2007<br>Date Action Removed: May 30, 2007<br><br>Supporting documents filed herewith:<br>    Declaration of Christine Van Aken |

# SUMMARY OF ARGUMENT

The People's complaint, filed in state court, alleges that two payday lenders, Money Mart and Check 'N Go, have violated state laws concerning loan brokering, or alternatively have violated state law by acting as the true lender of installment loans that they are not permitted to make. The complaint further alleges that the First Bank of Delaware has abetted the payday lenders' unlawful conduct, either by assisting their brokering violations or by pretending to be the true lender on the installment loans. None of these allegations depends on federal law, and none is completely preempted by 12 U.S.C. § 1831d ("Section 27"), as Defendants contend.

Defendants argue that the People have alleged a completely preempted state-law usury claim against First Bank of Delaware, but the complaint is bereft of any such allegation. Nor do Defendants show that the People's aiding and abetting claims are completely preempted by Section 27. Instead, the cases on which Defendants themselves rely acknowledge that sham-lender allegations are not completely preempted. *Discover Bank v. Vaden*, No. 06-1221, 2007 WL 1695758, at *6-*7 & n.9 (4th Cir. June 13, 2007); *In re Community Bank of N. Va.*, 41 F.3d 277, 296 (3d Cir. 2005). The brokering violations that the People have alleged do not "come[] within the scope" of Section 27, and thus neither can they be treated as arising under federal law. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). Finally, Section 27's plain language does not demonstrate any congressional intent to create an exclusively federal forum for usury claims against state banks, and a look at the vastly different legal regimes that govern state banks and national banks demonstrates that is implausible that Congress had any such intent.

Furthermore, diversity jurisdiction does not exist here because state law establishes that a local prosecutor acting under Business and Professions Code § 17200 is an agent for the sovereign State itself. *People v. Hy-Lond*, 93 Cal. App. 3d 734 (1979). The local prosecutor may be either a district attorney or a city attorney; state law accords equal stature to them to prosecute civil law enforcement actions under § 17200 and analogous statutes. *People v. Bhakta*, 135 Cal. App. 4th 631, 638, 641 (2006). Because state law unambiguously establishes that the State is a party to this action, diversity jurisdiction does not lie. *People v. Steelcase, Inc.*, 792 F. Supp. 84 (C.D. Cal. 1992). This case should immediately be remanded to state court.

1

2                                  **TABLE OF CONTENTS**

3     SUMMARY OF ARGUMENT ......................................................................................... i

4     TABLE OF AUTHORITIES ........................................................................................ ii

5     REPLY IN SUPPORT OF MOTION TO REMAND ...................................................1

6        I.      THE PEOPLE'S COMPLAINT DOES NOT GIVE RISE TO FEDERAL
7                QUESTION JURISDICTION. ................................................................1

8                A.      The People Assert No State-Law Claim for Usury Against First Bank
9                        of Delaware. ...................................................................................2

10               B.      The People's Aiding and Abetting Claim Against First Bank of
                         Delaware Is Not Completely Preempted by Section 27 ..............................3

11               C.      Section 27 Does Not Completely Preempt State Law Usury Claims ..........7

12       II.     DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN OF
13               DEMONSTRATING THAT DIVERSITY JURISDICTION EXISTS .................10

14    CONCLUSION .......................................................................................................15

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Reply ISO Motion to Remand, Case No. C 07-2789-JSW

# TABLE OF AUTHORITIES

**Federal Cases**

*BankWest Inc. v. Baker*
  411 F.3d 1289 (11th Cir. 2005) ...................................................................4, 9

*BankWest Inc. v. Baker*
  443 F.3d 1344 (11th Cir. 2005) ...................................................................4, 9

*BankWest Inc. v. Baker*
  446 F.3d 1358 (11th Cir. 2005) ...................................................................4, 9

*Beneficial Nat'l Bank v. Anderson*
  539 U.S. 1 (2003) ......................................................................................... 6, 9

*Caterpillar, Inc. v. Williams*
  482 U.S. 386 (1987) ......................................................................................4, 8

*City and County of San Francisco v. PG & E Corp.*
  433 F.3d 1115 ................................................................................................14

*Colorado ex rel. Salazar v. Ace Cash Express, Inc.*
  188 F. Supp. 2d 1282 (D. Colo. 2002) ....................................................... 4-5

*Conroy v. Aniskoff*
  507 U.S. 511 (1993) ........................................................................................9

*Cortazar v. Wells Fargo & Co.*
  No. C 04-894 JSW, 2004 WL 1774219 (N.D. Cal. Aug. 9, 2004) ...............7

*Discover Bank v. Vaden*
  No. 06-1221, --- F.3d ---, 2007 WL 1695758 (4th Cir. June 13, 2007)....... 5, 8, 9, 15

*Easton v. Crossland Mortgage Corp.*
  114 F.3d 979 (9th Cir. 1997) ..........................................................................3

*Flowers v. EZPawn Oklahoma, Inc.*,
  307 F. Supp. 2d 1191 (N.D. Okla. 2004) ........................................................5

*Forness v. Cross Country Bank, Inc.*
  No. 05-CV-417-DRH, 2006 WL 240535 (S.D Ill. Jan. 13, 2006) ................5

*Gaus v. Miles, Inc.*
  980 F.2d 564 (9th Cir. 1992) ..........................................................................1

*Greenwood Trust Co. v. Massachusetts*
  971 F.2d 818 (1st Cir. 1992) ...........................................................................8

*Gulf Offshore Co. v. Mobil Oil Corp.*
  453 U.S. 473 (1981) ........................................................................................9

*In re Community Bank of Northern Virginia*
   41 F.3d 277 (3d Cir. 2005) ................................................................................ 5, 8, 9

*Jenkins v. First American Cash Advance of Georgia LLC*
   400 F.3d 868 (11th Cir. 2005) ....................................................................................5

*Krispin v. May Dep't Stores Co.*
   218 F.3d 919 (8th Cir. 2000) .....................................................................................6

*Lippitt v. Raymond James Fin. Servs., Inc.*
   340 F.3d 1033 (9th Cir. 2003) ...................................................................................3

