United States District Court

For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7

8                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

9   PEOPLE OF THE STATE OF CALIFORNIA,
    acting by and through City Attorney Dennis J.
10  Herrera,                                          No. C 07-02789 JSW

11              Plaintiff,

12      v.                                            **ORDER (1) GRANTING MOTION
                                                      TO REMAND AND (2) DENYING
13  CHECK 'N GO OF CALIFORNIA, INC. d/b/a             MOTION FOR ATTORNEYS'
    CHECK 'N GO, et al.,                              FEES**

14              Defendants.

15  _____/

16

17          Now before the Court are the motions filed by plaintiff the People of the State of

18  California, acting by and through the San Francisco City Attorney Dennis J. Herrera,

19  ("Plaintiff") to remand and for attorneys' fees.  Having carefully considered the parties'

20  arguments and relevant legal authority, the Court hereby grants the Plaintiff's motion to remand

21  and denies the motion for attorneys' fees.

22                                    **BACKGROUND**

23          Dennis Herrera, the City Attorney for the City of San Francisco, filed this action on

24  behalf of the People of the State of California.  (Compl., p.1.)  Plaintiff alleges that defendants

25  Check 'N Go of California d/b/a/ Check 'N Go and Southwestern & Pacific Speciality Finance,

26  Inc. d/b/a Check 'N Go (collectively, "Check 'N Go"), Avante Teladvance, Inc. d/b/a Check 'N

27  Go Online ("Check 'N Go Online"), Monetary Management of California, Inc. d/b/a Money

28  Mart ("Money Mart"), and Moneymart Express, Inc. d/b/a Customcash Online ("Customcash

**United States District Court**

For the Northern District of California

Online") formed relationships with defendant First Bank of Delaware ("First Bank") "to engage in unlawful and deceptive business practices in an attempt to avoid California laws regulating the provision of deferred deposit loans (also known as 'payday loans') and short-term consumer loans (also known as 'installment loans') to customers in California." (*Id.*, ¶ 1.)

Plaintiff alleges that Check 'N Go and Money Mart offer installment loans with unconscionable, usurious interest rates and that they offer payday loans at the same place of business that they offer such installment loans without leave of the California Department of Corporations. (*Id.*, ¶¶ 18, 23.) Plaintiff also alleges that Check 'N Go, Check 'N Go Online, and Money Mart purport to market and arrange installment loans on behalf of First Bank and violate the California Finance Lenders Law[1] by acting as brokers for loans that are not in compliance with the terms of that law. (*Id.*, ¶¶ 19, 24.) In the alternative, Plaintiff alleges that Check 'N Go , Check 'N Go Online and Money Mart are the true lenders of the installment loans and violate California law by making installment loans without a license, offering loans with usurious interest rates, and/or misleading consumers concerning the identity of the lender. (*Id.*, ¶¶ 20, 25.) Plaintiff further alleges unlawful practices by Check 'N Go, Check 'N Go Online, and Money Mart that are unrelated to the interest rates of the installment loans. (*Id.*, ¶¶ 21-22, 26.)

With respect to First Bank, Plaintiff alleges that despite representations by First Bank that it will stop offering payday and installment loans to consumers through third-party retail vendors, it has not yet done so. (*Id.*, ¶ 29.) First Bank allegedly violates the California Deferred Deposit Transaction Law[2] by offering loans through Check 'N Go and Check 'N Go Online, and by intending to offer loans through Money Mart and Customcash Online, that require consumers to supply access to their checking accounts as collateral. (*Id.*, ¶ 30.) Plaintiff also alleges that First Bank unlawfully aids and abets the violation of the California Finance Lender Law by permitting Check 'N Go and Money Mart, and their affiliates, to

---

[1] California Finance Code § 22000, *et seq.*

[2] California Finance Code § 23000, *et seq.*

2

1    purport to broker installment loans for consumers with terms that violate the California Finance