*McQuillan v. Check 'N Go of North Carolina, Inc.*
   No. 7:04-CV-169-FL(1) (E.D.N.C. Feb. 2, 2005) ...................................................15

*Mangini v. R.J. Reynolds Tobacco Co.*
   793 F. Supp. 925 (N.D. Cal.) .....................................................................................8

*Marquette Nat'l Bank v. First Nat'l Bank of Omaha*
   422 F. Supp. 1346 (D. Minn. 1976) ...........................................................................8

*Marquette Nat'l Bank v. First of Omaha Serv. Corp.*
   439 U.S. 299 (1978).....................................................................................................8

*Maryland Stadium Authority v. Ellerbe Becket Inc.*
   407 F.3d 255 (4th Cir. 2005) ...................................................................................15

*Medtronic, Inc. v. Lohr*
   518 U.S. 470 (1996).....................................................................................................6

*Merrell Dow Pharmaceuticals Inc. v. Thompson*
   478 U.S. 804  (1986)..............................................................................................2, 3

*Nat'l State Bank v. Long*
   63 F.2d 981 (3d Cir. 1980) .......................................................................................10

*Neilson v. Union Bank of Cal.*
   290 F. Supp. 2d 1101 (N.D. Cal. 2003) .....................................................................7

*New York v. County Bank of Rehoboth Beach,*
   No. 1:03-CV-1320 (N.D.N.Y. May 25, 2004).............................................................7

*People v. M&P Investments*
   213 F. Supp. 2d 1208 (E.D. Cal. 2002) ...............................................................12, 13

*People v. Steelcase, Inc.*
   792 F. Supp. 84 (C.D. Cal. 1992) ....................................................................i, 13, 15

*Rains v. Criterion Sys., Inc.,*
   80 F.3d 339 (9th Cir. 1996) .......................................................................................6

Reply ISO Motion to Remand, Case No. C 07-2789-JSW

*Valles v. Ivy Hill Corp.*
    410 F.3d 1071 (9th Cir. 2005) ............................................................2, 6

*Vermont Agency of Natural Resources v. United States*
    529 U.S. 765 (2000).......................................................................14, 15

*Watters v. Wachovia*
    --- U.S. ---, 127 S. Ct. 1559 (2007)...................................................6, 10

*Young v. Anthony's Fish Grottos, Inc.*
    830 F.2d 993 (9th Cir. 1987) ................................................................6

**State Cases**

*City of Oakland v. Brock*
    8 Cal. 2d 639 (1937) ..........................................................................13

*Nguyen v. Superior Court*
    49 Cal. App. 4th 1781 (1996) .........................................................11, 13

*People v. Bhakta*
    135 Cal. App. 4th 631 (2006) ..............................................................13

*People v. City of Los Angeles*
    160 Cal. App. 2d 494 (1958) ...............................................................13

*People v. Duque*
    105 Cal. App. 4th 259 (2003) ..............................................................13

*People v. Hy-Lond*
    93 Cal. App. 3d 734 (1979) .........................................................11, 12, 13

*People v. Pacific Land Research Co.*
    20 Cal. 3d 10 (1977) ...........................................................................14

*People v. Superior Court*
    83 Cal. App.4th 387 (2000) ..................................................................14

**State Constitution, Statutes & Codes**

California Constitution
    Article XV....................................................................................2

California Business and Professions Code
    Section 17200 .........................................................1, 11, 13, 15
    Section 17204 ..................................................................................13
    Section 17206(f)..........................................................................14, 15
    Section 17206(c)...............................................................................14

California Code of Civil Procedure
    Section 731 ..............................................................................12, 13

iv

California Finance Code
    Section 3800 ......................................................................................................................10
    Section 22100 .....................................................................................................................4

California Government Code
    Section 100 ........................................................................................................................11
    Section 26506 ....................................................................................................................14

5 Delaware Code
    Section 722 .........................................................................................................................9
    Section 761 .........................................................................................................................9


**Federal Statutes & Codes**

12 Code of Federal Regulations
    Section 7.4008(d) ..............................................................................................................10

12 United States Code
    Section 21 ..........................................................................................................................10
    Section 24 ..........................................................................................................................10
    Section 85 ...........................................................................................................................8
    Section 484 ........................................................................................................................10
    Section 1813 .......................................................................................................................9
    Section 1820 ......................................................................................................................10
    Section 1831a ....................................................................................................................10
    Section 1831d .............................................................................................................. passim

28 United States Code
    Section 1332 ......................................................................................................................15
    Section 1447(c) ..................................................................................................................15


**Other Authorities**

Letter from FDIC Chairman to North Carolina Attorney General, Apr. 27, 2005 ...................4, 10

Restatement (Third) of Agency
    Section 1.04(1) ..................................................................................................................12
    Section 2.01 .......................................................................................................................12
    Section 2.02 .......................................................................................................................12
    Section 2.03 .......................................................................................................................12

**REPLY IN SUPPORT OF MOTION TO REMAND**

"Federal jurisdiction must be rejected if there is any doubt as to the right of removal…." *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992). Because Defendants have not met their exacting burden of removing all doubt that federal jurisdiction is proper, this case should be remanded to state court, its proper forum.

## I.     THE PEOPLE'S COMPLAINT DOES NOT GIVE RISE TO FEDERAL QUESTION JURISDICTION.

The People's complaint against payday lenders Check 'N Go and Money Mart, and against state-chartered bank the First Bank of Delaware, alleges that these defendants have worked together to commit violations of California law. The People contend that Check 'N Go and Money Mart are the true lenders of installment loans bearing annual percentage rates of 400 percent or more, and that First Bank of Delaware has rented its name and its state charter to the payday lenders as a sham, so that the payday lenders can evade California law which would otherwise prohibit them from making such usurious loans. In the alternative, the People contend that if First Bank of Delaware is the true lender of these loans, then Check 'N Go and Money Mart have violated California's laws concerning loan brokering, and First Bank of Delaware has aided and abetted that unfair practice. Neither alternative theory implicates federal law, which, in contrast to its treatment of national banks, provides but a few federally protected privileges to state-chartered banks. Indeed, federal law is silent concerning the scope of a state-chartered bank's ability to employ third parties to make or broker loans in its name. Instead, federal law allows a state-chartered bank to export its home state's interest rates to other states, *see* 12 U.S.C. § 1831d – and nothing more.