2    Lender Law.

3    (*Id*., ¶ 32.)  To the extent that Check 'N Go and Money Mart, and their affiliates, are the true

4    lenders of the unlawful loans that they purport to broker, Plaintiff alleges that First Bank aids

5    and abets these unlawful loans because First Bank pretends to be the true lender and thereby

6    attempts to assist Check 'N Go and Money Mart, and their affiliates, in evading the

7    requirements of the California Finance Lender Law.  (*Id*., ¶ 33.)  Plaintiff further alleges that,

8    even if First Bank is the true lender of the installment loans offered by Check 'N Go and Money

9    Mart, and their affiliates, First Bank has "aided and abetted violations of the California Finance

10   Lender Law by cooperating with brokers who are subject to that law to offer loans that violate

11   that law."  (*Id*.)

12        Based on these allegations, Plaintiff asserts a claim under California Business and

13   Professions Code § 17200 ("Section 17200") against all Defendants.  Plaintiff alleges that the

14   Defendants violated, or aidded and abetted violations of, the California Deferred Deposit

15   Transactions Law, the California Finance Lenders Law, and California's usury law.  (*Id*., ¶ 36.)

16   **A.    Applicable Legal Standards.**

17        "[A]ny civil action brought in a State court of which the district courts of the United

18   States have original jurisdiction, may be removed by the defendant ... to the district court of the

19   United States for the district and division embracing the place where such action is pending."

20   *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 7-8 (1983) (citation

21   omitted); *see also* 28 U.S.C. § 1441.  However, federal courts are courts of limited jurisdiction.

22   *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  An action

23   originally filed in state court may be removed to federal court only if the district court could

24   have exercised jurisdiction over such action if initially filed there.  28 U.S.C. § 1441(a);

25   *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987).  A district court must remand the case if

26   it appears before final judgment that the court lacks subject matter jurisdiction.  28 U.S.C.

27   § 1447(c).  Accordingly, the burden of establishing federal jurisdiction for purposes of removal

28   is on the party seeking removal.  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir.

United States District Court
For the Northern District of California

3

United States District Court

For the Northern District of California

2004); *see also Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Moreover, a court must construe the removal statute strictly and reject jurisdiction if there is any doubt regarding whether removal was proper. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996); *see also Gaus*, 980 F.2d at 566 ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.")

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule.'" *Caterpillar Inc. v. Williams*, 482 U.S. 382, 392 (1987). The well-pleaded complaint rule recognizes that the plaintiff is the master of his or her claim. "[H]e or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* Thus, under the well-pleaded complaint rule, federal-question jurisdiction arises where the "complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 27-28.

While a defense of preemption, also known as "ordinary preemption," is insufficient to demonstrate removal jurisdiction, "complete preemption," which is a corollary to the well-pleaded complaint rule, would be a sufficient basis for removal. *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 344 (9th Cir. 1996). Under the complete preemption doctrine, the force of certain federal statutes is considered to be so "extraordinary" that it "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987); *Rains*, 80 F.3d at 344.

**B.    Federal Question Jurisdiction Does Not Exist.**

Defendants argue that federal question jurisdiction exists because Plaintiff's claim against First Bank, which they construe as a state-law usury claim, is completely preempted by Section 27 of the Federal Deposit Insurance Act ("Section 27"), 12 U.S.C. § 1831d.[3] While it is

---

[3] Section 27 provides:
(a) Interest Rates
In order to prevent discrimination against State-chartered insured depository institutions ..., if the applicable rate prescribed in this subsection exceeds the rate

**United States District Court**
For the Northern District of California

1   undisputed that state-law usury claims against state-chartered banks such as First Bank are

2   preempted by Section 27, the parties vigorously debate whether the preemptive force of Section

3   27 is so strong that it completely preempts state-law usury claims against state-charted banks

4   and converts such claims to claim arising under federal law.  However the Court need not

5   resolve this issue, because Plaintiff's complaint does not state a state-law usury claim against a

6   state-chartered bank.