Defendants' argument that federal-question jurisdiction exists in this case must be rejected unless Defendants prevail on two points: that Section 27 of the Federal Deposit Insurance Act (FDIA), codified at 12 U.S.C. § 1831d, completely preempts state-law claims for usury against federally insured state-chartered banks like First Bank of Delaware; and that the People have asserted a state-law claim for usury against First Bank of Delaware. But Defendants' arguments on these points amount only to a series of elisions and straw men: Defendants collapse the People's separate claims against Money Mart and Check 'N Go and against First Bank of Delaware into a

1

single challenge to interest rates charged by a state-chartered bank, they brush aside the People's theory that First Bank of Delaware is not the lender of the installment loans at issue, and they elide the nation's dual system of banking, in which state and national banks exist and do business in different legal regimes, into a single regime of federal law.  These arguments miss their mark.

A.    The People Assert No State-Law Claim for Usury Against First Bank of Delaware.

It is axiomatic that a plaintiff is "the master of his complaint," *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1075 (9th Cir. 2005) [internal quotation marks omitted], and that "[j]urisdiction may not be sustained on a theory that the plaintiff has not advanced."  *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986).  Defendants' attempt to justify removal by baldly rewriting the People's complaint to claim usury directly against First Bank of Delaware must fail.

Defendants selectively quote the People's introductory statement that the installment loans at issue "'violate California law and California's constitutional ban on usury.'"  Defendants' Corrected Opposition to Motion to Remand ("Defs.' Opp.") at 1:17-2:1 (quoting Complaint ¶ 1).  But the very next sentence of that paragraph acknowledges that First Bank of Delaware's liability with regard to the loans can only be through "aid[ing] and abet[ting]" the payday lenders' violations of California consumer protection laws, which regulate the <u>brokering</u> of high-rate loans as well as the <u>making</u> of these loans.  Complaint ¶ 1.  Moreover, the Complaint expressly acknowledges that California law exempts state-chartered banks from the prohibitions on making usurious loans found in the California Finance Lenders Law and the California Constitution.  Complaint ¶¶ 15, 16.

Defendants next point to the Complaint's claim that "'DEFENDANTS have violated Section 1 of Article XV of the California Constitution, California's usury law," Defs.' Opp. at 2:2-4 (quoting Complaint ¶ 36c), but Defendants ignore the second phrase of the sentence they quote: "<u>or</u> aided and abetted violations."  *Id*. (emphasis added).  They also cite to the Complaint's Doe Defendant allegations to support their creative rewriting, such as where the People contend generally that acts of Defendants are legally attributable to each other.  Defs.' Opp. at 2:5-11 (quoting Complaint ¶ 12). But the People's fulfillment of state law Doe pleading requirements, and their attribution of agency to the Defendants, cannot overcome the express allegations of the complaint.

Casuistic readings aside, the People's complaint makes plain its allegations against First Bank of Delaware.  The complaint contends that "CHECK 'N GO [and] MONEY MART … must comply with the California Constitution, the California Finance Lenders Law and the California Deferred Deposit Transaction Law.  FIRST BANK OF DELAWARE must cease aiding and abetting violations of these laws."  Complaint ¶ 4.  The complaint alleges that Check 'N Go's and Money Mart's unlawful conduct consists in acting as the true lender of loans that violate California law's ban on usury, *id.* ¶¶ 20, 25; and that First Bank of Delaware "aids and abets these unlawful loans because FIRST BANK OF DELAWARE pretends to be the true lender and thereby attempts to assist [the payday lenders] to evade the requirements of the California Finance Lenders Law."  *Id.* ¶ 33.  In the alternative, the complaint invokes California law's regulation of loan-brokering and contends that the payday lenders "violate the California Finance Lenders Law by acting as brokers for loans that are not in compliance with the terms of that law," *id.* ¶¶ 19, 24, and alleges that First Bank of Delaware has "unlawfully aid[ed] and abett[ed] violations of the California Finance Lenders Law by permitting [the payday lenders] to purport to broker installment loans for consumers where the terms of these loans violate" that law.  *Id.* ¶ 32.

The complaint simply does not assert that First Bank of Delaware has violated any California usury law.  And in case the complaint was not abundantly clear, the People here disavow that they assert any state-law usury claims against the First Bank of Delaware.  This is sufficient to overcome Defendants' efforts to mischaracterize the complaint.  *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1040 (9th Cir. 2003) (where complaint can be read as stating exclusively state law claim and plaintiff "has disclaimed a broader reach," federal question jurisdiction is not found); *Easton v. Crossland Mortgage Corp.*, 114 F.3d 979, 982 (9th Cir. 1997) ("Any lingering apprehension about the plaintiffs' intentions was resolved by plaintiffs' immediate actions clarifying their intent upon removal.").

**B.     The People's Aiding and Abetting Claim Against First Bank of Delaware Is Not Completely Preempted by Section 27.**

It seems that Defendants would like to claim that Section 27 offers a preemptive umbrella not just for usury claims against state-chartered banks but also for usury claims against the non-

bank actors they work with.  Having no authority for this proposition, Defendants do the next best thing by contending that there is no difference for complete preemption purposes between a claim that the First Bank of Delaware has charged too much interest and the People's claim that First Bank of Delaware has aided and abetted the unlawful brokering or lending practices of the payday lenders.  Defs.' Opp. at 2:20-4:17.  The argument fails for the reasons discussed below.