7        Section 27 only regulates the interest rates of loans.  12 U.S.C. § 1831d.  In its

8   complaint, Plaintiff alleges that Check 'N Go, Money Mart, and their affiliates, none of which

9   are state-charted banks, have engaged in the following unlawful and unfair business practices in

10  violation of California Business and Professions Code § 17200: (1) making loans that violate

11  California's usury laws (Compl., ¶¶ 2, 20, 25), or in the alternative, acting as a broker in

12  California on loans that violate California's usury laws (*Id*., ¶¶ 1, 19, 24); and (2) engaging in

13  other practices, wholly unrelated to interest rates (*Id*., ¶¶ 3, 18, 21-22, 26).  Plaintiff alleges that

14  First Bank engaged in unlawful and unfair business practices by aiding and abetting Check 'N

15  Go and Money Mart's above described practices.  (*Id*., ¶¶ 30, 32-34.)  Specifically, Plaintiff

16  alleges that if Check 'N Go and Money Mart are the true lenders of the loans bearing excessive

17  _____

18      such State bank ... would be permitted to charge in the absence of this subsection,
        such State bank ... may, notwithstanding any State constitution or statute which is
19      hereby preempted for the purposes of this section, take, receive, reserve, and charge
        on any loan ... interest at a rate of not more than 1 per centum in excess of the
20      discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in
        the Federal Reserve district where such State bank or such insured branch of a
21      foreign bank is located or at the rate allowed by the laws of the State, territory, or
        district where the bank is located, whichever may be greater.
22      (b) Interest overcharge; forfeiture; interest payment recovery
        If the rate prescribed in subsection (a) of this section exceeds the rate such State bank
23      ... would be permitted to charge in the absence of this section, and such State fixed
        rate is thereby preempted by the rate described in subsection (a) of this section, the
24      taking, receiving, reserving, or charging a greater rate of interest than is allowed by
        subsection (a) of this section, when knowingly done, shall be deemed a forfeiture of
25      the entire interest which the note, bill, or other evidence of debt carries with it, or
        which has been agreed to be paid thereon. If such greater rate of interest has been
26      paid, the person who paid it may recover in a civil action commenced in a court of
        appropriate jurisdiction not later than two years after the date of such payment, an
27      amount equal to twice the amount of the interest paid from such State bank or such
        insured branch of a foreign bank taking, receiving, reserving, or charging such
28      interest.
    12 U.S.C. § 1831d.

**United States District Court**
For the Northern District of California

1     interest rates, First Bank provided its name to aid and abet Check 'N Go and Money Mart's

2     evasion of California law restricting such loans.  (*Id*., ¶ 33.)  If, in the alternative, First Bank is

3     the true lender of the loans, then it aided and abetted Check 'N Go and Money Mart's unlawful

4     brokering of these loans.  (*Id*., ¶ 32.)  Significantly, Plaintiff does not allege that First Bank

5     violated California law by making loans bearing excessive interest rates.  In fact, Plaintiff

6     concedes in the complaint that state-charted banks, such as First Bank, are exempt from the

7     limits and requirements of the California Finance Lenders Law and expressly disavows that it

8     asserts any state-law usury claim against First Bank.  (Compl., ¶ 16; Reply at 3.)

9          Other courts similarly have held that Section 27 did not preempt claims where the

10    plaintiff did not directly assert a usury claim against a state-chartered bank. *See, e.g. People of*

11    *the State of New York v. County Bank of Rehoboth Beach*, No. 1:03-CV-1320 (N.D.N.Y. May

12    25, 2004) (attached as Exhibit D to the Declaration of Peter J. Keith ("Keith Decl.")) (finding

13    no federal question jurisdiction where plaintiff alleged usury claims against non-bank

14    defendants and asserted the state-bank aided non-bank defendants in committing usury); *see*

15    *also Saxton v. Capitol One Bank*, 392 F. Supp. 2d 772, 783 (S.D. Miss. 2005) (rejecting