First, the plain language of Section 27 cannot support this result.  Section 27 provides only that a federally insured state-chartered bank may "take, receive, reserve, and charge" interest at the rate permitted by its home state, regardless of conflicting state law.  12 U.S.C. § 1831d(a).  But Section 27 creates no federal law concerning the ability of state banks to make loans through brokers or the displacement of state laws concerning brokering.  "Section 27[] does not preempt state legislation imposing penalties on … out-of-state banks who aid and abet [violations of state law concerning agency agreements]."  *BankWest Inc. v. Baker*, 411 F.3d 1289 (11th Cir. 2005), vacated, 443 F.3d 1344, and appeal dismissed as moot, 446 F.3d 1358 (2006).[1]  The Chairman of the FDIC has reached the same conclusion, stating in a letter to the North Carolina Attorney General that, while federal law authorizes state-chartered banks to export interest rates, "this authorization does not prevent states from enforcing consumer protection and lending laws other than interest-rate related limitations."  Letter from FDIC Chairman to North Carolina Attorney General, April 27, 2005, Exh. A to Declaration of Christine Van Aken ("Van Aken Decl.").[2]

---

[1] Defendants criticize the People's citation of *BankWest* because it does not "discuss preemption in the removal context, or even use the words 'complete preemption.'"  Defs.' Opp. at 9:10-11.  But *BankWest* states that there is no ordinary preemption of aiding and abetting claims, and of course there can be no complete preemption if there is no ordinary preemption.  *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987) (complete preemption obtains when "the pre-emptive force of a [federal] statute is so extraordinary that it converts [the state law claim] into one stating a federal claim." (internal quotation marks omitted)).  Defendants also argue that *BankWest* is inapposite because it involved "the legality of a narrow provision of a Georgia law regulating the relationship between in-state agents and out-of-state banks" which is different from the statutory provisions at issue here.  Defs.' Opp. at 9:22-24.  But that is exactly the kind of statutory provision at issue here.  *See* Cal. Fin. Code §§ 22000 *et seq.* (regulating relationships between brokers and lenders).

[2] Numerous district courts have reached the same result in rent-a-charter actions brought against payday lenders who have colluded with state and national banks, and analogous actions.  *See* People's Motion to Remand at 6:24-8:4 (citing cases).  In some of these cases, the bank was not named as a defendant.  *See, e.g. Colorado ex rel. Salazar v. Ace Cash Express, Inc.*, 188 F. Supp. 2d 1282 (D. Colo. 2002).  But there is no reason why that matters for purposes of federal question (continued on next page)

Nor does the People's contention that First Bank of Delaware is a sham lender, and that Money Mart and Check 'N Go are the true lenders of the installment loans at issue (Complaint ¶¶ 2, 20, 25, 33) implicate Section 27, because Section 27 says nothing about the ability of state banks to place their imprimaturs on loans they have not made.  Indeed, the cases on which Defendants heavily rely acknowledge as much.  In *In re Community Bank of Northern Virginia*, 41 F.3d 277 (3d Cir. 2005), where a state-chartered bank was "allegedly paid for nothing more than permitting [the true lenders] to disguise the origin of their loans," *id.* at 284, the court found that removal based on the original complaint was improper because the plaintiff had not alleged a usury claim against a state or national bank.  *Id.* at 296.  The court cited with approval two district court decisions remanding cases where payday lenders were alleged to have entered into sham relationships with banks for purposes of avoiding federal preemption.  *Id.* (citing *Flowers v. EZPawn Oklahoma, Inc.*, 307 F. Supp. 2d 1191 (N.D. Okla. 2004), and *Colorado v. Ace Cash Express, Inc.*, 188 F. Supp. 2d 1282 (D. Colo. 2002)).  Similarly, in *Discover Bank v. Vaden*, No. 06-1221, --- F.3d ---, 2007 WL 1695758 (4th Cir. June 13, 2007), the court's holding that a usury claim against a state-chartered bank was completely preempted by Section 27 was expressly predicated on its factual finding that the bank, not a non-bank subsidiary, was the true lender of the loans.  *Id.* at *6-*7.  Indeed, the court acknowledged that if another party were the true lender, then its result would be different, and it also cited *Flowers v. EZPawn* with approval.  *Id.* at *7 n.9.[3]  Furthermore, because there is no

---

(footnote continued from previous page)
jurisdiction analysis: it is the federal claim that creates jurisdiction, not the identity of the parties. *See New York v. County Bank of Rehoboth Beach*, No. 1:03-CV-1320, at *8 (N.D.N.Y. May 25, 2004) (Exh. D to Keith Declaration).

[3] Even as they ignore the holdings of *Vaden* and *In re Community Bank* that sham-lender allegations do not create federal jurisdiction under Section 27, Defendants apparently contend that so long as a state-chartered bank is a party to a loan transaction, even if it is a sham party, then complete preemption must follow.  Defs.' Opp. at 4:18-5:16.  But the cases Defendants cite for that proposition do not establish the point.  In *Jenkins v. First American Cash Advance of Georgia, LLC*, 400 F.3d 868 (11th Cir. 2005), the court found that complete preemption based on §§ 85 and 86 of the National Bank Act was proper despite plaintiff's sham-lender allegations because plaintiff's "complaint … expressly named both [the payday lender and the national bank] as Defendants and charged them both with usury."  *Id.* at 873 n.3 (emphasis added).  Similarly, in *Forness v. Cross Country Bank, Inc.*, No. 05-CV-417-DRH, 2006 WL 240535 (S.D Ill. Jan. 13, 2006), the court found federal question jurisdiction proper based on its interpretation of Section 27 of the FDIA as completely preemptive of state-law usury claims and based on the plaintiffs' complaint, which "challenges the amounts of [a state-chartered bank's] fees."  *Id.* at *3.  But the People make no usury (continued on next page)

1  authority that could support a finding of complete preemption of People's theory that First Bank of

2  Delaware is a sham lender under state law, then the People's assertion of this alternative theory of

3  liability is sufficient to defeat federal-question jurisdiction.  "When a claim can be supported by

4  alternative and independent theories – one of which is a state law theory and one of which is a

5  federal law theory – federal question jurisdiction does not attach because federal law is not a

6  necessary element of the claim."  *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996).