16    defendant's characterization of claims as ones for usury against state bank where plaintiff

17    challenged the allegedly deceptive and improper manner in which the rates and fees were

18    charged); *Cross-Country Bank v. Klussman*, 2004 WL 966289, at *5 (N.D. Cal. Apr. 30, 2004)

19    (remanding action because plaintiff's claims did not challenge the rate of interest charged by a

20    state bank, but rather, alleged that state banks misrepresented the nature and costs of their

21    services); *Partin v. Cableview, Inc.*, 948 F. Supp. 1046, 1049 (S.D. Ala. 1996) (same).

22         In contrast, in *Jenkins v. First American Cash Advance of Georgia, LLC*, 400 F.3d 868

23    (11th Cir. 2005), a case relied on by Defendants, the complaint directly and unambiguously

24    stated a usury claim against a national bank.  *Id*. at 873 n.3.  The plaintiff argued that her usury

25    claims were brought "primarily" against non-national bank and did not even argue that she was

26    not bringing a usury claim against the national bank.  *Id*.  Moreover, her complaint expressly

27    named the national and non-national bank as defendants and charged them *both* with usury.  *Id*.;

28    *see also Forness v. Cross County Bank*, 2006 WL 240535, at *3-4 (S.D. Ill. Jan. 13, 2006)

United States District Court

For the Northern District of California

1    (finding claims against state-charted bank preempted where plaintiffs indicated that they

2    "mainly" challenged practices other than the interest rate charged, thus implying that they did in

3    fact challenge the interest rate).  That is not the case here.

4         Defendants argue, with no supporting authority, that by alleging that First Bank aided

5    and abetted other Defendants' unlawful acts, including usury, Plaintiff is in essence bringing a

6    usury claim directly against First Bank.  (Opp. at 3-4.)  As Plaintiff argues, Defendants'

7    argument rests on conflating the allegations against Check 'N Go and Money Mart into the ones

8    against First Bank.  However, under California law, aiding and abetting is distinct from

9    committing the primary underlying violation.  *See Neilson v. Union Bank of Cal.*, 290 F. Supp.

10   2d 1101, 1134-35 (N.D. Cal. 2003) (analyzing California law).  The court in *Neilson* explained:

12        [A]n aider and abettor does not 'adopt as his or her own' the tort of the primary
          violator.  Rather, the act of aiding and abetting is distinct from the primary

13        violation; liability attaches because the aider and abettor behaves in a manner that
          enables the primary violator to commit the underlying tort. ... [A]iders and

14        abettors do not agree to commit, and are not held liable as joint tortfeasors for
          commiting, the underlying tort... ."

15   *Id*. at 1134-35.  As summarized by Plaintiff, the primary violations it alleges are either the

16   making of a usurious loan by a non-bank entity, if Check 'N Go and Money Mart are the true

17   lenders, or violations of California's brokering law.  Under neither of Plaintiff's theories do

18   they assert that the primary violation is the making of a usurious loan by a state-charted bank.

19   (Reply at 7.)  Accordingly, even if Section 27 would completely preempt state-law usury claims

20   against a state-charted bank, Plaintiff does not allege such a claim, and thus, federal question

21   jurisdiction does not exist.

22   **C.    Diversity Jurisdiction Does Not Exist.**

23        Alternatively, Defendants argue that this Court has diversity jurisdiction over this action

24   because the amount in controversy exceeds $75,000 and the parties are completely diverse.  The

25   parties dispute whether Plaintiff, and real party in interest, is the State or the City of San

26

27

28

7

United States District Court

For the Northern District of California

1   Francisco.[4]  To determine if diversity jurisdiction exists, courts must examine the citizenship of

2   the real parties to the controversy, not the citizenship of nominal or formal parties.  *Navarro*

3   *Sav. Ass'n v. Lee*, 446 U.S. 458, 460-461 (1980).  If the State is the real party in interest in this

4   action, diversity jurisdiction does not exist because "a State is not a 'citizen' for purposes of the

5   diversity jurisdiction."  *See Moor v. County of Alameda*, 411 U.S. 693, 717 (1973); *see also*

6   *People v. Steelcase, Inc.*, 792 F.Supp. 84, 86 (C.D. Cal. 1992) ("[F]or diversity purposes, a state

7   is not a citizen of itself.  Therefore, it cannot sue or be sued in a diversity action.").