7      Second, because Section 27 creates no federal cause of action concerning aiding and

8  abetting the brokering of usurious loans, Defendants cannot claim that an aiding and abetting claim

9  or a brokering claim is completely preempted.  "Even when federal law preempts state law, a state

10  law claim may not be removed unless federal law also supplants it with a federal claim."  *Young v.*

11  *Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987); *see also Beneficial Nat'l Bank v.*

12  *Anderson*, 539 U.S. 1, 8 (2003) (when a federal statute has completely preemptive force, "a [state

13  law] claim <u>which comes within the scope</u> of that cause of action" is treated as arising under federal

14  law) (emphasis added); *Valles, supra*, 410 F.3d at 1076 (complete preemption only applies to state

15  law claims within the ambit of preemptive federal law claim).  Because no federal law supplants

16  brokering claims brought under the California Finance Lenders Law or aiding and abetting claims

17  brought under the California Unfair Competition Law with a federal claim, federal law does not

18  completely preempt these state law claims.[4]

19

20  (footnote continued from previous page)
charge against First Bank of Delaware, nor do they challenge fees charged by that bank.  In *Krispin*

21  *v. May Dep't Stores Co.*, 218 F.3d 919 (8th Cir. 2000), the court affirmed complete preemption on
the basis of the National Bank Act where plaintiffs alleged usury and a national bank was "the

22  originator of [plaintiffs' credit card] accounts" as well as an assignee of those accounts, even though
the national bank was not a party to the lawsuit.  *Id.* at 923.  Although First Bank of Delaware is a

23  party to this suit, the People have alleged that it was <u>not</u> the true lender of the installment loans at
issue, unlike in *Krispin*.

24      [4] Just as Section 27 does not expressly displace or supplant the People's aiding and abetting
cause of action, *a fortiori* it does not <u>impliedly</u> displace or supplant this cause of action.  There is a

25  presumption that "Congress does not cavalierly pre-empt state-law causes of action. … [T]he
historic police powers of the States [are] not to be superseded by [a federal statute] unless that [is]

26  the clear and manifest purpose of Congress."  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)
(internal quotation marks omitted).  States have historically exercised their police powers over state-

27  chartered banks, *see Watters v. Wachovia*, --- U.S. ---, 127 S. Ct. 1559, 1568 n.7 (2007), and so the
*Medtronic* presumption that federal law has not preempted state law must apply.

28

Third, Defendants' argument that making usurious loans is legally indistinguishable from abetting another's commission of state brokering law violations has no basis in the law. Aiding and abetting liability may be imposed under California law where the abetting entity "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." *Neilson v. Union Bank of Cal.*, 290 F. Supp. 2d 1101, 1118 (N.D. Cal. 2003) (cited in Defs.' Opp. at 3:11-21). Thus, an aider and abetter must have knowledge of the "primary violation," and must assist in the violation. *Id.* at 1119. Applying these standards to the People's complaint, the primary violation alleged is either the making of a usurious loan by a non-bank entity, if the payday lenders are the true lenders, or alternatively, violations of California brokering law. In neither of the People's alternative theories is the primary violation the making of a usurious loan by a state-chartered bank. Moreover, California law is clear that the aiding and abetting cause of action "does not require that the aider and abettor owe plaintiff a duty." *Id.* at 1127. Thus, even if First Bank of Delaware owes consumers no duty with regard to interest rates, it does not follow that the bank is immune from abetting independent violations of duties borne by others. Additionally, under California law, "[u]nlike a conspirator, an aider and abettor does not adopt as his or her own the tort of the primary violator. Rather, the act of aiding and abetting is distinct from the primary violation …." *Id.* at 1134. Thus, the People need not prove that First Bank of Delaware has made usurious loans in order to prevail on their claim that the bank is liable for knowingly assisting the payday lenders who carried out the primary wrongful conduct.

The People have not alleged that First Bank of Delaware has violated any federal duty, nor do they need to prove any violation of federal law in order to prevail. *See Cortazar v. Wells Fargo & Co.*, No. C 04-894 JSW, 2004 WL 1774219 (N.D. Cal. Aug. 9, 2004) (if a violation of federal law "is not a necessary element of [plaintiffs'] Section 17200 claim or if that claim is supported by an independent state law theory, federal jurisdiction would not attach"). Federal question jurisdiction does not lie.

**C.     Section 27 Does Not Completely Preempt State Law Usury Claims**

The Court does not need to reach the question whether Section 27 completely preempts state law claims against state-chartered banks for making usurious loans, because that is not the claim

1    that the People have alleged against First Bank of Delaware.  But if the Court reaches the question,

2    it should hold that Section 27 does not have complete preemption effects.

3    Complete preemption is rare, and it can only be found when "the pre-emptive force of a

4    [federal] statute is so _extraordinary_ that it converts [a state law claim] into one stating a federal

5    claim for purposes of the well-pleaded complaint rule."  *Caterpillar, Inc. v. Williams*, 482 U.S. 386,

6    393 (1987) (emphasis added; internal quotation marks omitted).  To establish this extraordinary

7    preemptive force in Section 27, which contains only the language of ordinary preemption,

8    Defendants rely heavily on *Vaden, supra*, 2007 WL 1695758, and *Community Bank, supra*, 418

9    F.3d 277.[5]  With due respect to the Fourth and Third Circuits, those cases were incorrectly decided

10    and should not be followed by this Court.[6]

11    Both *Vaden* and *Community Bank* rely on the linguistic similarity between Section 85 of the

12    NBA (codified at 12 U.S.C. § 85) and Section 27 to find that Congress intended complete

13    preemption with regard to Section 27.  *Vaden, supra*, 2007 WL 1695758, at *8; *Community Bank,*

14    *supra*, 418 F.3d at 295-96.  The flaw in this analysis is that, at the time Section 27 was enacted by

15    Congress in 1980 as part of the Depository Institutions Deregulation and Monetary Control Act of

16    1980, Pub. L. No. 96-221 (Mar. 31, 1980), Section 85 of the NBA had never been held to

17    completely preempt state law claims.[7]  Indeed, in 1980, it had only recently been settled that

18    Section 85 had an ordinary preemption effect.  *See Marquette Nat'l Bank v. First of Omaha Serv.*

19    *Corp.*, 439 U.S. 299, 301 (1978).  Thus, at the time Congress passed Section 27 in 1980, it would

20    not have presumed that the effect of the language it borrowed from Section 85 accomplished

---

21

22    [5] Defendants also rely on *Greenwood Trust Co. v. Massachusetts*, 971 F.2d 818 (1st Cir.
1992), but that case discussed only ordinary preemption.  *Vaden, supra*, 2007 WL 1695758 at *8.

23    [6] In *Vaden*, the plaintiff conceded that Section 27 effected complete preemption of state law
claims, and "the district court's analysis of this issue was cursory."  2007 WL 1695758 at *7 n.10.