8       Here, pursuant to California Business and Professions Code §§ 17204 and 17206(a),

9   Dennis Herrera, City Attorney for the City of San Francisco ("Herrera") brought this action in

10  the name of the People of the State of California.  In *Steelcase*, the court was faced with the

11  similar issue as presented here and concluded that when the district attorney filed an action

12  pursuant to those provisions of the California Business and Professions in the name of the

13  People of the State of California, the State was the proper plaintiff, and the real party in interest,

14  and thus, diversity jurisdiction did not exist.  *Id.* at 85-86; *cf Nguyen v. Superior Court*, 49 Cal.

15  App. 4th 1781, 1789 (1996) (finding that the District Attorney of San Mateo County acted on

16  behalf of the State when it filed a red light abatement action "in the name of the People of the

17  State of California" pursuant to California Penal Code § 11226); *People v. Bhakta*, 135 Cal.

18  App. 4th 631, 638, 641 (2006) (holding that California Penal Code § 11226 and California

19  Business and Professions Code §§ 17204, 17260(a) provide city and district attorneys with

20  equal status and authority to bring actions in the name of the People of the State of California

21  and to represent the people of the State in such actions).

22      Defendants' attempt to distinguish *Steelcase* and *Nguyen* based on the fact that these

23  cases involved district attorneys rather than city attorneys is unpersuasive.  California Business

24  and Professions Code § 17204 provides in pertinent part: "Actions for any relief pursuant to this

25  _____

26      [4] Plaintiff also argues that diversity jurisdiction does not exist because "[t]wo
    defendants appear to be California-based operating companies."  (Mot. at 12 n.4.)
27  Defendants counter that Plaintiff waived that argument by pleading that Defendants' places
    of business are outside of California.  (Opp. at 10 n.13.)  Because the Court finds that
28  Plaintiff, and the real party in interest, is the State, the Court need not address whether
    complete diversity would exist if the City were the real party in interest.

chapter shall be prosecuted exclusively ... by the Attorney General or any district attorney ... [or] by any city attorney of a city, or city and county, having a population in excess of 750,000 ... in the name of the people of the State of California ...."  Cal. Bus. & Prof. Code § 17204. California Business and Professions Code § 17206(a) provides that acts of unfair competition are subject to a civil penalty of up to $2,500 for each violation, "which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General, by any district attorney, ... [or] by any city attorney of a city, or city and county, having a population in excess of 750,000 ..."  Cal. Bus. & Prof. Code § 17206(a). These statutes do not give district attorneys any more power than city attorneys of cities with a population of more than 750,000 to bring such a suit.  Notably, the court in *California v. M & P Investments*, 213 F. Supp. 2d 1208 (E.D. Cal. 2002), the case on which Defendants rely so heavily, did not distinguish between district and city attorneys in its analysis.  The court noted that "there are limitations on public prosecutors' (like district attorneys and city attorneys) authority *vis a vis* the State of California."  *M & P Investments*, 213 F. Supp. 2d at 1215 (citing *People v. Hy-lond Enterprises, Inc.*, 93 Cal. App. 3d 734 (1979)).