24    The Fourth Circuit thus lacked adversarial briefing on the issue of complete preemption.  In
*Community Bank*, the Third Circuit did not need to address the question of whether Section 27 has

25    completely preemptive force, because federal jurisdiction in that case was established regardless of
its answer by plaintiff's assertion, subsequent to removal, of federal claims.  418 F.3d at 297.  Its

26    holding, therefore, was *dictum*.

27    [7] The one court to have addressed the issue found the opposite: that Section 85 _did not_
"convert a state law claim … into a claim arising under federal law."  *Marquette Nat'l Bank v. First*

28    *Nat'l Bank of Omaha*, 422 F. Supp. 1346, 1352 (D. Minn. 1976).

complete preemption. *See Conroy v. Aniskoff*, 507 U.S. 511, 516 (1993) (there is a presumption that Congress is familiar with case law). Instead, what is most probable is that Congress intended merely to allow state-chartered banks to export their local interest rates to other states, and Congress knew from the recent *Marquette* decision that the language of Section 85 would accomplish that end.

*Vaden* is similarly unpersuasive in its analysis of the purposes of Section 27, which states its purpose directly: it was enacted "[i]n order to prevent discrimination against State-chartered insured depository institutions." 12 U.S.C. § 1831d(a). In other words, just as Section 85 was enacted to prevent states from favoring local banks over national banks, Section 27 was enacted to remove discriminatory barriers to competition between state and national banks by preventing states from favoring their local institutions. But because state courts are presumed to construe federal law correctly, *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477-78 (1981), ordinary preemption is sufficient to accomplish that purpose.

Most importantly, *Vaden* and *Community Bank* are unpersuasive because they disregard the fundamental differences between state-chartered banks and national banks – contrary to the Supreme Court's cautionary note in *Beneficial*, *supra*, 539 U.S. at 11 ("this Court has … recognized the special nature of federally chartered banks"). Defendants contend that the special nature of national banks, referred to by the *Beneficial* Court, is shared by state-chartered banks like First Bank of Delaware. Defs.' Opp. at 5:26-6:3. Defendants are wrong. Instead, state banks are fundamentally creatures of state law. First Bank of Delaware, for instance, exists pursuant to 5 Delaware Code § 722. It lends money under power granted by 5 Delaware Code § 761(a)(4) and contracts with agents under the incidental powers clause of 5 Delaware Code § 761(a)(17). It is subject to the "primary regulatory authority" of states. *BankWest, supra*, 411 F.3d at 1301; *see also* 12 U.S.C. § 1813(r) (defining primary regulator of state banks as state authority). By virtue of being insured by the Federal Deposit Insurance Corporation (FDIC), it has a finite number of federally protected privileges, including the power to export its home state's interest rates – but only interest rates – to other states. 12 U.S.C. § 1831d(a). But in the main, federal law restricts rather than expands First Bank of Delaware's powers. *Id.* § 1831a(a)(1) (subject to certain exceptions, "an

9

insured State bank may not engage as principal in any type of activity that is not permissible for a national bank").  Importantly, federal law expressly does not exempt state-chartered banks like First Bank of Delaware from state consumer protection laws, 12 U.S.C. §§ 1820(j), 1831a(i), as the Chairman of the FDIC has recently acknowledged.  *See* Exh. A to Van Aken Decl.  Finally, a state-chartered bank is subject to the visitorial and auditing powers of states and can be required to obtain licenses in states where it does business or has branches.  *Watters*, 127 S. Ct. at 1568 n.7; Cal. Fin. Code §§3800 *et seq.*  State law thus applies to state banks unless federal law expressly displaces it.

With national banks, by contrast, the presumptions are reversed.  National banks are created by federal law, 12 U.S.C. § 21, and they lend money and exercise incidental powers under federal law.  12 U.S.C. § 24(Seventh).  Generally, "the States can exercise no control over national banks, nor in any wise affect their operation, except in so far as Congress may see proper to permit." *Watters, supra*, 127 S. Ct. at 1567 (internal quotation marks omitted).  National banks are immune from state licensing and registration requirements, 12 C.F.R. § 7.4008(d), and they are not generally subject to inspection and audit by state regulators.  12 U.S.C. § 484.  In fact, even where state law can be applied to national banks, state regulatory authorities have no power to enforce those laws. Instead, state officials' only recourse is to appeal to federal officials to enforce state law.  *Nat'l State Bank v. Long*, 63 F.2d 981, 989 (3d Cir. 1980).  Thus, it is fatuous for Defendants to suggest that the concerns of Congress regarding state-chartered banks are the same as regarding national banks. Instead, it is far more likely that Congress intended Section 27 to permit state-chartered banks to export their home states' interest rates, and nothing more.  Congress showed no intent or purpose to guarantee an exclusive federal forum to those state law creatures as well.

## II.    DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN OF DEMONSTRATING THAT DIVERSITY JURISDICTION EXISTS.

This is a civil law enforcement action wherein the People, in their sovereign capacity, seek to enforce the state's laws and policies against defendants.  The City and County of San Francisco is not a party to this suit, nor is it the real party in interest.  Instead, because the sovereign State is the real party in interest, diversity jurisdiction does not exist here.  The conclusion urged by Defendants – that the City is acting only for itself and is thus a diverse citizen of California – cannot be squared

with California law, which must control this issue.  At a minimum, Defendants have not met their

burden of demonstrating diversity jurisdiction, because they ask this Court to sustain federal

jurisdiction based on complicated issues of state law for which their only published authority is a

nonprecedential federal district court decision.

Defendants repeatedly assert that a local official cannot also represent the State.  Their

assertions contradict California law.  In *People v. Hy-Lond*, 93 Cal. App. 3d 734 (1979), the

California Court of Appeal unambiguously held that a district attorney proceeding under § 17200

acts on behalf of the State.  The court first noted that "'[t]he style of all process shall be "The People

of the State of California," and all prosecutions shall be conducted in their name and by their

authority.'"  *Id.* at 751 (quoting Cal. Govt. Code § 100).  The court found that the district attorney is

a prosecutor for the public, and stated that "[i]t is generally recognized that he acts as both a county

officer and a state officer in the exercise of the powers for which he has been elected."  *Id.*  Thus,

the court concluded with regard to § 17200 civil prosecutions, "[i]t is clear that in conducting the

prosecution of violations of state law on behalf of the people, <u>the district attorney is acting as an

agent of the state</u>."  *Id.* (emphasis added); *see also Nguyen v. Superior Court*, 49 Cal. App. 4th

1781, 1788-89 (1996) (State was real party in interest in action brought by district attorney under

Red Light Abatement Law, based in part on analogy to § 17200).