The Court finds Defendants' reliance on *M & P Investments*, for the proposition that the City is the real party in interest, is misplaced for several reasons.  First, in determining whether a city attorney represents the State when he files a suit on behalf of the People of the State of California pursuant to California Code of Civil Procedure § 731,[5] the court in *M & P Investments* conflated two distinct concepts - whether a city attorney has authority under the statute to sue on behalf of the State and if so, what is the scope of such authority.  In support of its conclusion, the court relied on *Hy-Lond*.  Significantly, the court in *Hy-Lond* addressed only the later issue, *i.e.* the scope of the district attorney's authority when he filed an action on behalf

---

[5] California Code of Civil Procedure § 731 provides, in pertinent part: "...A civil action may be brought in the name of the people of the State of California to abate a public nuisance ... by the district attorney of any county in which such nuisance exists, or by the city attorney of any town or city in which such nuisance exists, and each of said officers shall have concurrent right to bring such action for a public nuisance existing within a town or city, and such district attorney, or city attorney, of any county or city in which such nuisance exists must bring such action whenever directed by the board of supervisors of such county or whenever directed by the legislative authority of such town or city."

United States District Court
For the Northern District of California

of the people of the State of California. *Hy-Lond*, 93 Cal. App. 3d at 739. The district attorney in *Hy-Lond* stipulated to a judgment with the defendant covering facilities in twelve counties and granting the defendant "absolution for all its past sins" for all its facilities in these twelve counties and "immunity for future actions for unfair competition with respect to future alleged violations of the law and regulations." *Id*. at 749. The court held that the authority conferred on district attorneys under California Business and Professions Code §§ 17204 and 17535 did not include the right to restrain the powers of other state agents, as the district attorney had, and thus, the stipulated judgment exceeded the scope of the district attorney's authority. *Id*. at 752.

Similar to *Hy-Lond*, the court in *M & P Investments* was determining the scope of the city attorney's authority to restrain the State. The proposed environmental injunction at issue in *M & P Investments* provided that California Department of Toxic Substances Control ("DTSC"), a state agency that was not a party to the lawsuit, serve as the lead enforcement agency to ensure compliance with the terms of the injunction and "*enjoined* DTSC in various aspects of its duties in that capacity." *M & P Investments*, 213 F. Supp. 2d at 1213 (emphasis in original). However, the court in *M & P Investments* was *also* examining whether the State, in the action filed by the city attorney on behalf of the People of the State of California, was the real party in interest. This Court finds that the issue of whether the scope of the particular proposed injunction exceeded the city attorney's authority is a distinct legal issue from whether the city attorney had the authority to represent the State in any capacity in the lawsuit. In the present action, the scope of any injunction sought by Plaintiff is not yet before the Court. However, even if it were, such an issue should be analyzed separately from whether Herrera has authority under California Business and Professions Code §§ 17204 and 17206(a) to sue on behalf of the State.

Second, the city attorney in *M & P Investments* expressly conceded that he did not represent the State. *Id*. at 1213. In fact, all parties and the State Attorney General agreed that the city attorney "(by virtue of CCP § 731) [did] not represent the State of California in an action filed "in the name of the people of the State of California" to abate a public nuisance under state law." *Id*. Instead, the city attorney took the unique position that it represented all

**United States District Court**
For the Northern District of California

1  the people of the State of California *as an entity separate from the State*.  The court rejected the

2  city attorney's position.  *Id*. at 1216.  Thus, the court determined that there were only two

3  possible answers to the question of who was the proper plaintiff to an action brought under CCP

4  § 731 "in the name of the people of the State of California" by the city attorney: (1) the City of

5  Lodi ("Lodi"), or (2) the State of California, a position which no one urged.  *Id*.  In contrast

6  here, Herrera directly argues that by filing the suit on behalf of the People of the State of

7  California, he filed this action on behalf of the State.  Moreover, the California Attorney

8  General has not objected the Herrera's authority to do so.

9      Third, the court in *M & P Investments* clearly was moved by the particular facts before

10  it.  Notably, the city attorney filed the action on behalf of both the Lodi and the People of the

11  State of California ("the People").  Thus, *both* Lodi and the People were purportedly plaintiffs.

12  Some defendants had filed counterclaims against Lodi and accused Lodi of being responsible

13  for the contamination over which it was suing the defendants.  Moreover, the city attorney and a

14  state agency, the DTSC, had misrepresented that the State was involved in and had approved of

15  the city attorney's litigation efforts.[6]  No such similar facts are present here.  Hererra has not

16  filed this action on behalf of the City as a separate plaintiff, Defendants have not accused the

17  City of any misconduct, and neither the Herrera nor any representatives from state agencies

18  have made misrepresentations regarding other state agencies' involvement in the litigation.  For

19  all the above reasons, the Court finds *M & P Investments* is not persuasive.