The *Hy-Lond* court went on to explain that, although the district attorney unambiguously

acts on behalf of the State in bringing § 17200 actions, the district attorney's authority is not

unlimited.  Instead, the scope of the district attorney's agency is "within the territorial limits of the

county for which he was elected," *id.* (internal quotation marks omitted), and the district attorney's

"grant of power" does not "embrace[] the right to restrain the powers of other public officials and

agencies."  *Id.* at 752.  Thus, *Hy-Lond* stands for two distinct propositions: first, in bringing a

§ 17200 action, a district attorney acts as agent on behalf of his or her principal, the State; and

second, the scope of the district attorney's agency is bounded.

Defendants' argument that any reference to "the People" who bring a § 17200 action actually

means "the City" results from Defendants' confusion between the principal-agent relationship itself

and the scope of the agency.  Defendants implicitly reason that because a city attorney's agency on

behalf of the State does not have unlimited scope, then a city attorney must not be an agent at all. But that reasoning is faulty: <u>any</u> agent may properly act for its principal only within the scope of its agency. *See* Restatement (Third) of Agency ("Restatement") §§ 2.01 & 2.02 (discussing actual authority and scope of actual authority). The court in *People v. M&P Investments*, 213 F. Supp. 2d 1208 (E.D. Cal. 2002), on which Defendants so heavily rely, makes a similar error. Addressing a public nuisance action brought by a city attorney in the name of the people pursuant to California Code of Civil Procedure § 731, the *M&P Investments* court notes that there are territorial limitations on public prosecutors' authority, *id.* at 1215, and then, after discussing these limitations, proceeds to the conclusion that because of these limitations, "the City Attorney in this case has but one client – the City of Lodi," and the City of Lodi is the real party in interest. *Id.* at 1217. Indeed, the *M&P Investments* court even states that a city attorney's public prosecution powers "<u>[do] not elevate him to the status of agent for the State</u>." *Id.* at 1213 (emphasis added) (quoted in Defs.' Opp. at 16:17-19). But this conclusion is flatly negated by *Hy-Lond*, which states that despite the territorial limits on the scope of a local prosecutor's authority, he or she nonetheless "<u>act[s] as an agent of the state</u>." *Hy-Lond*, *supra*, 93 Cal. App. 3d at 751 (emphasis added).

    *M&P Investments* and Defendants similarly misinterpret California law when they reason that, because different agents can act on behalf of the People in bringing lawsuits against a defendant, and because these agents may have differing authority to bind the state, then each of these agents must really be acting for different principals. *M&P Investments*, *supra*, 213 F. Supp. 2d at 1217; Defs.' Opp. at 16:24-27. *Hy-Lond* addresses this problem as well:

> "[Defendant argues that] [t]he litigant should be able to treat with the state as a single entity to avoid being caught in the midst of a power struggle among various state agencies and other entities. As a general proposition that argument has some merit, but when the particular situation shows that the litigant is attempting to secure concessions which would limit the powers of other state agents or entities which he knows are involved and are not parties to the action, the argument does not survive scrutiny." *Hy-Lond*, *supra*, 93 Cal. App. 3d at 752.

In other words, and unsurprisingly, a principal may have more than one agent, and an agent may bind its principal only within the scope of the agent's actual authority or the authority reasonably apparent to a third party. Restatement §§ 1.04(1), 2.01, 2.03. Neither of these facts destroys the

1    agency relationship between the local prosecutor and the sovereign People.[8]

2         Nor is there any merit to Defendants' notion that because a city attorney rather than a district

3    attorney brings this action on behalf of the People, then it is somehow less than an action on behalf

4    of the sovereign.  Indeed, Defendants appear to concede that a district attorney bringing the same

5    lawsuit against them would represent the State, while the San Francisco City Attorney represents

6    only the City – or at least, this is the only basis on which they distinguish *People v. Steelcase, Inc.*,

7    792 F. Supp. 84 (C.D. Cal. 1992), and *Nguyen, supra*, 49 Cal. App. 4th 1781.  Defs.' Opp. at 17:5-

8    16.  But Defendants fail to explain why identical grants of power to a city attorney and a district

9    attorney – and, indeed, to the Attorney General – to bring unfair competition actions in the name of

10   the People, *see* Cal. Bus. & Prof. Code § 17204, should compel a finding that each agent represents

11   a different principal.  The plain language of § 17204 rebuts the distinction Defendants offer.  Nor is

12   the distinction supported by case law.  Instead, the California Court of Appeal has held that a

13   concurrent grant of power to a city attorney and a district attorney to act in the name of the People

14   shows "the Legislature['s] inten[t] to allow the city attorney equal stature with the district attorney."

15   *People v. Bhakta*, 135 Cal. App. 4th 631, 638 (2006).  Indeed, the court stated that "the Legislature

16   intended the city attorney to have equal status and authority to represent the people of the state" in a

17   Red Light Abatement Law action, *id.*, and the court also found that a city attorney is fully

---

18       [8] Besides *Hy-Lond*, *M&P Investments* relies on two state cases, both of which it
19   misconstrues.  *City of Oakland v. Brock*, 8 Cal. 2d 639 (1937), cited in *M&P Investments* at 1216,
20   decided only that in the absence of permissive state law, a city has no authority to regulate
     slaughterhouses outside of city limits.  *Id.* at 641.  But § 17200 provides expressly authorizes city
     attorneys to act on behalf of the State.  *People v. City of Los Angeles*, 160 Cal. App. 2d 494 (1958),
21   cited in *M&P Investments* at 1214-16, decided that the Code of Civil Procedure § 731 gave city
     attorneys authority to sue on behalf of the People in connection with public nuisances within the
22   city's jurisdiction, not in connection with judgments related to nuisances in neighboring
     communities.  *Id.* at 500.  In other words, an agent of the State cannot exceed the scope of his or her
23   agency.  This case is irrelevant because the San Francisco City Attorney has not exceeded the scope
     of his agency in the present suit.