20      Defendants also argue that the five factor test under which courts determine whether

21  Eleventh Amendment Immunity applies should be applied to the determination of citizenship

22

23      [6] The city attorney represented that: (1) the DTSC determined with the city attorney
24  that an abatement action order was necessary; (2) the city attorney consulted with the DTSC
    regarding a temporary restraining order and approvals were obtained from "the executive
25  levels of government;" (3) the DTSC had the responsibility and authority over the site
    investigation; and (4) Lodi and the State were communicating almost daily.  *Id*. at 1212 n.12.
26  At the hearing on the preliminary injunction, the court expressed its understanding that the
    State was the moving party on the motion.  Neither the city attorney nor the DTSC, whose
27  counsel was present, objected or corrected the court's perception.  *Id*. at 1212-13.  The city
    attorney, in support of the preliminary injunction, stated that it represented the collaborative
28  efforts of Lodi and the DTSC.  *Id*. at 1213.  Then, two days before the hearing on the form of
    the proposed injunction, the DTSC submitted a letter asserting its position that the court did
    not have jurisdiction over it and objecting to the preliminary injunction.  *Id*. at 1211.

**United States District Court**
For the Northern District of California

for purposes of diversity jurisdiction, and that under this test, the Herrera is not acting as an arm of the State.  (Opp. at 12-13.)  The five factors test in determining whether an entity is a state agency for Eleventh Amendment purposes is as follows: "(1) whether a money judgment would be satisfied out of state funds, (2) whether the entity performs central governmental functions, (3) whether the entity may sue or be sued, (4) whether the entity has the power to take property in its own name or only the name of the state, and (5) the corporate status of the entity."  *Befitel v. Global Horizons, Inc.*, 461 F. Supp. 2d 1222 (D. Haw. 2006) (quoting *Belanger v. Madera Unified School Dist.,* 963 F.2d 248, 250-51 (9th Cir.1992)).  If the issue before the Court were whether the City, as an entity, is a state agency or an arm of the State, perhaps it would be appropriate to apply this test.  However, the issue here is whether Herrera, when he filed suit on behalf of the People of the State of California, was acting on behalf of the State or the City.  Accordingly, the Court finds this test is inapplicable here.

The Court thus finds that Defendants have not met their burden to demonstrate that the City is the real party in interest.  Accordingly, Defendants have not shown that diversity jurisdiction exists.

**D.    Plaintiff's Motion for Attorneys' Fees.**

Pursuant to 28 U.S.C. § 1447(c), Plaintiff requests an award of attorneys' fees and costs incurred as a result of Defendants' allegedly improper removal.  "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  To determine whether to award costs and fees under § 1447(c), this Court has a "great deal of discretion."  *Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 240 (9th Cir. 1993).  Although it was not ultimately persuaded by Defendants' arguments, the Court does not find that removal was frivolous or motivated by bad faith.  The Court therefore declines to exercise its discretion to award Plaintiff's fees and costs under § 1447(c).

**CONCLUSION**

1    For the foregoing reasons, the Court (1) GRANTS Plaintiff's motion to remand and (2)

2   DENIES Plaintiff's motion for attorneys' fees.  This case is remanded to the Superior Court of

3   California for the County of San Francisco.  The Clerk shall transfer the file forthwith.

4        **IT IS SO ORDERED.**

5

6   Dated: August 20, 2007                                    _____

7                                                              JEFFREY S. WHITE
                                                               UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California