24       Nor does the Attorney General's *amicus* brief in *M&P Investments* constitute binding
     authority.  *People v. Duque*, 105 Cal. App. 4th 259, 268 (2003) ("Given that the Attorney General
25   has aligned himself with [a party to this case], citing the Attorney General's opinion as controlling is
     analogous to one party arguing that an *amicus* brief submitted in support of his position mandates
26   how an appeal must be resolved. In any event, while opinions of the Attorney General are entitled to
     considerable weight, they are not binding.").  And, in light of the City of Lodi's proposal of
27   injunctive relief that would bind state agencies, it is unsurprising that the Attorney General would
     have taken the position it did for purposes of that litigation.

28

1  empowered to bring actions on behalf of the People under § 17200.  *Id.* at 641.

2          Defendants also argue that because Business and Professions Code § 17206(f)[9] entitles the

3  City and County of San Francisco to receive the penalties assessed against Defendants by the

4  People, the City and not the People is the true party in interest.  Defs.' Opp. at 13:2-7.  But as the

5  California Supreme Court has held, "[a]n action filed by the People seeking injunctive relief <u>and</u>

6  <u>civil penalties</u> is fundamentally a law enforcement action designed to protect the public and not to

7  benefit private parties."  *People v. Pacific Land Research Co.*, 20 Cal. 3d 10, 17 (1977) (emphasis

8  added); *see also City and County of San Francisco v. PG & E Corp.*, 433 F.3d 1115, 1125-26

9  (§ 17200 action brought by a government entity is a law enforcement action for the protection of the

10  public).  This holding is underscored by the fact that the City receives such penalties not for its

11  general or proprietary use but specifically for the enforcement of consumer protection laws.  Bus. &

12  Prof. Code § 17206(f).  Furthermore, under California law, a requirement that penalties be allocated

13  to or among public prosecutors, such as found in Government Code § 26506, does not change the

14  fact that a criminal prosecutor "represents the sovereign power of the people of the state," not the

15  proprietary power of a local county.  *People v. Superior Court*, 83 Cal. App. 4th 387, 397 (2000).[10]

16          Nor are Defendants correct that the City and County of San Francisco would have standing

17  to bringing this litigation on its own behalf.  The City itself has taken out no installment loans.  And

18  even if the City Attorney can receive penalties for purposes of enforcing consumer protection laws,

19  that does not create standing.  In *Vermont Agency of Natural Resources v. United States*, 529 U.S.

20  765, 771-78 (2000) (cited in Defs.' Opp. at 18-19), the Supreme Court found that a relator under the

21  federal False Claims Act had standing because Congress had the authority to define new federal

22  rights, such as the right to be assigned recovery for an injury of the United States, and new federal

---

23          [9] The People's opening brief erroneously cited to Business and Professions Code
24  § 17206(c) rather than § 17206(f) with regard to the allocation of penalties.

25          [10] Nor does the fact that the People seek rescission and disgorgement on behalf of California
    citizens affected by Defendants' unlawful practices alter the character of this action.  Defs.' Opp. at
26  14 n.14.  In California, "[t]he character of a section 17200 action is not affected by the choice of
    restitution as a remedy."  *PG & E Corp., supra*, 433 F.3d at 1126.  In that case, even as the city and
27  state sought restitution for ratepayers of an alleged $4 billion misappropriation of revenues, the case
    was nonetheless a law enforcement action.  *Id.* at 1119, 1126.

28

---

14

1  rights could in turn confer standing. *Id.* at 773. But in the present case, the right conferred on the

2  City is not a federal right but one created by state law, § 17206(f). Thus, the holding of *Mangini v.*

3  *R.J. Reynolds Tobacco Co.*, 793 F. Supp. 925, 929-30 (N.D. Cal. 1992), that state legislatures may

4  not expand standing in the federal courts by creating new causes of action, is unaltered by *Vermont*

5  *Agency*. Moreover, even if this Court were to find that the San Francisco City Attorney is acting on

6  behalf of the City as well as the State, the presence of the State in this litigation, an entity that is not

7  a citizen of any state, destroys complete diversity. *See Maryland Stadium Authority v. Ellerbe*

8  *Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) ("[I]f one party to an action is not a citizen … , and

9  therefore not able to sue or be sued in federal court under § 1332, the district court does not have

10  jurisdiction of the action under § 1332, even if all other parties to that action are citizens of different

11  states.").

12      Thus, as then-District Judge Tashima recognized in *Steelcase, supra*, 792 F. Supp. 84, in

13  bringing a § 17200 action, local prosecutors like the San Francisco City Attorney act on behalf of

14  the People and on behalf of the sovereign State. *Id.* at 86. The State is not a citizen of itself, and

15  accordingly there is no diversity jurisdiction here. *Id.*[11]

### CONCLUSION

17      For the reasons offered above, the People respectfully submit that this Court should enter an

18  order remanding this case in its entirety to the San Francisco Superior Court.

19  Dated: July 27, 2007                    DENNIS J. HERRERA
20                                By:  Christine Van Aken
                                    CHRISTINE VAN AKEN
21                                    Attorneys for Plaintiff
                                    THE PEOPLE OF THE STATE OF CALIFORNIA,
22                                    ex rel. Herrera

---

[11] Defendants also contend that the People have waived any argument that one or more of the Defendants is a citizen of California. Defs.' Opp. at 10-11 n.13. This contention is meritless: remand is appropriate at any time before final judgment if the district court lacks subject matter jurisdiction, 28 U.S.C. § 1447(c), and "a party may not create jurisdiction by concession." *Vaden, supra*, 2007 WL 1695758, at *7 n.10. It is plausible that discovery will reveal that an operating company like "Check 'N Go of California, Inc." has a predominance of corporate operations in California. *Cf. McQuillan v. Check 'N Go of North Carolina, Inc.*, No. 7:04-CV-169-FL(1), at *16 (E.D.N.C. Feb. 2, 2005) (Exh. B to Van Aken Decl.) (holding that defendant Check 'N Go of North Carolina, Inc. failed to show its principal place of operations was not North Carolina).